**EXHIBIT 7**

Not Reported in F.Supp.2d                                                                 Page   1
Not Reported in F.Supp.2d, 2006 WL 1455478 (W.D.N.Y.)
**(Cite as: 2006 WL 1455478 (W.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Linda LETOUZEL, on behalf of herself and all others similarly situated,
Plaintiff,
v.
THE EASTMAN KODAK COMPANY, Defendant.
No. 05-CV-6464T.

May 25, 2006.

J. Nelson Thomas, Michael J. Lingle, Dolin, Thomas & Solomon LLP, Rochester, NY, for Plaintiff.

Christopher H. Lowe, Lorie E. Almon, Peter A. Walker, Seyfarth Shaw, New York, NY, William G. Bauer, Woods Oviatt Gilman LLP, Rochester, NY, for Defendant.

DECISION and ORDER

TELESCA, J.

### INTRODUCTION

*1 Plaintiff Linda LeTouzel, ("LeTouzel") brings this action for declaratory relief and monetary damages on behalf of herself and all others similarly situated, alleging that the defendant Eastman Kodak Company ("Kodak") violated her rights under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"), New York State labor law, the labor and wage laws of several states other than New York State, and breached several employment contracts.

Kodak moves to dismiss and strike portions of the Complaint, and to strike portions of the Complaint. Although Kodak does not move to dismiss plaintiff's federal collective action claim under the FLSA, defendant seeks to dismiss plaintiff's state labor and wage law class-action claims on grounds that plaintiff lacks standing to bring such claims, and that the proposed class is invalid pursuant to Rule 23 of the Federal Rules of Civil Procedure for failure to meet the critical requirement that the class share questions of fact and law common to the members of the class. Defendant further contends that the plaintiff, who was fired for having allegedly engaged in discriminatory behavior, does not have claims that are typical of the claims of the proposed class. Kodak also urges the court to decline any exercise of supplemental jurisdiction over plaintiff's state law claims, and dismiss those claims for lack of jurisdiction. In support of this contention, Kodak argues that the state claims, which are brought pursuant to the laws of 51 states and territories, would predominate over the federal claim, and would create unmanageable complexity. Kodak further moves to dismiss those portions of the Complaint seeking injunctive relief on grounds that plaintiff is not entitled to such relief as a matter of law. Additionally, defendant moves to strike the plaintiff's proposed class certification form titled "Consent to Become a Party Plaintiff" pursuant to Rule 12(f) because it is substantively inaccurate.

For the reasons set forth below, I grant defendant's motion to dismiss plaintiff's state law claims on grounds that plaintiff has failed to satisfy the requirements for a class action lawsuit as set forth in Rule 23 of the Federal Rules of Civil Procedure. Specifically, I find that there is a lack of commonality of factual and legal issues among the proposed class. Moreover, I find that if the plaintiff's state claims were allowed to proceed, those claims would predominate over the federal claim and would render the action unduly complicated and unmanageable. Therefore, I decline to exercise supplemental jurisdiction over those claims. Finally, I grant defendant's motion to dismiss plaintiff's claims for injunctive relief, and deny as premature defendant's motion to strike the plaintiff's proposed "opt-in" form.

### BACKGROUND

Plaintiff was hired by Kodak on October 1, 1981. She was employed in Kodak's Rochester, New York location in a Customer Service/Support Position in the CIG Worldwide Service and Support, Service Marketing organization. Kodak terminated plaintiff's employment for cause on June 21, 2004 after an internal investigation found that plaintiff, a Caucasian employee, had placed a hand-written note on the chair of an African-American co-worker that read: "We Know How to Control Niggers Here." Two independent handwriting experts concluded that plaintiff had written the note. Plaintiff denies the accusations. After Kodak terminated the plaintiff's

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d  
(Cite as: 2006 WL 1455478, *1 (W.D.N.Y.))

Page 2

employment, she filed a charge with the New York State Division of Human Rights alleging race discrimination. That matter is still pending.

*2 On September 7, 2005, plaintiff filed this Complaint against Kodak alleging that Kodak failed to pay her overtime in compliance with the FLSA. Plaintiff sues on behalf of herself and all others similarly situated under § 216(b) of the Act. Plaintiff also maintains that her New York Labor Law claim, her other state wage law claims, and breach of contract claims may be prosecuted as Rule 23 class actions. Plaintiff alleges that the class is comprised of in-state and out-of-state Kodak employees not covered within the scope of the class certified in *Robinson v. Kodak*, 02-CV-6204. Furthermore, plaintiff alleges violations of the wage laws of 34 states as well as those of Washington, D.C. and Puerto Rico, and claims of breach of contract under the common law of 51 jurisdictions. On November 2, 2005, defendant Kodak moved to dismiss several claims alleged in the Complaint. Plaintiff opposes the motions.

### DISCUSSION
#### I. The State Law Claims

Kodak maintains that the dismissal of plaintiff's state law claims is warranted because the plaintiff lacks standing to pursue those claims, and that the proposed class does not meet the requirements for a viable class pursuant to Rule 23 of the Federal Rules of Civil Procedure. Kodak further argues that even if the plaintiff could maintain a class action pursuant to her state law claims, the court should decline to exercise jurisdiction over those claims.

*A. Plaintiff's proposed class fails to satisfy the requirements for a class action pursuant to Rule 23.*

Although plaintiff has not yet moved for class certification, courts may decide the issue of certification based on a review of the complaint prior to a party's motion to certify the proposed class. *Reinsich v. New York Stock Exch.*, 52 F.R.D. 561, 564 (S.D.N.Y.1971); *Miller v. Motorola, Inc.*, 76 F.R.D. 516 (N.D.Ill.1977). In fact, Rule 23(c)(1) encourages courts to "at an early practicable time-determine by order whether to certify the action as a class action." Fed.R.Civ.P. 23(c)(1).

Under Rule 23(a), one or more members of a class may sue or be sued as representative parties of the class only if:  
(1) the class is so numerous that joinder of all members if impracticable,  
(2) there are questions of law or fact common to the class,  
(3) the claims or defenses of the representative parties are typical of the claims and defenses of the class, and  
(4) the representative parties will fairly and adequately protect the interests of the class.  
Fed.R.Civ.P. 23(a), emphasis added. The four requirements set forth above are commonly referred to as the "numerosity," "commonality," "typicality" and "adequacy" requirements.

In this case, the plaintiff's state law claims fail to meet the commonality requirement of Rule 23(a)(2). The state wage claims lack commonality because they are being brought under 36 separate wage laws, each with its own peculiar requirements and defenses. Similarly, the breach of contract claims are being brought pursuant to the laws of 51 jurisdictions. Because adjudication of these claims would require the interpretation and application of several different laws of several different states and territories, I find that plaintiff has failed to establish that the state wage and contract claims of the purported class are common among the class. *See Kaczmarek v. IBM*, 186 F.R.D. 307, 312-313 (S.D.N.Y.1999) ("The prospect of determining the law of all fifty states and then applying the materially different laws that exist ... would make this class action too complicated and unmanageable.")

*3 Morever, I find that even if the plaintiff could establish commonality, the plaintiff cannot satisfy any of the requirements of Rule 23(b), and therefore, cannot maintain the state claims of this action as a class action. Rule 23(b) of the Federal Rules of Civil Procedure provides that in addition to meeting all of the factors set forth in Rule 23(a), a plaintiff seeking to maintain a class action must establish:  
(1) the prosecution of separate actions by or against individual members of the class would create a risk of  
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d
(Cite as: 2006 WL 1455478, *3 (W.D.N.Y.))

Page 3

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy....

Initially, I note that Rule 23(b)(2) does not apply in this case. Rule 23(b)(2) "was never intended to cover causes ... where the primary claim is for damages...." *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 564 (2d Cir.1968), *rev'd on other grounds* 479 F.2d 1005 (2d Cir.1973). Rather, Rule 23(b)(2) "is only applicable when the relief sought is exclusively and predominately injunctive." *Eisen,* 391 F.2d at 564. Here, plaintiff's primary goal is an award of damages, and therefore Rule 23(b)(2) is not applicable to this matter.

With respect to Rule 23(b)(3), I find that common issues of law or fact do not predominate over the individual issues applicable to the purported class members. As set forth above, the employees at issue were employed in several different states at several different locations subject to different terms and conditions, and different state laws. Different remedies are available in each state, and the methods of overtime calculation vary from state to state. Because the issues common to the purported class members are actually subordinate to the issues unique to each of the individual members, I find that plaintiff has failed to establish a basis for a class action pursuant to Rule 23(b)(3).

Finally, I find that plaintiff has failed to establish that there is a substantial risk of inconsistent adjudications that would require Kodak to adopt incompatible standards of conduct, or that adjudications with respect to some members of the proposed class would prevent other members from fully or fairly litigating their individual state law claims. The adjudication of claims in one jurisdiction pursuant to that jurisdiction's laws will have no preclusive effect on the rights of other employees in other jurisdictions to prosecute their own claims, either individually or as members of a class defined under that jurisdiction's laws and rules. Accordingly, I find that plaintiff has failed to establish that a class action in this case is necessary to avoid inconsistent results.

*4 Based on the foregoing analysis, I find that even if plaintiff could satisfy Rule 23(a), she cannot meet *any* requirement of Rule 23(b). Accordingly, because plaintiff's allegations fail to satisfy the requirements of a class action lawsuit under Rule 23, I grant defendant's motion to dismiss plaintiff's state law wage and contract claims.

B. *The State Law Claims-Supplemental Jurisdiction*

Kodak maintains that this Court should decline to exercise supplemental jurisdiction over the state law claims and should dismiss those claims for lack of jurisdiction.

A court may exercise supplemental jurisdiction over a state claim when the state and federal claims "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1996). 28 U.S.C. § 1367(c) provides that a court can in its discretion decline to exercise supplemental jurisdiction if:
1) the claim raises novel or complex issues of State law;
2) the [state] claim substantially predominates over the [federal] claim or claims over which the district court has original jurisdiction;
3) the district court has dismissed all claims over which it has original jurisdiction, or
4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
28 U.S.C. § 1367(c).

When deciding whether or not to accept supplemental jurisdiction over ancillary claims, courts consider whether, *inter alia* "judicial economy, convenience and fairness to litigants" favor hearing the state and federal claims together. *United Mine Workers,* 383 U.S. at 726.

In this case, the plaintiff's claims stem almost exclusively from Kodak's alleged failure to pay

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d
(Cite as: 2006 WL 1455478, *4 (W.D.N.Y.))

Page 4

overtime to the plaintiff in violation of federal and state laws. However, considering the number of state laws involved (36 jurisdictions' wage laws and 51 jurisdictions' breach of contract laws), it is clear that the state claims would present complex issues of state law that would substantially predominate over the FLSA claim. Such a diverse undertaking deserves the individualized analysis and attention that each state court would provide. Therefore, this court, in the exercise of its discretion, declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. 1367(c)(1) and 28 U.S.C. 1367(c)(2) over the state law wage and contract claims because those claims raise complex, diverse issues of state law that will substantially predominate over the FLSA claim. Therefore, pursuant to Rule 12(c), Kodak's motion to dismiss the state law claims is granted.

II. *Injunctive Relief*

Kodak maintains that plaintiff's request for injunctive relief, specifically a preliminary and permanent order restraining Kodak from engaging in any pay violations, should be dismissed because individual injunctive relief is not available under the FLSA and it is not an appropriate for this Court to decide injunctive relief under the state law claims.

It is well settled that the FLSA does not give a private individual the right to obtain an injunction, but gives this right only to the Secretary of Labor. *Mulverhill v. New York,* No. 91-cv-1282, 1997 U.S. Dist. LEXIS 10109, at * 24-25 (N.D.N.Y. July 11, 1997). The availability of injunctive relief under state law is unsettled under New York law, and therefore the question most appropriately should be resolved by New York State courts. With respect to plaintiff's state law claims for injunctive relief pursuant to the wage laws of states other than New York, I decline to exercise supplemental jurisdiction over those claims. Accordingly, I grant defendant's motion to dismiss plaintiff's claims for injunctive relief.

III. *Plaintiff's Consent Form*

*5 Kodak maintains that plaintiff's opt-in forms are improper and that the forms should be dismissed pursuant to Rule 12(f) because it uses the language of "named plaintiff" instead of "representative plaintiff." I find analysis of the "opt-in" form to be premature at this time, as no class action has been certified, and accordingly I deny defendant's motion to strike or dismiss the opt-in form.

*CONCLUSION*

For the reasons set forth above: 1)defendant's motion to dismiss the state class allegations is granted; 2) defendant's motion to dismiss the state law claims with the exception of plaintiff's claims under New York law is granted; and 3)defendant's motion to dismiss plaintiff's claim for injunctive relief is granted. The Court deny's defendant's motion to strike or dismiss the "opt-in" form. While plaintiff's collective action claims under the FLSA and her individual claims under New York law remain pending, all other claims are dismissed.

ALL OF THE ABOVE IS SO ORDERED.

Not Reported in F.Supp.2d, 2006 WL 1455478 (W.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.



**EXHIBIT 8**

Not Reported in F.Supp. **Page 1**
Not Reported in F.Supp., 1991 WL 284083 (N.D.Cal.), Fed. Sec. L. Rep. P 96,162
(Cite as: 1991 WL 284083 (N.D.Cal.))

▷

United States District Court, N.D. California.
CHURCH, et al.
v.
CONSOLIDATED FREIGHTWAYS, INC., et al.
No. C-90-2290 DLJ.

June 14, 1991.

OPINION

JENSEN, District Judge.

*1 On April 17, 1991, this Court heard plaintiffs' motion for class certification on its federal securities, ERISA, and common law claims. Elizabeth Joan Cabraser and James M. Finberg of Lieff, Cabraser & Heimann appeared for plaintiffs. Michael L. Zigler and Alan Cope Johnston of Morrison & Foerster appeared for defendants. Having considered the papers submitted and the entire record herein, the arguments of counsel, and the applicable law, the Court grants in part and denies in part plaintiffs' motion for the following reasons.

I. BACKGROUND

This is a class action alleging violations of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78(a) *et seq.*, the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626 *et seq.*, and various pendent common/state law claims.

Defendant Consolidated Freightways, Inc. ("CF") is a transportation company engaged in land, air, and sea transport services. This action arises from events preceding and following CF's successful acquisition by tender offer of Emery Air Freight Corporation ("Emery") and the subsequent consolidation of Emery and CF's subsidiary, CF Air Freight, Inc. The consolidated company began operation as Emery Worldwide ("EWW") in April 1989. [FN1]

The tender offer commenced on February 17, 1989. The terms of the tender agreement required 51% of the shares of both Emery common and preferred stock be tendered and not withdrawn. All 1.4 million shares of preferred stock were held in trust for employee participants of the employee stock ownership plan ("ESOP"), many of whom are members of the proposed plaintiff class. The shares of stock provisionally allocated to each ESOP participant could be tendered or withheld according to the direction of each respective participant. In addition, the ESOP held 4.3 million--or almost 20%--of the total outstanding shares of Emery common stock. Finally, many Emery employees, including prospective class members, individually held shares of Emery common stock pursuant to stock options and straight purchases.

At the time of the commencement of the tender offer on February 17, 1989, several communications were made directly to the employees. For example, defendant William F. Sounders sent a letter to all shareholders of date stating that the Board of Directors of Emery recommended acceptance of the tender offer as the Board had "determined that the tender offer and Merger are in the best interests of the participants in the company's ESOP." *See* Complaint ¶¶ 36, 41 (filed Aug. 10, 1990). A letter was also sent to ESOP participants who had not yet tendered their shares recommending that they do so, and Emery officials acknowledged to Emery employees that the "ESOP is the key to the merger." *Id.* ¶ 46.

On February 17, 1989, Emery filed a Schedule 14D-9, Solicitation/Recommendation Statement ("Solicitation") with the SEC pursuant to section 14(d)(4) of the Exchange Act of 1934. On that day, CF also filed several documents with the SEC, including a Tender Offer Statement, a Schedule 14D-1, and Offer to Purchase for Cash All Outstanding Shares of Stock of Emery ("Offer to Purchase"), and a Letter of Transmittal, again pursuant to section 14(d)(4) Emery's Solicitation included the following representation:

*2 The Company [Emery], immediately following the Effective Time [of the Merger], will continue to employ all employees employed by the Company or any of its subsidiaries immediately prior to the Effective Time ("Company Employees") under terms and conditions of employment substantially comparable to, *and in any event no less favorable than, those existing immediately prior to the Effective Time.*

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.  
(Cite as: 1991 WL 284083, *2 (N.D.Cal.))

Page 2

See Solicitation at 8; Complaint § 42 (emphasis added). Similar provisions were included in CF's filings with the SEC. *See, e.g.,* Offer to Purchase at 18. Among the then existing terms and conditions of employment for Emery employees were that severance benefits were determined by years of service, and that the maximum amount of severance benefits then available was twenty-six weeks. As discussed more fully in this Court's prior order, these same conditions were not retained following the merger of the companies. Thus plaintiffs contend that the above representations filed with the SEC were materially false and were made with the knowledge of CF and Emery. *See* Complaint § 47.

On April 6, 1989, the tender offer was completed, with CF acquiring 90% of the shares of both common and preferred stock. On that same day, it was announced that all Emery operations would be merged into CF as of May 1, 1989. The Complaint further alleges that on or about April 17, 1989, approximately eight weeks following the making of the alleged representations, Emery announced that it was unilaterally reducing by 50% the maximum severance benefits available to employees. Soon thereafter, Emery allegedly began to terminate or constructively discharge its employees on a mass scale, including the named plaintiffs. *Id.* §§ 56, 58-63.

By the present motion, plaintiffs seek to certify one umbrella class and two subclasses pursuant to Federal Rule of Civil Procedure 23. The proposed umbrella class provides as follows:

All persons who were exempt (or managerial) employees of Emery Worldwide or its predecessor Emery Air Freight Corporation during the period from February 17, 1989 through April 6, 1989, inclusive. Excluded from the class are all named defendants, the members of their immediate families, any entity in which any of the defendant have a controlling interest, and the legal representatives, heirs, successors or assigns of any of the defendants.

The class covers plaintiffs' ERISA and pendent common law/state claims--except for breach of written contract--and all named plaintiffs are representatives of this class.

Subclass A pursues the federal securities claims, and plaintiffs Craft, Polt, and Church are representatives of this class. Subclass A is set forth as follows:

*Subclass A.--Employee-Sellers:* All Emery exempt employees who tendered, or instructed the tender of, common or preferred stock of Emery to Consolidated Freightways during the period from February 17, 1989 to April 6, 1989, inclusive. Included in Subclass A are all exempt employee participants in Emery's ESOP.

*3 Subclass B pursues the breach of written contract claims, and it is represented by plaintiffs Craft, Fennel, Porter, and McMahon. Subclass B provides as follows:

*Subclass B--Employees With Written Contracts:* All Emery exempt employees who had written employment contracts as of February 17, 1989.

## II. APPLICABLE LEGAL STANDARDS FOR CLASS ACTIONS

Class actions are common in securities fraud cases. In these cases the claims of separate investors are often too small to justify individual lawsuits, making class actions the only efficient deterrent against securities fraud. *Harris v. Palm Springs Alpine Estates Inc.,* 329 F.2d 909, 913 (9th Cir.1964). Accordingly, courts within the Ninth Circuit take a liberal view towards certification of class actions in securities litigation. *See, e.g., In re Activision Sec. Litig.,* 621 F.Supp. 415, 428 (N.D.Cal.1985) [hereinafter *In re Activision* ]. Similarly, class actions have also been utilized in pursuing ERISA claims. *See, e.g., Morgan v. Laborers Pension Trust Fund,* 81 F.R.D. 669 (N.D.Cal.1979).

The issues in a class certification motion may be generally described as procedural in nature. A district court should not consider the merits of the action when determining whether class certification is appropriate. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178 (1974); *Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir.1975), *cert. denied,* 429 U.S. 816 (1976). Rather, a district court should rule only on those issues which need to be resolved to reach a determination regarding class certification. Significantly, class certification under Rule 23 is a preliminary ruling and is subject to

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.            Page 3
(Cite as: 1991 WL 284083, *3 (N.D.Cal.))

modification. *Weinberger v. Jackson,* 102 F.R.D. 839, 843 (N.D.Cal.1984). A district court, however, should determine that the proposed class representatives are part of the class and suffered the same injury as the putative class members. *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 156 (1982).

Rule 23(a) sets forth four prerequisites for determining whether or not a class should be certified. The rule provides as follows:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*See* Fed.R.Civ.P. 23(a). These prerequisites are commonly called (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. *In re Activision,* 621 F.Supp. at 428.

If a court finds that Rule 23(a)'s prerequisites are satisfied, it then must consider if the conditions for the proposed form of class action under Rule 23(b) are satisfied. Plaintiffs in this action seek class certification on the securities and common law claims under Rule 23(b)(3), which requires the court to make two findings:

**\*4** [1] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

*See* Fed.R.Civ.P. 23(b)(3). In a class action certified under Rule 23(b)(3), all potential class members must be advised (1) of their right to "opt out" of the action or to enter an appearance through counsel, and (2) that the eventual judgment, whether favorable or not, will bind all class members who choose not to "opt out." *Id.* 23(c)(2); *see also Eisen,* 417 U.S. at 173-78.

Plaintiffs seek certification of the ERISA claims under either Rule 23(b)(1)(B) or 23(b)(2). Rule 23(b)(1)(B) provides that a class action may be maintained where individual prosecution of claims by the class members would pose a risk of

adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair of impede their ability to protect their interests.

*See* Fed.R.Civ.P. 23(b)(1)(B). Rule 23(b)(2) provides that a class action may be maintained where

the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

*Id.* 23(b)(2).

With these standards in mind, the Court reviews the merits of plaintiffs' motion.

### III. DISCUSSION

Plaintiffs' proposed umbrella class for the common law and ERISA claims comprises all persons, except defendants, who were exempt or managerial employees of EWW or its predecessor, Emery, from February 17, 1989, through April 6, 1989, inclusive. [FN2] Plaintiffs also seek certification of two subclasses as to the securities fraud claims ("Subclass A"), and as to the breach of written contract claims ("Subclass B"). Subclass A includes those members of the umbrella class who tendered common or preferred stock of Emery to CF within the class period, including all those who were participants in Emery's employee stock ownership plan ("ESOP"). Subclass B includes those members of the umbrella class who also had written employment contracts with Emery as of February 17, 1989 (the date of the SEC filings and commencement of the tender offer). Where subclasses are treated as a class, they too must meet the requirements of Rule 23. *See* Fed.R.Civ.P. 23(c)(4).

*A. Compliance with Rule 23(a).*

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.  
(Cite as: 1991 WL 284083, *4 (N.D.Cal.))

Page 4

As defendants do not dispute that the proposed classes satisfy the numerosity and commonality requirements of Rule 23(a), see Defendants' Opposition to Plaintiffs' Motion for Class Certification at 8 n. 14 (filed Apr. 3, 1991) [hereinafter Defendants' Opposition], this Court examines first whether plaintiffs have met their burden under the typicality and adequacy prongs. As defendants approach their analysis from the perspective that the typicality and adequacy requirements work together to ensure that the named plaintiffs will be able to adequately pursue the rights and protect the interests of the class members, see 7A Wright, Miller & Kane, Federal Practice & Procedure: Civil § 1764, at 232 (2d ed. 1986), this Court adopts a similar approach.

1. Typicality.

*5 Typicality refers to the nature of the claims or defense of the class representative, and not to the specific facts from which it arose or the relief sought. Accordingly, differences in the amount of damage, the size or manner of [stock] purchase, the nature of the purchaser, and event the specific document influencing the purchase does not render a claim atypical in most securities cases.

4 Newberg on Class Actions § 22.12, at 31-33 (2d ed. 1985). Thus typicality does not require that the named plaintiffs' and all class members' claims be identical, but only that their claims arise from the same legal or remedial theory. Wofford v. Safeway Stores, Inc., 18 Fed.Emp.Prac.Cases 1645, 1666 (N.D.Cal.1978).

2. Adequacy.

In evaluating the fourth prerequisite set forth in Rule 23(a)--whether the class representatives will fairly and adquately represent the class--this Court must determine whether plaintiffs are represented by competent counsel, and whether the named plaintiffs have any interests that conflict with or are antagonistic to those of the putative class members. Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir.1978); In re Activision, 621 F.Supp. at 428-29.

3. Application.

The record in this case supports a finding that plaintiffs' attorneys have sufficient experience to represent the proposed classes, and that there are no potential conflicts of interest among plaintiffs' attorneys. However, defendants challenge on three grounds whether the named plaintiffs do not have any interests in conflict with those of the putative class: (1) plaintiffs' interests as former employees conflict with those of present employees falling within the class; (2) plaintiffs' interests as more senior employees conflict with those of less senior employees; and (3) the named plaintiffs cannot adequately pursue all claims on behalf of all classes and subclasses.

a. Former versus current employee interests.

(1). Claims seeking reinstatement.

The named plaintiffs, all former employees of Emery, presently seek to represent classes including both former and present employees of Emery. Defendants argue that such representation would necessarily create a conflict as the former employees seek reinstatement, thereby jeopardizing positions held by current employees. Indeed, defendants contend that where former employees seek reinstatement, their interests are intrinsically antagonistic to those of current employees. General Tel. Co. v. EEOC, 446 U.S. 318, 331 (1980).

On initial reading, any cause of action seeking reinstatement of former exempt or managerial employees on a class-wide basis would clearly seem to conflict with the interests of present employees, particularly in a company the size of EWW. Plaintiffs nonetheless contend that such "conflicts" do not defeat certification as both the Complaint and subsequent discovery indicate that former employees falling within the class were replaced by CF employees and new/external hires, not class members. See Complaint § 53. Moreover, plaintiffs note this District's decision in Barefield v. Chevron U.S.A., Inc., 44 Empl.Pract.Dec. (CCH) ¶ 37,431 (N.D.Cal. Sept. 9, 1987) (Henderson, J.), certifying a class of former and current employees seeking injunctive relief on the basis of race discrimination. There the court found that plaintiffs had zealously pursued their own interests and, ultimately, those of future class members to the benefit of all. The Court notes that there are unlikely to be any "future" members of the class of persons allegedly affected by the acquisition and



Not Reported in F.Supp.  
(Cite as: 1991 WL 284083, *5 (N.D.Cal.))

Page 5

merger. Thus this case does not present the benefit of reversing an otherwise ongoing prohibited policy as did *Barfield*.

*6 Plaintiffs also argue that potential conflicts posed by the proposed reinstatement of a class of former employees is somewhat ameliorated by the alternative remedy sought, damages. Yet the potential damage award in back-pay, etc., should plaintiffs succeed on their claims would clearly be substantial, potentially undermining the viability of the company as a whole. Such a result would also conflict with the interest of current employees who presumably intend to continue in their present employ.

On balance, the Court finds that there are serious questions raised regarding the named plaintiffs' ability to adequately represent the interests of current employees on any claims seeking reinstatements (or damages in lieu thereof). However, because this Court finds that class certification is unwarranted under Rule 23(b)(3) on plaintiffs' pendent claims, *see infra* §§ B.2 & B.3, the Court need not at this time determine whether these potential conflicts are dispositive of plaintiffs' motion.

(2). *ERISA claims.*

Defendants contend on separate grounds that a similar conflict exists with respect to the ERISA claims, as any increase in severance benefits for former employees already separated will necessarily affect current employees adversely as the latter will somehow be required to make up the difference. The Ninth Circuit, however, has held that these facts do not create a conflict for purposes of a class action and thus does not defeat certification. *Probe v. State Teachers' Retirement System*, 780 F.2d 776, 781 (9th Cir.) (upholding class certification by concluding no conflict raised between retired teachers seeking increased benefits and currently employed teachers who will theoretically have to pay such benefits), *cert. denied*, 476 U.S. 1170 (1986). Moreover, the Complaint alleges that even current employees may suffer similar deprivation of pre-merger benefits in the event such individuals are terminated or constructively discharged in future. *See* Complaint ¶ 56. Thus the Court finds that defendants' arguments are without merit on this basis and therefore certification on plaintiffs' ERISA claim is not defeated by the presence of both former and current employees in the proposed class.

*b. Distinctions on the basis of seniority.*

Defendants also argue that the named plaintiffs on the age discrimination claim--contending that any layoffs should have been made in reverse order of seniority or only for good cause--place themselves in conflict with fellow plaintiffs of lesser seniority as the latter will arguably prefer a scheme that puts less emphasis on seniority. This Court, however, agrees with plaintiffs' position that such distinctions between individuals has true significance only with respect to the calculation of damages as the factual issues involved in the claim are the same (*i.e.*, the alleged failure to perform according to the representations of continued employment at an accustomed level). This Court has already concluded that such "conflicts" between individuals are insufficient to prevent this Court's facilitation of the notice process under the age discrimination claims, *see Church, et al. v. Consolidated Freightways, Inc. et al.*, Civ. 90-2290-DLJ (N.D.Cal. Apr. 15, 1991), and the present arguments do not succeed in overturning that conclusion. [FN3]

*c. Representation of all classes and subclasses.*

*7 Defendants note that the named plaintiffs each seek to represent both the umbrella class and one of the subclasses. Defendants contend that, in light of the potential conflicts and ambiguities resulting from the overlapping interests represented in the foregoing arguments, the interests implicated by each class under each claim require independent, unique, and exclusive representation by a named plaintiff to ensure adequate representation and vigorous defense and pursuit of those interests. Defendants cite no direct authority for the proposition that a named plaintiff is rendered an inadequate representative by virtue of his or her seeking to represent more than one class or subclass, but merely view it as a logical consequence of its two preceding arguments.

To the extent that the named plaintiffs seek to represent current employees on claims seeking reinstatement (or damages in lieu thereof), the Court finds merit in defendants' argument. However, the Court is unable to likewise conclude that the use of

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.
(Cite as: 1991 WL 284083, *7 (N.D.Cal.))

Page 6

subclasses or the presence of multiple claims should be construed as an attempt to separate potentially conflicting claims; instead, such divisions seemingly seek to streamline the adjudication by specifically categorizing class members by applicable claims. *Mendoza v. Tucson School Dist. No. 1,* 623 F.2d 1338 (9th Cir.1980), *cert. denied,* 450 U.S. 912 (1981); *In re General Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106 (7th Cir.), *cert. denied,* 444 U.S. 870 (1979). Thus, on balance, while unique and exclusive representation of each class on each claim may be the preferred method of proceeding in a class action, *see, e.g., In re Storage Technology Corp. Sec. Litig.,* 113 F.R.D. 113, 120 (D.Colo.1986) (plaintiff able to represent class under section 10(b) claims "*may* lack the requisite incentive to prosecute the claims of [an] [ESOP] subclass") (emphasis added), defendants have made no showing at this juncture apart from the reinstatement claims that the named plaintiffs will not be sufficiently zealous and dedicated to pursuing each legal claim on behalf of themselves and the class that the adequacy of such representation may be seriously questioned. Therefore the Court finds that plaintiffs' showing of adequacy of representation is not defeated by failure to have a named plaintiff exclusively representing each of the claims raised and the respective class or subclass.

4. *Conclusion.*

Based on the foregoing analysis, the Court finds that the numerosity, commonality, typicality and adequacy prerequisite requirements of Rule 23(a) are satisfied for purposes of maintaining a class action with respect to plaintiffs' federal securities, ERISA, and the majority of the common law claims. To the extent that plaintiffs' representation of the proposed classes on certain pendent claims is called into question, such questions are resolved in the following analysis.

B. *Compliance with Rule 23(b).*

*8 Plaintiffs seek certification of their federal securities and pendent claims under Rule 23(b)(3). Rule 23(b)(3) requires that (1) the common issues of law or fact predominate over individual issues, and that (2) a class action be the superior means to resolve the litigation. *See* Fed.R.Civ.P. 23(b)(3). Defendants contend that plaintiffs have failed to establish either of these prongs with respect to the federal securities, state/common law, or breach of written contract claims, and thus class certification is inappropriate.

Plaintiffs seek certification of their ERISA claims under Rule 23(b)(1)(B) and/or 23(b)(2). Rule 23(b)(1)(B) provides that a class action may be maintained where individual prosecution of claims by the class members would pose a risk of adjudications dispositive of the interests of non-parties, or would substantially interfere with the latter's ability to protect their interests. *Id.* 23(b)(1)(B). Rule 23(b)(2) provides that a class action may be maintained where final injunctive or declaratory relief is both sought and warranted. *Id.* 23(b)(2). Defendants again contend that plaintiffs fail to state claims satisfying these elements.

The Court examines each of the requirements under Rule 23(b) in turn according to the respective claim.

*1. Federal securities claims.*

Defendants contend that plaintiffs' federal securities claims fail to satisfy the requirements of Rule 23(b)(3) on three grounds: (1) plaintiffs are not entitled to a classwide presumption of reliance; (2) individual issues outweigh common issues; and (3) the class may not include current employees as the latter continue to receive benefits and therefore have not been injured.

*a. Presumption of reliance.*

Plaintiffs set forth two bases on which this Court may find that reliance is presumed for all members of the class: (1) individual reliance need not be proved but may instead be established by demonstrating the materiality of a misrepresentation or omission; and (2) reliance on the integrity of the regulatory process.

*(1). Individual versus presumptive reliance.*

In *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128 (1972), the Supreme Court held that where there has been a failure to disclose in a federal securities action, "positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.
(Cite as: 1991 WL 284083, *8 (N.D.Cal.))

Page 7

decision." *Id.* at 153-54. Plaintiffs contend that once they have sufficiently alleged and subsequently established the objective materiality of CF's and Emery's misrepresentations in the tender documents-- *i.e.*, a reasonable investor would have relied on such statements--then individual reliance by each class member need not be established but is instead presumed. *Blackie v. Barrack*, 524 F.2d 891, 905-06 & n. 22 (9th Cir.1975); *Weinberger v. Jackson*, 102 F.R.D. 839, 846 (M.D.Cal.1984).

*9 Defendants contend that, contrary to plaintiffs' characterization, the present case does not constitute the "typical" class securities action involving manipulation and insider trading. *See, e.g., In re Genentech, Inc. Sec. Litig.*, [1990] FED.SEC.L.REP. (CCH) ¶ 95,347, 96,678 (N.D.Cal.1990). Rather, this case presents the anomalous situation of alleged fraud inducing the tendering of preferred shares for which there is no market nor even any ascertainable value apart from that set by the offerors, CF and Emery. Therefore, defendants conclude that plaintiffs have incorrectly relied on "fraud-on-the-market" cases permitting a class-wide presumption of reliance on defendants' alleged misrepresentations and omissions, *see, e.g., Blackie*, 524 F.2d at 906, and thus plaintiffs cannot establish that requisite element of a securities fraud claim.

Defendants also contend that plaintiffs are attempting to plead around or do away with the reliance element of a 10b-5 securities claim, citing the Supreme Court's decision in *Basic Inc. v. Levinson*, 108 S.Ct. 978 (1988), to support the proposition that the element of reliance remains a mandatory element of a securities claim. First, as plaintiffs note, reliance is not an "essential element" of a claim under section 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(e), *see Kahn v. Lynden Inc.*, 705 F.Supp. 1458, 1463-64 (W.D.Wash.1989); rather, the true element is the making of the misrepresentation and omission, and from that causation is presumed once the plaintiff demonstrates that such misrepresentation or omission is material. *Plaine v. McCabe*, 797 F.2d 713, 721 & n. 15 (9th Cir.1986). Thus a plaintiff states a claim under section 14 by setting forth information which was improperly omitted or misrepresented in tender offer documents. *Id.* at 723. In the present case, plaintiffs have sufficiently alleged that the misrepresentations claiming that the acquisition and merger was in the best interests of Emery and that there would be no change in the working conditions to infer a causal relationship between the misstatements themselves and the employees' tendering of their respective shares to state a claim under section 14.

Moreover, as to plaintiffs' claims under 10b-5, *Basic v. Levinson* effectively supports plaintiffs' arguments as the Supreme Court there specifically noted that the requirement of "positive proof of reliance" is unnecessary where defendant has breached a duty to disclose material information. *Basic*, 108 S.Ct. at 978 (citing *Affiliated Ute*, 406 U.S. at 153-54). Thus material misrepresentations and omissions in a proxy statement vitiate the need for proof that a vote was affected because the proxy solicitation itself serves as the essential link. *Id.* (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 384-85 (1970)). Here the Complaint sufficiently claims that the alleged misrepresentations in the tender documents were material, and as their content would be significant to current employees of the target company, then the presumption of reliance under the foregoing authorities would seem to apply.

*10 Defendants also note the "distinctiveness" of the present case with respect to Emery preferred stock, of which all shares were kept in the ESOP, never traded, and therefore never exposed to a market. [FN4] Thus defendants argue that the shares tendered did not have the benefit of a market- -to the extent such market confers a presumption of reliance, *see Basic*, 108 S.Ct. 989-90--but the shares tendered were more akin to a face-to-face transaction, requiring a subjective determination of the individual plaintiff's pricing of the (mis)information conveyed. *Id.* at 990 (quoting *In re LTV Securities Litig.*, 88 F.R.D. 134, 143 (N.D.Tex.1980)).

An alternative perspective, however, is that, in light of the "contained" market and the lack of any external references valuing the particular stock, there was a greater duty on both CF and Emery to make full and accurate disclosure of all material information. In short, the only value placed on the preferred stock was that set by defendants themselves, and the final figure was effectively based on and supported by the contemporaneous materials issued by defendants. Thus their failure

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Westlaw

Not Reported in F.Supp.
(Cite as: 1991 WL 284083, *10 (N.D.Cal.))

Page 8

to disclose fully the material information could be construed as a breach of a "special" duty owed, and therefore the critical causation/reliance element may be presumed under the principles set forth in *Ute Affiliated. See Basic*, 108 S.Ct. at 978 (citing *Affiliated Ute*, 406 U.S. at 153-54).

Defendants also seek to distinguish the *Ute* presumption as that case concerned material omissions rather than affirmative misrepresentations. Prior courts have held such arguments to be a distinction without difference, *see, e.g., Little v. First California Co.*, 532 F.2d 1302, 1304 n. 4 (9th Cir.1976) (distinctions between misrepresentations and omissions "often elevate form over substance"), and this Court likewise finds such a reading of *Ute* and subsequent cases relying on it unnecessarily narrow and constrained. Instead, in the Ninth Circuit, where a complaint alleges both misrepresentations and omissions, the *Ute* presumption applies. *See Gray, et al. v. First Winthrop Corp., et al.*, Civ. No. 90-2600-JPV at 5 (N.D.Cal. March 13, 1991).

In conclusion, then, the Court finds that plaintiffs' have sufficiently alleged material misrepresentations and omissions in the tender materials to garner class-wide application of the presumption of reliance on their 10b-5 claim. As this is the only element on which defendants oppose the present motion on grounds of lack of commonality, the Court finds that on plaintiffs' securities claims, common issues predominate.

(2) *Integrity of the regulatory process.*

Although the Court finds that plaintiffs have established an initial showing of entitlement to a presumption of reliance on their claims under 10b-5, the Court also considers plaintiffs' arguments supporting a presumption of class-wide reliance based on the theory of the integrity of the regulatory process. Plaintiffs rely on the Ninth Circuit's decision in *Arthur Young & Co. v. United States Dist. Court*, 549 F.2d 686 (9th Cir.), *cert. denied*, 434 U.S. 829 (1977), for the proposition that reliance may be presumed in cases involving documents containing misrepresentations which are filed with public agencies. In *Arthur Young*, the court equated an investor's reliance on the statements made in an initial offering in evaluating that offering with the more general reliance on the integrity of the market of a publicly traded security to reach an objective evaluation. Thus the court noted that "the purchaser of an original issue security relies, at least indirectly, on the integrity of the regulatory process and the truth of any representations made to the appropriate agencies." *Id.* at 695.

*11 Defendants distinguish *Arthur Young* on the basis that that case involved an initial offering, which is not the case in an offer to tender, and that plaintiffs there were purchasers rather than the plaintiff sellers in the present case. This Court, however, is not persuaded that *Arthur Young* necessitates such a limited reading, and such limitations have not been imposed in other cases applying the fraud-on-the-regulatory-process presumption. *See, e.g., shores v. Sklar*, 647 F.2d 462, 471 (5th Cir.1981), *cert. denied*, 459 U.S. 1102 (1983); *In re MDC Holdings Sec. Litig.*, 754 F.Supp. 785, 802 (S.D.Cal.1990). Moreover, as the preferred shares in the ESOP had never been traded nor otherwise exposed to the benefits of a market valuation, the tender offer directed to those shares was arguably the equivalent of an initial offering in which plaintiffs had only the representations of both their former and subsequent employer in evaluating whether to tender their shares. Thus this Court finds that plaintiffs have sufficiently alleged and met the standards for a presumption of reliance based on a theory of the integrity of the regulatory process to warrant certification as a class on this basis as well. [FN5]

*b. Presence of current employees.*

Defendants argue that even if this Court were to find that the action presents a situation warranting class certification with respect to plaintiffs' claims under federal securities law, then such class should not also involve current employees as they have not suffered injury similar to that of plaintiffs, *i.e.*, loss of employment and concomitant benefits. The Court, however, finds that within the context of federal securities laws, common issues of law and fact predominate with respect to both current and former employees who tendered their shares in reliance on the alleged misrepresentations. Plaintiffs state that not only were both groups promised a certain level of benefits which was not maintained, but that certain current employees were demoted rather than terminated. Moreover, in light

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.  
(Cite as: 1991 WL 284083, *11 (N.D.Cal.))

Page 9

of the fact that the tender price was "fixed" by defendants based on certain alleged misrepresentations, then the stock presumably would have warranted a higher valuation if full disclosure had been made. Thus, although the resulting damages may be at variance, the Court finds that both former and current employees may be included in subclass A for purposes of pursuing the federal securities claims.

2. *State/common law claims.*

Plaintiffs seek to pursue the following pendent state or common law claims [FN6] on behalf of the umbrella class: common law misrepresentation (claims 3-5); negligence (claim 6); common law employment and contract claims (claims 9-12); and civil conspiracy (claim 13). Plaintiffs also seek special remedies available only under Connecticut law for those class members residing in that state (claim 15).

Although members of the proposed class come from jurisdictions across the United States and the events giving rise to the present claims arose in a presumably comparable number of fora, plaintiffs nonetheless contend that certification on the multiple state and common law claims of all individuals who were exempt employees during the class period is proper under Rule 23(b)(3) as questions of law and fact predominate over questions affecting individual members. Plaintiffs, however, merely argue in a somewhat conclusory fashion that common issues predominate, and that such issues are generally the same across jurisdictions. Moreover, plaintiffs fail to identify what common body of law may be found to govern these pendent claims, which basis alone is a sufficient ground for denying certification. *See, e.g., Priest v. Zayre Corp.,* 118 F.R.D. 552, 558 (D.Mass.1988) (plaintiffs' failure to demonstrate that the law of multiple states would not apply or would not vary significantly prevented district court from determining whether certification was proper under Rule 23(b)(3)).

*12 Defendants, however, sufficiently demonstrate the conflicts among the laws of the states of which the named plaintiffs are residents, *see* Defendants' Opposition 24-29, and such variations would clearly be exacerbated by certification of a nationwide plaintiff class. For example, while California may permit recovery for wrongful termination based on implied contracts, *see, e.g., Pugh v. See's Candies, Inc.,* 116 Cal.App.3d 311 (1981), or the implied covenant of good faith and fair dealing, *Foley v. Interactive Data Corp.,* 47 Cal.3d 654 (1988), several other jurisdictions represented by the named plaintiffs do not recognize such causes of action. *See* Defendants' Opposition 25 & nn. 49 & 50 (and cases cited therein). Indeed, plaintiffs' Complaint itself, which sets forth a separate claim for relief for class members who are residents of Connecticut, *see* Complaint ¶¶ 142-143, emphasizes the diverse state interests implicated in the present action. Similarly, although plaintiffs note that several courts have certified state claims for fraud and misrepresentation which mirror such claims under the federal security laws, *see, e.g., In re Pizza Time Theatre Sec. Litig.,* 112 F.R.D. 15, 18-21 (N.D.Cal.1986), the variations among different states on such claims have likewise been a basis for denying certification of pendent claims even while certifying arguably parallel federal security claims. *In re Technical Equities Sec. Litig.,* FED.SEC.L.REP. (CCH) ¶ 94,093 (N.D.Cal.1988). Moreover, the lack of the Rule 10b-5 presumption of reliance in actions for fraud under California law, *see Mirkin v. Wasserman,* 227 Cal.App.3d 1537, 1991 Cal.App.LEXIS 179 (Ct.App.2d Dist. Feb. 28, 1991), would necessitate individualized findings of reliance with respect to each plaintiff class member. [FN7] Such an undertaking clearly militates against a finding that common questions of fact predominate over the individualized ones. *See, e.g., Polich v. Burlington Northern, Inc.,* 116 F.R.D. 258, 263 (D.Mont.1987) (in action grounded in common law fraud, misrepresentation, and promissory estoppel, "[w]hile certain important questions would be common to the class as a whole ..., each class member's claims ultimately depend upon individual circumstances. In such a situation, a class action is not warranted under Rule 23(b)(3)") (citing *Lidie v. State of Cal.,* 478 F.2d 552, 555 (9th Cir.1973)).

Moreover, plaintiffs, contention that choice of law issues pose no barrier to certification is unsatisfactory. This Court is required to apply California choice of law principles in determining which law to apply to plaintiffs' pendent claims. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941); *SEC v. Elmas Trading Corp.,* 683 F.Supp. 743 (D.Nev.1987), *aff'd without opinion,* 865 F.2d 265 (9th Cir.1988). Under California law, this

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.  Page 10
(Cite as: 1991 WL 284083, *12 (N.D.Cal.))

Court must determine: (1) whether the laws of various jurisdictions differ, and (2) whether both states have an interest in applying their respective law. If the laws conflict, this Court is to apply the law of the state whose interest would be more impaired if its law were not applied. *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 (9th Cir.1987). Given the number of causes of actions, the jurisdictions involved, and the presumed interest of each forum in regulating the employment relationships within its jurisdiction, the number of resolutions this Court must make even before approaching the merits of the action as to which law to apply is overwhelming. On this issue alone, then, a class action is not the superior method of adjudicating the interests implicated as determination of the choice of law issue would require numerous "mini-trials" in and of itself.

*13 In conclusion, then, the Court finds that both the evident conflicts among jurisdictions in approaching the causes of action set forth in the pendent claims, as well as the complex and necessarily individualized threshold determination of choice of law, lead inevitably to the conclusion that class certification of these claims is unwarranted under Rule 23(b)(3).

*3. Breach of contract claims.*

Plaintiffs also seek to certify as a class those exempt employees who had written employment contracts with Emery as of February 17, 1989, in order to pursue claims of breach of written contract on behalf of such individuals. The record establishes that there were at least ten different variations of contract used. In addition, the circumstances surrounding the creation and termination of each of these contracts, or whether there were any modifications to such contracts (or whether such modifications were enforceable), would undeniably vary. Finally, the Court would be faced with the same choice of law burden as posed by the other pendent claims. Therefore, for the reasons articulated above, the Court also finds that class certification of plaintiffs' claim for breach of written contract--and hence, the proposed Subclass B--is not warranted under Rule 23(b)(3).

*4. ERISA claims.*

As noted above, plaintiffs' seek certification of their ERISA claims with respect to the umbrella class under Rules 23(b)(1)(B) or (b)(2). The Court examines each basis in turn.

*a. Rule 23(b)(1)(B): Limited fund situation.*

Rule 23(b)(1)(B) is principally applied to cases where there is a limited fund or resource against which all claims are to be made. 1 *Newberg on Class Actions* § 4.09, at 288 (2d ed. 1985). Thus certification of a class is appropriate to avoid individual adjudications which "would as a practical matter be dispositive of the interests" of other potential class members, or would "substantially impair or impede their ability to protect their interests." *See* Fed.R.Civ.P. 23(b)(1)(B).

Defendants contend that the present case fails to satisfy the requirement of Rule 23(b)(1)(B) as plaintiffs have failed to establish that there is some sort of limited recovery source in the present case. Therefore plaintiffs are unable to establish that individual adjudications would necessarily preclude or at least impair the interest of other potential class members to similar recoveries. [FN8]

Presuming that the allegedly improperly denied severance benefits were to flow from some specific and finite fund, then the present situation poses one similar to that which the Advisory Committee envisioned in the 1966 revisions to Rule 23(b)(1)(B) :

This clause takes in situations where the judgment in a nonclass action by or against an individual member of the class, while not technically concluding other members, might do so as a practical matter.... [Thus the clause was intended to apply] to an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a larger class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust.

*14 *See* Rule 23(b)(1)(B) Advisory Committee Note to 1966 Amendment (citations omitted). Moreover, if such fund had also contained pre-acquisition shares of Emery stock which were tendered in reliance on the alleged misrepresentations, then a finding of a violation of the federal securities laws would have a

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.  
(Cite as: 1991 WL 284083, *14 (N.D.Cal.))

Page 11

commensurate effect on the valuation of such fund. Therefore an accounting feasibly would be required to determine both what the proper valuation of the fund should be, as well as the severance benefits improperly withheld from departing employees. Finally, under the facts of the present case, a finding of a breach of a duty owed under ERISA with respect to one plaintiff would essentially have the same effect with regard to all, and therefore consolidation of such claims into a single class of all plaintiffs would be a logical step.

Based on the foregoing, the Court finds that failure to identify a specific and limited common fund out of which must come all recovery for any claimed ERISA violations does not defeat plaintiffs' motion for certification.

*b. Rule 23(b)(2): Final injunctive or declaratory relief.*

Rule 23(b)(2) provides that a class action may be maintained where

the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

*See* Fed.R.Civ.P. 23(b)(2). Defendants contend that certification of the ERISA claims under Rule 23(b)(2) is improper as the relief truly sought is solely monetary damages rather than any final injunctive or declaratory relief. However, several cases have held that certification of an ERISA-type claim is proper under Rule 23(b)(2) where only monetary relief--or such relief in conjunction with injunctive relief--is sought. *See, e.g., Morgan v. Laborers Pension Trust Fund,* 81 F.R.D. 669, 681 (N.D.Cal.1979) ("[C]ourts are not precluded from certifying a class merely because plaintiffs have included a request for monetary damages. Rather, 'where the monetary relief sought is integrally related to and would directly flow from the injunctive or declaratory relief sought, Rule 23(b)(2) is appropriate.' "); *Jansen v. Greyhound Corp.,* 692 F.Supp. 1022, 1028 (N.D.Iowa 1986) (ERISA monetary relief for retroactive payment of welfare benefits will flow from declaratory and injunctive relief); *Musto v. American General Corp.,* 615 F.Supp. 1483, 1493 (M.D.Tenn.1985) (acquiring company agreed to provide comparable benefits in future; certification under 23(b)(2) proper because of uniform treatment of class members), *rev'd in part,* 861 F.2d 897 (6th Cir.1988), *cert. denied,* 109 S.Ct. 1745 (1989).

The present case clearly states a set of facts establishing that final injunctive and declaratory relief is appropriate--*i.e.,* if defendants are found to have breached the requirements of ERISA in denying a certain level of benefits, then they will not only be required to compensate those who were injured by such conduct, but defendants will be required to cease from such conduct in future--and therefore certification is proper under Rule 23(b)(2). Indeed, certain cases have held that where certification is arguably proper under either Rule 23(b)(2) or 23(b)(3), the preference is for certification under Rule 23(b)(2) in order to take advantage of the available res judicata effect. *Stoetzner v. U.S. Steel Corp.,* 897 F.2d 115 (3d Cir.1990).

*15 Finally, defendants challenge whether the named plaintiffs, as former employees, have standing to assert the request for injunctive and declaratory relief on behalf of current employees who fall within the class boundaries. However, as plaintiffs note, several cases hold that not only are former employees adequate representatives of current employees in class actions seeking at least in part declaratory and/or injunctive relief, *see, e.g., Wofford v. Safeway Stores, Inc.,* 78 F.R.D. 460, 489-90 & n. 6 (N.D.Cal.1978) (nothing that "there is ample support for the position that former employees may represent present employees"); *Cross v. National Trust Life Ins. Co.,* 553 F.2d 1026, 1031 (6th Cir.1977), but other cases have effectively held that former employees provide superior representation in bringing claims against the employer. *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 247 (3d Cir.), *cert. denied,* 421 U.S. 1011 (1975). Thus this Court finds that plaintiffs as former employees have sufficient standing to represent current employees in requesting injunctive and declaratory relief under their ERISA claims.

In conclusion, then, the Court finds that plaintiffs' have sufficiently met the requirements of Rule 23(b)(2) to warrant certification of a class under the ERISA claims.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.  
(Cite as: 1991 WL 284083, *15 (N.D.Cal.))

Page 12

### IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Plaintiffs' motion for class certification of its pendent state/common law claims and breach of written contract claim is DENIED. Therefore this Court will not certify proposed Subclass B for litigation of the breach of contract claims as a class action.

2. The Court hereby certifies the following class on plaintiffs' ERISA claims:

All persons who were exempt (or managerial) employees of Emery Worldwide or its predecessor Emery Air Freight Corporation during the period from February 17, 1989 through April 6, 1989, inclusive. Excluded from the class are all named defendants, the members of their immediate families, any entity in which any of the defendant have a controlling interest, and the legal representatives, heirs, successors or assigns of any of the defendants.

3. The Court hereby certifies the following class as Subclass A on plaintiffs' claims under federal securities laws:

*Subclass A--Employee-Sellers:* All Emery exempt employees who tendered, or instructed the tender of, common or preferred stock of Emery to Consolidated Freightways during the period from February 17, 1989 to April 6, 1989, inclusive. Included in Subclass A are all exempt employee participants in Emery's ESOP.

4. The status conference scheduled for Wednesday, June 19, 1991, at 9:00 a.m., remains in place.

IT IS SO ORDERED.

> FN1. The factual and procedural background of the present litigation is set forth more fully in this Court's prior Order and is expressly incorporated herein. See Church, et al. v. Consolidated Freightways, Inc., et al., Civ. No. 90-2290-DLJ (N.D.Cal. Apr. 15, 1991).
>
> FN2. Thus, as defendants note, no employees hired by CF at either the time of the acquisition or subsequent to the merger fall within the proposed umbrella class.
>
> FN3. Indeed, if a "less senior" potential class member does find such representation and the relief sought to be extremely adverse, that individual may readily opt-out of the class altogether and pursue independent remedies.
>
> FN4. The Court notes that defendants never address the issue of shares of common stock tendered by class members. As such shares were presumably traded on the open market, then such transactions would seemingly be entitled to the presumption of reliance under the fraud-on-the-market theory.
>
> FN5. Because defendants' contention that individual questions predominate over common ones depends on a finding that plaintiffs' are not entitled to a presumption of reliance, the Court does not discuss defendants' arguments in light of the Court's contrary conclusion.
>
> FN6. The Complaint specifically seeks relief on the following claims for relief: (3) breach of fiduciary duty and constructive fraud; (4) intentional misrepresentation; (5) negligent misrepresentation; (6) negligence; (8) breach of written contract; (9) breach of implied contract; (10) promissory estoppel; (11) breach of the covenant of good faith and fair dealing; (12) tortious interference with contract; (13) civil conspiracy; and (15) special damages pursuant to Connecticut General Statutes Annotated section 31-72.
>
> FN7 The Court also notes that although the 10b-5 presumption may in fact be available to members of Subclass A--those who tendered securities-- that presumption could not be properly conferred on the umbrella class-- which includes exempt employees who did *not* tender their shares--even if the presumption were available under California or other applicable state law.
>
> FN8. To the extent that defendants' challenge certification of plaintiffs' ERISA claim on the merits of that claim, see Defendants' Opposition 38 & n. 71, the Court does not address such arguments at this time as such considerations are irrelevant on a motion for certification. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974); Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir.1975), cert. denied, 429 U.S. 816 (1976).

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.  
(Cite as: 1991 WL 284083, *15 (N.D.Cal.))

**Page 13**

Not Reported in F.Supp., 1991 WL 284083 (N.D.Cal.), Fed. Sec. L. Rep. P 96,162

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

