STEVEN H. GURNEE, ESQ. SB# 66056
DAVID M. DANIELS, ESQ. SB# 170315
GURNEE & DANIELS LLP
2240 Douglas Boulevard, Suite 150
Roseville, CA  95661-3805
Telephone      (916) 797-3100
Facsimile      (916) 797-3131

AMY E. DIAS (pro hac vice motion pending)
JONES DAY
500 Grant Street, Suite 3100
Pittsburg, PA 15219-2502
Telephone:      (412) 391-3939
Facsimile:      (412) 384-7959

MATTHEW W. LAMPE (pro hac vice motion pending)
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, OH 43216-5017
Telephone:      (614) 469-3939
Facsimile:      (614) 461-4198

Attorneys for Defendants
ALDERWOODS GROUP, INC. and
SERVICE CORPORATION INTERNATIONAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Deborah Prise, et al., on behalf of themselves and all other employees similarly situated, ) | No.  C 07-05140 MJJ |
| ) | |
| Plaintiffs, ) | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| vs. ) | |
| Alderwoods Group, Inc., et al. ) | Date:      December 18, 2007 |
| ) | Time:      9:30 a.m. |
| Defendants. ) | Ctrm:      11 |
| ) | Trial Date:      None Set |

**POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION TO DISMISS**
**Case No. C 07-05140 MJJ**

TABLE OF CONTENTS

I.      INTRODUCTION      ..................................................................................1

II.     BACKGROUND      ....................................................................................3

III.    ARGUMENT      .........................................................................................4

        A.      Plaintiff's Rule 23 Class Allegations And Certification Request Should be
                Dismissed for Failure to Satisfy the Requirements of Rule 23................................4

                1.      Plaintiffs Cannot Certify A Class Under Rule 23 Because they
                        Cannot Establish That There Are Common Issues Or That Common
                        Issues Predominate Where the court Would Be Required to Apply
                        The Laws of 38 Jurisdiction.........................................................................5

                2.      Plaintiffs Cannot Certify a Class Under Rule 23(b)(1) Because They
                        Cannot Establish A Risk of Inconsistent Judgments Nor That There
                        Is A Limited Pool of Funds...........................................................................9

                3.      Plaintiffs Cannot Certify A Class Under rule 23(b)(2) Because
                        Montegary Relief Predominates Over Any Request for Injunctive
                        Relief   ...................................................................................................11

        B.      Plaintiffs' Rule 23 Claims Are Incompatible With A Section 216(b) Action And
                Must Therefore Be Dismissed.................................................................................12

        C.      Plaintiffs' Claims Against SCI Should Be Dismissed Because SCI Is Not
                An Employer and Is Note A Successor-In-Interest To Alderwoods'
                Liability      .............................................................................................16

        D.      Plaintiffs' First and Second Causes of Action Should Be Dismissed Because
                They Have Failed to Comply with California Labor Code Section 2699..............19

IV.     CONCLUSION      .....................................................................................21

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 MJJ**                                                          **Page i**

1

## TABLE OF AUTHORITIES

2

### Cases

*Abarca v. Manheim Services Corp.*, No. 05 C 3873, 2006 U.S. Dist. LEXIS 13777, * 10-11 (N.D. Ill. March 24, 2006) ...................................................................... 16

*Allison v. Citgo Pet. Corp.*, 151 F.3d 402, 411 (5th Cir. 1998) .................................... 11, 12

*Caliber Bodyworks, Inc, v. Superior Court, (2005) 134 Cal.App.4th 365* .......................... 20

*Chao v. A-One Med. Serv., Inc.*, 346 F.3d 908, 920-923 (9th Cir. 2003) ......................... 14

*Church v. Consolidated Freightways, Inc.*, No. C-90-2290, 1991 WL 284083 (N.D. Cal. June 14, 1991) ..................................................................................................... 7, 9

*Cole v. General Motors Corp.*, 484 F.3d 717 (5th Cir. 2007) ........................................... 8

*Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443, 448 (6th Cir. 2002 ........... 11

*Edwards v. City of Long Beach*, No. CV 05-8990, 2006 U.S. Dist. LEXIS 93141 at *10 (C.D. Cal. Dec. 12, 2006) ..................................................................... 5, 13, 14, 15

*Glewwe v. Eastman Kodak Co.*, No. 05-CV-6462T, 2006 U.S. Dist. LEXIS 33449 at *7 (W.D.N.Y. May 25, 2006) ..................................................................................... 1, 4

*Glewwe v. The Eastman Kodak Co.*, 2006 WL 1455476 (W.D.N.Y. May 25, 2006) .......... 6

*Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 653-54 (C.D. Cal. Dec. 12, 1996) .................... 7

*Herring v. Hewitt Assoc., Inc.*, No. 06-267, 2006 U.S. Dist. LEXIS 56189 (D. N.J. Aug. 11, 2006) ................................................................................................................ 5, 13

*Himmelman v. Continental Cas. Co.*, No. 06-166, 2006 U.S. Dist. LEXIS 56187, at *5 (D.N.J. Aug. 11, 2006) ....................................................................................... 4, 13

*Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989) ................................. 12, 15

*Hopkins v. Texas Mast Climbers, LLC*, No. H-04-1884, 2005 U.S. Dist. LEXIS 38721, *12 (S.D. Tex. Dec. 14, 2005) ..................................................................................... 16

*In re Currency Conversion Fee Antitrust Litigation*, 230 F.R.D. 303, 312 (S.D.N.Y. 2004) 7

*In re Syncor ERISA Litig.*, 227 F.R.D. 338, 346 (C.D. Cal. 2005) .................................... 10

*In re: Paxil Litigation*, 212 F.R.D. 539 (C.D. Cal. Jan. 10, 2003) ...................................... 8

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Kamm v. California City Dev. Co.*, 509 F.2d 205 (9th Cir. 1975)...................................5, 16

*Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, 862 (9th Cir. 1977) ("Rule 23 and § 216(b)
...................................................................................................................................13

*LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975).......................13, 15

*Letouzel v. The Eastman Kodak Co.*, 2006 WL 1455478 (W.D.N.Y. May 25, 2006).........6

*Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 470 (N.D. Cal. 2004). ...............13

*Lewis v. Ward*, 852 A.2d 896, 906 (Del. Super. Ct. 2004) ...............................................18

*Luciano v. The Eastman Kodak Co.*, 2006 WL 1455477 (W.D.N.Y. May 25, 2006)..........6

*Madrigal v. Green Giant Co.*, No. C-78-157, 1981 U.S. Dist. LEXIS 15325 at *9 (E.D.
Wash. July 27, 1981)..................................................................................................13

*McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 577 (N.D. Ill. 2004) ....................12, 14

*McDonnell Douglas Corp. v. U.S. Dist. Ct., C.D. Cal.,* 523 F.2d 1083, 1086 (9th Cir. 1975)
...................................................................................................................................10

*Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725 (S.D. Ohio 2006).................16

*Mitsubishi Corp. v. Goldmark Plastic Compounds, Inc.*, 446 F. Supp. 2d 378 (W.D. Pa.
2006) .........................................................................................................................19

*Morgan v. Powe Timber Co.*, 367 F. Supp. 2d 1032, 1035 (S.D. Miss. 2005) ................18

*Nelsen v. King Cty.*, 895 F.2d 1248, 1255 (9th Cir. 1990). ..............................................11

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 841 (1999) ......................................................10

*Otto v. Pocono Health Sys.,* 457 F.Supp.2d 522 (M.D. Pa. 2006 ..........................4, 14, 15

*Parks Automotive Group, Inc. v. General Motors Corp.*, 237 F.R.D. 567 (D. S.C. 2006)...8

*Prise, et al. v. Alderwoods Group, Inc., et al*, Case No. 2:06-cv-01470-JFC, Docket No.
33 ..............................................................................................................................18

*Sepulveda v. Wal-Mart Stores, Inc.*, 245 F.R.D. 229, 245 (C.D. Cal. 2006) ................9, 10

*Tran v. Le French Baker, Inc.*, No. C-94-0482 VRW, 1995 U.S. Dist. LEXIS 8371 (N.D.
Cal. 1995).................................................................................................................14

*United States v. Bestfoods*, 524 U.S. 51, 61 (1998) .......................................................18

*Zinser v. Accuflix Research Inst.*, 253 F.3d 1180, 1188-90 (9th Cir. 2001 ................ 2, 7, 10

*Zubik v. Zubik*, 384 F.2d 267, 272 (3d Cir. 1967) .............................................. 19

**Statutes**

F.R.C. P. Rule 23 ................................................ 1, 2, 3, 4, 5, 12, 13, 14, 15, 21

F.R.C.P. Rule 12(b)(6) ............................................................. 4, 5, 12

F.R.C.P. Rule 12(f) ........................................................................ 12

F.R.C.P. Rule 23(a) .................................................................... 5, 6, 9

F.R.C.P. Rule 23(a)(2) ......................................................... 2, 5, 9, 12

F.R.C.P. Rule 23(b) .................................................................... 6, 9

F.R.C.P. Rule 23(b)(1) ........................................................ 2, 6, 9, 11

F.R.C.P. Rule 23(b)(2) ........................................................ 2, 6, 11, 12

F.R.C.P. Rule 23(b)(3) ................................................................... 2, 5

F.R.C.P. Rule 23(c)(1) ....................................................................... 4

F.R.C.P. Section 23(b) ................................................................ 5, 12

F.R.C.P. Section 23(d) ..................................................................... 16

F.R.C.P. Section Rule 23(b)(1)(A) ................................................. 9, 10

F.R.C.P. Section Rule 23(b)(1)(B) ................................................. 9, 10

F.R.C.P. Section Rule 23(b)(3) .......................................................... 5, 9

F.R.C.P. Section Rule 23(c) .............................................................. 16

Fair Labor Standards Act Section 216(b) ........................... 1, 2, 3, 4, 12, 14, 13, 15

Labor Code Section 2699 ............................................................. 19, 20

Labor Code Section 2699.3(a)(1) ......................................................... 20

Labor Code Section 2699.3(a)(2)(A) .................................................... 20

Labor Code Section 2699.3(a)(2)(B) .................................................... 20

Labor Code Section 2699.5 ............................................................... 19

**Other Authorities**

5 Moore's Federal Practice § 23.42 ................................................................ 11

Balotti and Finkelstein, The Delaware Law of Corporations and Business Organizations §
 9.7 (Aspen Law & Business 1998) ........................................................ 18

Civil Rights Act of 1964 ................................................................................ 18

Civil Rights Act of 1991 ................................................................................ 18

Equal Pay Act, 29 U.S.C. § 206 .................................................................... 18

Private Attorney General Act of 2004 ............................................................ 19

# I.     INTRODUCTION

On December 8, 2006, Plaintiffs Deborah Prise ("Prise") and Heather Rady ("Rady") filed a complaint in the U.S. District Court for the Western District of Pennsylvania alleging that Alderwoods Group, Inc. ("Alderwoods") and Service Corporation International ("SCI") violated the Fair Labor Standards Act and the wage and hour laws of 38 states and territories by failing to compensate employees for overtime, missed meal and break periods, and certain types of off-the-clock work that they allegedly performed.  Prise and Rady sought to certify both a collective action under FLSA Section 216(b), and a class action for their state claims under Rule 23 of the Federal Rules of Civil Procedure.   The District Court denied Plaintiffs' motions for collective action notification to purported SCI employees on two occasions, on April 19, 2007 and on September 6, 2007, finding that SCI was a holding company, and not an employer against whom a class could be certified.  Plaintiffs' Rule 23 claims were dismissed on June 8, 2007 when the District Court declined to assert supplemental jurisdiction over the state law claims.

Now, Prise and Rady, along with more than a hundred additional named plaintiffs (collectively "Plaintiffs"), seek to bring in this Court claims against both SCI and Alderwoods covering 38 states and territories, and seek to certify those claims in a single class action. However, Plaintiffs can maintain neither their Rule 23 class claims nor their claims against SCI in this action and both should be dismissed from this case.

First, Plaintiffs' class claims must be dismissed.  It is well established that a court may dismiss class claims pursuant to Rule 12(b)(6) where a plaintiff cannot meet Rule 23's requirements.  *See, e.g., Glewwe v. Eastman Kodak Co.*, No. 05-CV-6462T, 2006 U.S. Dist. LEXIS 33449 at *7 (W.D.N.Y. May 25, 2006).  Here, Plaintiffs cannot certify a class under Rule

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 MJJ**                                                                 **Page** 1

23(a)(2) or (b)(3) because common issues do not exist and the class method is not superior where the Court would be required to engage in a conflict of law analysis, and potentially interpret the laws, of 38 states and territories. *See, e.g., Zinser v. Accuflix Research Inst.*, 253 F.3d 1180, 1188-90 (9th Cir. 2001). Plaintiffs also cannot certify a class under Rule 23(b)(1) because they cannot establish that there is a risk of inconsistent judgments or a limited pool of funds. And Plaintiffs certainly cannot certify a class under Rule 23(b)(2) since their claims for compensatory damages clearly predominate over any request for injunctive relief because this Court would be required to perform individual damages calculations for each Plaintiff's wage and hour claims.

Plaintiffs' class claims also must be dismissed for the separate and independent reason that their request for Rule 23 certification is, to quote one court, "inherently incompatible" with their Section 216(b) FLSA collective action in the Western District of Pennsylvania. Courts routinely deny Rule 23 class certification where plaintiffs also seek collective action certification under Section 216(b) because Rule 23 class actions thwart the purpose of the collective action, and create confusion for class members who receive both opt-in and opt-out notices.

Second, Plaintiffs' claims against SCI must be dismissed in their entirety. As the U.S. District Court for the Western District of Pennsylvania determined, SCI is a holding company without any employees, and thus is not a proper defendant in this wage and hour litigation. In addition, Plaintiffs have no "successor-in-interest" claim against SCI because Alderwoods still exists and SCI is only a parent company of the entity that acquired Alderwoods.

Accordingly, for the reasons described in detail below, Defendants respectfully request that this Court issue an order dismissing and/or striking Plaintiffs' Rule 23 class certification allegations (specifically, First Amended Compl., ("FAC") ¶¶ 8, 50-58; and all references to "Class

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 MJJ**                                              **Page** 2

Members" and "Subclasses" contained in the First Amended Complaint), and dismissing SCI from this case with prejudice.

## II.    BACKGROUND

On December 8, 2006, Prise and Rady filed a complaint against Alderwoods and SCI in the U.S. District Court for the Western District of Pennsylvania alleging violations of the Fair Labor Standards Act of 1938 (Counts I-II) and the statutory and common laws of 38 states and territories, including California (Counts III-IX).    They brought their claims in the Western District of Pennsylvania based on their allegations that they were former employees of Alderwoods (but not SCI) in that judicial district and that the Defendants did business in that district.    They sought to bring a collective action pursuant to FLSA Section 216(b) for their FLSA claims and a Rule 23 class action for their state law claims.    On April 19, 2007, and again on September 6, 2007, the Honorable Judge Joy Flowers Conti denied Prise's and Rady's motion for FLSA collective action certification and expedited notice as to SCI employees, finding that SCI is a holding company that did not have any employees.    Judge Conti granted-in-part and denied-in-part their motion with respect to Alderwoods' employees, limiting notice to only seven job titles.    On June 8, 2007, Judge Conti dismissed Prise's and Rady's Rule 23 class allegations, finding that it was inappropriate to exercise supplemental jurisdiction over the state law claims where such claims would overwhelm the FLSA claims that were the basis for federal jurisdiction.

Prise and Rady, along with more than 100 other named plaintiffs filed the instant lawsuit on July 9, 2007.    In the First Amended Complaint, Plaintiffs acknowledge that "the state law claims asserted herein were previously dismissed from the United States District Court for the Western District of Pennsylvania on or about June 8, 2007." (FAC ¶ 2.)    Indeed, Plaintiffs allege here the exact same state law causes of action previously dismissed by the Western District of Pennsylvania

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 MJJ**                                                                    **Page 3**

– including claims for state wage and hour law (third cause of action), unjust

enrichment/restitution (fourth cause of action) fraud and deceit (sixth cause of action),

misrepresentation (seventh cause of action) breach of contract (eighth cause of action) and

quantum meruit (tenth cause of action) – plus claims for violations of the California Labor Code

and Business and Professions Code. Plaintiffs' Complaint seeks to certify a class of the exact

same employees that they sought to cover in their collective action in the Western District of

Pennsylvania.

### III.    ARGUMENT

**A.    Plaintiffs' Rule 23 Class Allegations And Certification Request Should Be Dismissed For Failure To Satisfy The Requirements Of Rule 23.**

Plaintiffs' class allegations and certification request must be dismissed because it is clear,

even at this stage of the litigation, that Plaintiffs' proposed class or subclasses cannot meet the

requirements for a viable class pursuant to Rule 23. Although Plaintiffs have not yet moved for

class certification, "courts may decide the issue of certification based on a review of the complaint

prior to a party's motion to certify the proposed class. In fact, Rule 23(c)(1) encourages courts to

'at an early practicable time determine by order whether to certify the action as a class action.'"

*Glewwe*, 2006 U.S. Dist. LEXIS 33449 at *7 (internal citations omitted). Accordingly, many

district courts have appropriately dismissed deficient Rule 23 class allegations pursuant to Rule

12(b)(6). *See, e.g., Otto v. Pocono Health Sys.,* 457 F.Supp.2d 522 (M.D. Pa. 2006) (granting

motion to dismiss plaintiffs' Rule 23 state law class claims under Rule 12(b)(6) on grounds that

Rule 23 opt-out state law class action claims could not proceed accompanied by a § 216(b) opt-in

action); *Himmelman v. Continental Cas. Co.,* No. 06-166, 2006 U.S. Dist. LEXIS 56187, at *5

(D.N.J. Aug. 11, 2006) (granting defendant's motion to dismiss/strike plaintiff's Rule 23 class

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 MJJ**                                                        **Page** 4

allegations because Rule 23 certification of state law claims is legally incompatible with FLSA claim); *Herring v. Hewitt Assoc., Inc.*, No. 06-267, 2006 U.S. Dist. LEXIS 56189 (D. N.J. Aug. 11, 2006) (granting defendant's Rule 12(b)(6) motion to dismiss Rule 23 class action allegations because they are incompatible with FLSA collective action).

To maintain a Rule 23 class action, a plaintiff must satisfy all the prerequisites of Rule 23(a).  Fed.R.Civ.P. 23(a).  Additionally, a plaintiff must fulfill the requirements for at least one of the three types of class actions enumerated in Rule 23(b).  Fed.R.Civ.P. 23(b); *see also Edwards v. City of Long Beach*, No. CV 05-8990, 2006 U.S. Dist. LEXIS 93141 at *10 (C.D. Cal. Dec. 12, 2006).  This is true even at this early stage of the litigation.  *See, e.g., Kamm v. California City Dev. Co.*, 509 F.2d 205 (9th Cir. 1975) (affirming district court's order granting defendant's motion, brought at inception of the case, to dismiss plaintiff-appellants' class action and striking class allegations from their first amended complaint for failure to satisfy requirements of Rule 23(b)(3)).

Here, Plaintiffs seek to bring a class action based on claims brought under the wage and hour laws and common laws of 38 states and territories.  Plaintiffs cannot establish that such a purported class meets the requirements of Rule 23.

> **1.      Plaintiffs Cannot Certify A Class Under Rule 23 Because They Cannot Establish That There Are Common Issues Or That Common Issues Predominate Where The Court Would Be Required To Apply The Laws Of 38 Jurisdictions.**

Federal courts throughout the country have held that class claims may not be certified pursuant to Rule 23(a)(2) or (b)(3) where they require the application of the laws of multiple states. The Western District of New York recently addressed the issue of multiple state claims in a class

action in three similar cases: *Glewwe v. The Eastman Kodak Co.*, 2006 WL 1455476 (W.D.N.Y. May 25, 2006), *Luciano v. The Eastman Kodak Co.*, 2006 WL 1455477 (W.D.N.Y. May 25, 2006), and *Letouzel v. The Eastman Kodak Co.*, 2006 WL 1455478 (W.D.N.Y. May 25, 2006) (collectively the "*Kodak* cases"). In the *Kodak* cases, like here, the plaintiffs sought damages under the FLSA and the wage and hour laws of over 30 states. In addition, the plaintiffs brought claims under the common laws of more than 40 states. In dismissing the state claims in each action, the Court held that the plaintiffs failed to establish both commonality under Rule 23(a) and the predominance of common issues as required by Rule 23(b)(3). *Glewee*, 2006 WL 1455476, at *2-4; *Luciano*, 2006 WL 1455477, at *2-5; *Letouzel*, 2006 WL 1455478, at *2-4. With respect to Rule 23(a), the court noted that each state's wage law had its "own peculiar requirements and defenses," and that adjudication of the wage and contract claims "would require the interpretations and application of several different laws of several different states and territories," and thus found that the plaintiffs' claims were not common to the class. *Glewwe*, 2006 WL 1455476, at *2; *Luciano*, 2006 WL 1455477, at * 2; *Letouzel*, 2006 WL 1455478, at *2. In addition, the court concluded that even if the plaintiffs could satisfy Rule 23(a), they failed to satisfy Rule 23(b), explaining that:

> [t]he employees at issue were employed in several different states at several different locations subject to different terms and conditions, and different state laws. Different remedies are available in each state, and the methods of overtime calculation vary from state to state. Because the issues common to the purported class members are actually subordinate to the issues unique to each of the individual members, I find that the plaintiffs failed to establish a basis for a class action pursuant to Rule 23(b)(3).

*Glewwee*, 2006 WL 1455476, at *3 (also stating that there was no risk of inconsistent adjudications as contemplated under Rule 23(b)(1) and that Rule 23(b)(2) was inapplicable to claims for damages); *Letouzel*, 2006 WL 1455478, at *3 (same). *See also Luciano*, 2006 WL

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 MJJ**                                                        **Page 6**

1455477, at *4 (same).

Notably, Courts in the Ninth Circuit also have held that a class is not certifiable under Rule 23 where the class action would require the analysis and application of the laws of multiple states. In *Zinser*, 253 F.3d at 1188-90, the Ninth Circuit Court of Appeals affirmed the District Court's denial of class certification where the class claims required the application of the laws of up to 48 states. In doing so, the Court of Appeals noted that common questions of fact and law do not predominate to the extent that "the laws of forty-eight states must be consulted to answer" questions related to class members' claims. *Id.* at 1189-90. Likewise, this Court previously has denied certification of state law claims involving multiple jurisdictions where the Court determined that certification of such claims would require application of California's choice of law principles to each state law claim. *Church v. Consolidated Freightways, Inc.*, No. C-90-2290, 1991 WL 284083 (N.D. Cal. June 14, 1991). In *Church*, this Court reasoned that:

> Given the number of causes of actions, the jurisdictions involved, and the presumed interest of each forum in regulating the employment relationships within its jurisdiction, the number of resolutions this Court must make even before approaching the merits of the action as to which law to apply is overwhelming. On this issue alone, then, a class action is not the superior method of adjudicating the interests implicated as determination of the choice of law issue would require numerous 'mini-trials' in and of itself.

*Id.* at *12.

Numerous other courts throughout the country also have found that the application of different states' laws militates against allowing a class action. *See e.g., Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 653-54 (C.D. Cal. Dec. 12, 1996) (denying certification in a tort action and holding that even if the state laws were relatively similar, the fact that the Court had to reference so many laws weighed against class certification); *In re Currency Conversion Fee Antitrust Litigation*, 230 F.R.D. 303, 312 (S.D.N.Y. 2004) (denying certification because variations in state

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 MJJ**                                                    **Page 7**

laws governing fraud, unconscionability, bad faith and unjust enrichment predominated over any common issues); *Cole v. General Motors Corp.*, 484 F.3d 717 (5th Cir. 2007) (denying certification of a nationwide class involving breach of express and implied warranty claims under 48 states' laws); *Parks Automotive Group, Inc. v. General Motors Corp.*, 237 F.R.D. 567 (D. S.C. 2006) (denying certification because individualized factual inquiries precluded adjudication of negligence, breach of warranty and indemnity claims on a class wide basis and several different contract laws, with different requirements and defenses, were involved).

Here, Plaintiffs assert claims for breach of contract, wage and hour violations, unjust enrichment, fraud and deceit, quantum meruit, negligent misrepresentation, and negligence under the laws of 38 states and territories.  (FAC. third – tenth causes of action.)  Plaintiffs' Complaint requires this Court to apply the laws governing these various claims in 38 different jurisdictions, all of which have an equal interest in regulating employment relationships.  Given the different requirements and available defenses under each state law, common issues of fact and law do not exist, and they clearly do not predominate in this case.

Importantly, subclasses would not remedy the defects of the proposed class.  For instance, in *In re: Paxil Litigation*, 212 F.R.D. 539 (C.D. Cal. Jan. 10, 2003), the plaintiffs proposed that putative class members in states with similar laws be grouped into subclasses.  The Central District denied certification and held that the subclass approach did not create a manageable trial plan because the plaintiffs failed to show that the differences between the state laws (that were grouped together within the proposed subclasses) were nonmaterial.  *Id.* at 543-45.  The court also noted that there was a question of whether due process rights would be violated by combining different state laws to create a new legal standard for each subclass.  *Id..*  Moreover, as this Court previously has found, the burden of reviewing the different laws of 38 jurisdictions itself would require a

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 MJJ**                                                                                    **Page 8**

finding that the class method is not superior because of the numerous mini-trials that would be required simply to conduct the choice of law analysis. *See Church*, 1991 WL 284083 at *12.

At bottom, Plaintiffs' class certification request would require the Court to apply the laws of 38 different jurisdictions, all of which have an interest in regulating employment relationships. The potential analysis and application of so many different laws creates an unmanageable case, where any common issues would be severely outweighed by individual state law analyses. Plaintiffs thus cannot meet the requirements of Rule 23(a)(2), nor can they meet the requirements of Rule 23(b)(3).

> ### 2.    Plaintiffs Cannot Certify A Class Under Rule 23(b)(1) Because They Cannot Establish A Risk Of Inconsistent Judgments Nor That There Is A Limited Pool Of Funds.

Plaintiffs' allegations likewise do not satisfy the requirements of Rule 23(b)(1). To satisfy Rule 23(b)(1), a plaintiff must satisfy either Rule 23(b)(1)(A), which allows for certification of a class (where Rule 23(a) is satisfied) if "the prosecution of separate actions ... would create a risk of ... inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class;" or Rule 23(b)(1)(B), which requires a showing of a risk of adjudications with respect to individual members of the class that would be dispositive of the interests of other members not parties to the adjudications or substantially impair their ability to protect their interests. Fed.R.Civ.P. 23(b)(1)(A) & (B); *see also Sepulveda v. Wal-Mart Stores, Inc.*, 245 F.R.D. 229, 245 (C.D. Cal. 2006). Plaintiffs cannot meet either of these standards.

In this case, Plaintiffs do not, and indeed cannot, allege any facts in their Complaint that would establish a risk that separate actions would produce incompatible judgments. The Ninth

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 MJJ**                                                      **Page 9**

Circuit in particular has adopted an "extremely conservative view" on whether this prong of the class test is met, requiring a finding that either: "(1) rulings in separate actions would subject defendant to incompatible judgments requiring inconsistent conduct to comply with the judgment; or (2) a ruling in the first of a series of separate actions will 'inescapably alter the substance of the rights of others having similar claims.'" *Sepulveda*, 245 F.R.D. at 245 (quoting *McDonnell Douglas Corp. v. U.S. Dist. Ct., C.D. Cal.,* 523 F.2d 1083, 1086 (9th Cir. 1975)). The Ninth Circuit also has held that Rule 23(b)(1)(A) certification should not be granted where the plaintiffs' claims are primarily for monetary relief. *See, e.g., Zinser*, 253 F.3d 1180; *In re Syncor ERISA Litig.*, 227 F.R.D. 338, 346 (C.D. Cal. 2005).

Here, as discussed below, Plaintiffs primarily seek monetary damages and therefore this case falls outside of the limited circumstances where plaintiffs in the Ninth Circuit have been able to satisfy the Rule 23(b)(1)(A) requirement for class certification. *Id.* In addition, there is no risk of inconsistent judgments. This case primarily involves Plaintiffs' claims that they were required to perform off-the-clock work, missed meal and rest periods and overtime payment. To recover, Plaintiffs would be required to individually prove they were required to work while off-the-clock, were not given meal and rest periods and to establish their individual damages. The ability of one plaintiff to establish that she worked while off-the-clock will have no bearing on the claims of others, thus negating any concern over inconsistent judgments.

Nor can Plaintiffs succeed under Rule 23(b)(1)(B), which requires that Plaintiffs demonstrate that the case involves a "fund with a definitely ascertained limit, all of which would be distributed to satisfy all those with liquidated claims based on a common theory of liability." *Zinser*, 253 F.3d at 1197 (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 841 (1999)). Rule 23(b)(1)(B) applies only where there is a limited, fixed pool of money available to cover the

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 MJJ** **Page** 10

would-be class members' damages and where the claims brought contain no "unique facts or individual relationships with" the party opposing class certification.  5 Moore's Federal Practice § 23.42.  Because Plaintiffs do not, and cannot, claim that Defendants have only a limited pool of funds to satisfy the class claims, and because the claims seek individualized monetary damages, Plaintiffs' class allegations cannot satisfy the requirements of Rule 23(b)(1).

> **3.**   **Plaintiffs Cannot Certify A Class Under Rule 23(b)(2) Because Monetary Relief Predominates Over Any Request For Injunctive Relief.**

Nor can Plaintiffs satisfy the requirements of Rule 23(b)(2).  It is well established, both in the Ninth Circuit and elsewhere, that class certification under Rule 23(b)(2) is not appropriate where the relief relates "exclusively or predominately to money damages."  *Nelsen v. King Cty.*, 895 F.2d 1248, 1255 (9th Cir. 1990).  *See also Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443, 448 (6th Cir. 2002) (reversing District Court's grant of class certification and finding that injunctive relief did not predominate); *Allison v. Citgo Pet. Corp.*, 151 F.3d 402, 411 (5th Cir. 1998) ("We, like nearly every other circuit, have adopted the position taken by the advisory committee that monetary relief may be obtained in a (b)(2) class action so long as the predominant relief sought is injunctive or monetary.")  Moreover, "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief...."  *Id.* at 413.  Where the requested compensatory relief requires individualized damages determinations, injunctive relief does not predominate and the class should not be certified under Rule 23(b)(2).  *Id..* at 415.

There is no question here that Plaintiffs' request for compensatory relief predominates over any claims for injunctive relief.  Plaintiffs' claims in this case relate to off-the-clock work, and missed meal and rest periods for which they allege they were not compensated.  Indeed, Plaintiffs'

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 MJJ**                                                                          **Page** 11

Complaint alleges seven different forms of off-the-clock work, plus a claim regarding improper calculation of overtime, that they claim pertain to employees in 38 jurisdictions. Compensatory damages for each of these claims, if proven, would have to be individually determined based on the number of hours each employee allegedly performed such work. Injunctive relief simply does not predominate where damages are dependent "on the intangible, subjective differences of each class member's circumstances." *Allison*, 151 F.3d at 415. Thus, Plaintiffs cannot seek certification under Rule 23(b)(2).

In short, Plaintiffs' cannot, under any circumstances, meet the requirements of Rule 23(a)(2) or (b). Thus, this Court should dismiss Plaintiffs' class action allegations.

### B.    Plaintiffs' Rule 23 Claims Are Incompatible With A Section 216(B) Action And Must Therefore Be Dismissed.

This Court should strike Plaintiffs' class action allegations and certification request under Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure for the separate and independent reason that Plaintiffs cannot maintain a Rule 23 opt-out action here while continuing to pursue their FLSA Section 216(b) opt-in collective action claims in the U.S. District Court for the Western District of Pennsylvania. Congress created the opt-in procedure under the FLSA "for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989). Allowing a plaintiff to circumvent the opt-in requirement and bring unnamed parties into court by calling upon state statutes similar in substance to the FLSA that lack the opt-in requirement would undermine Congress's intent to limit these types of claims to collective actions. *See, e.g., McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 577 (N.D. Ill. 2004).

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 MJJ**                                                                    **Page** 12

Consistent with the Congressional purpose behind the FLSA, courts in the Ninth Circuit have found Rule 23 class actions inherently incompatible with Section 216(b) claims. *See, e.g.*, *Edwards*, 2006 U.S. Dist. LEXIS 93141; *Madrigal v. Green Giant Co.*, No. C-78-157, 1981 U.S. Dist. LEXIS 15325 at *9 (E.D. Wash. July 27, 1981) (dismissing plaintiffs' state law wage claims on the grounds that "their inclusion in the complaint as alternative remedies for enforcing the FLSA runs afoul of the intent of Congress in enacting the FLSA"). As the Court in *Edwards* explained, "allowing both a § 216(b) collective action and a Rule 23 class action to proceed would frustrate the purpose of requiring plaintiffs to affirmatively opt-in to § 216(b) collective actions." *Edwards*, 2006 U.S. Dist. LEXIS 93141 at *17. Indeed, "the policy behind requiring FLSA plaintiffs to opt-in to the class would largely be thwarted if a plaintiff were permitted to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement." *Id.* (quoting *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 470 (N.D. Cal. 2004). *See also Himmelman.*, No. 06-166, 2006 U.S. Dist. LEXIS 56187, at *5 (D.N.J. Aug. 11, 2006) (granting defendant's motion to dismiss/strike plaintiff's Rule 23 class allegations because state law class allegations are legally incompatible with FLSA claim); *Herring v. Hewitt Assoc., Inc.*, No. 06-267, 2006 U.S. Dist. LEXIS 56189, at *5 (D. N.J. Aug. 11, 2006) ("[T]hese two schemes are inherently incompatible."); *see also Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, 862 (9th Cir. 1977) ("Rule 23 and § 216(b) class actions are 'mutually exclusive' and 'irreconcilable'"); *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975) (observing that the "two types of class actions are <u>mutually exclusive</u> and <u>irreconcilable</u>" and stating "[i]t is crystal clear that §216(b) precludes pure Rule 23 class actions in FLSA suits" (emphasis added)).

In addition, allowing Plaintiffs to assert concurrent Rule 23 class claims here would defeat

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 MJJ**                                              **Page** 13

Section 216(b)'s intent to afford individuals a substantive right to control the adjudication of their

wage claims.  As noted by one court:

> It is clear that Congress labored to create an opt-in scheme when it created
> Section 216(b) specifically to alleviate the fear that absent individuals
> would not have their rights litigated without their input or knowledge.  To
> allow a Section 216(b) opt-in action to proceed accompanied by a Rule 23
> opt-out state law class action claim would essentially nullify Congress's
> intent in crafting Section 216(b) and eviscerate the purpose of Section
> 216(b)'s opt-in requirement.

*Otto v. Pocono Health Sys.*, 457 F Supp. 2d 522, 524 (M.D. Pa. 2006).  Allowing a Rule 23 class

to proceed here would effectively circumvent these substantive FLSA rights because any

individuals who choose not to opt-in to the FLSA collective action will nevertheless have their

wage claims resolved through the Rule 23 opt-out class action, and the collateral estoppel and/or

*res judicata* doctrine will foreclose their ability to bring their own wage claims.  *See e.g., Chao v.*

*A-One Med. Serv., Inc.*, 346 F.3d 908, 920-923 (9th Cir. 2003) (dismissing the FLSA claims of one

employee (out of 8) on *res judicata* grounds because she had previously filed state law overtime

claims against her employer); *Tran v. Le French Baker, Inc.*, No. C-94-0482 VRW, 1995 U.S.

Dist. LEXIS 8371 (N.D. Cal. 1995) (finding plaintiff's FLSA collective action claims barred by the

*res judicata* effect of plaintiff's prior state administrative claim for unpaid overtime).

Indeed, Courts in the Ninth Circuit have held that a Rule 23 class action cannot be

maintained simultaneously with an FLSA collective action because "confusion would result from

requiring potential plaintiffs to both opt-in and opt-out of the claims in the suit."  *Edwards*, 2006

U.S. Dist. LEXIS 93141 at *14-15.  *See also McClain*, 222 F.R.D. at 577 (noting "the inherently

contrasting nature of opt-in versus opt-out actions would create challenges were these actions to

proceed simultaneously in federal court" because, among other things, it is confusing for a

potential class member to receive a notice indicating that they must opt out of some claims and opt

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 MJJ**                                                   **Page** 14

in to others). Such confusion could result in the loss of rights by Rule 23 plaintiffs, whose interests Plaintiffs purport to represent, because those who do not opt-out of a Rule 23 class are bound by the judgment. *See LaChapelle*, 513 F.2d at 288.

The decisions of this Court's sister courts, and courts nationwide, apply with equal force to Plaintiffs' Rule 23 claims in this case even though Plaintiffs' FLSA opt-in claims are being litigated in a different court. Indeed, there is no substantive difference as far as the purpose and intent of the FLSA is concerned between bringing the incompatible opt-in and opt-out claims in the same court or in different courts. Under either scenario, Plaintiffs' Rule 23 opt-out class claims defeat the purpose of the FLSA's opt-in procedure, whether the purpose is to protect the employer "from the burden of representative actions," *Hoffman-La Roche*, 493 U.S. at 173, or to provide absent class members with the power to control the adjudication of their claims, *Otto*, 457 F Supp. 2d at 523-24. Regardless of whether the claims are brought in one court or two courts, Plaintiffs seek to backdoor Rule 23 claims to attain a broader class than would be attained under a Section 216(b) collective action, at the expense of both the Defendants and putative class members who choose not to opt in to the collective action. Moreover, the potential for confusion that concerned the *Edwards* court is even greater in a case such as this because not only would putative class members receive conflicting opt-in and opt-out forms, but such forms would come from two separate courts, thus – understandably – increasing the potential for confusion for putative class members who may not understand why essentially the same claims are being litigated in two different federal courts, using two different class procedures, in different parts of the country.

Plaintiffs thus can neither meet the requirements for class certification under Rule 23, nor can they bring Rule 23 claims consistent with their Section 216(b) collective action claims. Their class allegations and certification request therefore should be stricken from the Complaint.

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 MJJ**                                                          **Page 15**

1    According to the Ninth Circuit, it is appropriate to strike such allegations at the inception of the

2    case. *See, e.g., Kamm*, 509 F.2d 205 (9th Cir. 1975) (affirming district court's order granting

3    defendant's motion to dismiss brought at inception of case pursuant to Rule 23(c) and (d) and

4    dismissing plaintiff-appellants' class action and striking class allegations from their first amended

5    complaint on the ground that the alleged class action was not the superior method for resolving the

6    alleged controversy).

7

8        **C.        Plaintiffs' Claims Against SCI Should Be Dismissed Because SCI Is Not An**

9                    **Employer And Is Not A Successor-In-Interest To Alderwoods' Liability.**

10        The Court should dismiss Plaintiffs' claims against SCI in their entirety because the

11    Western District of Pennsylvania already has determined that SCI is a holding company without

12    any employees and, as such, is not the employer of any of the Plaintiffs in this action.  Indeed, it is

13    well established that that holding companies are not employers in the context of wage and hour

14    litigation. *See, e.g., Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725 (S.D. Ohio 2006)

15    (holding that company with no employees or payroll is not an employer); *Hopkins v. Texas Mast

16    Climbers, LLC*, No. H-04-1884, 2005 U.S. Dist. LEXIS 38721, *12 (S.D. Tex. Dec. 14, 2005)

17    (dismissing claims against holding company and finding holding company not an "employer"

18    under federal law); *Abarca v. Manheim Services Corp.*, No. 05 C 3873, 2006 U.S. Dist. LEXIS

19    13777, * 10-11 (N.D. Ill. March 24, 2006) (holding that a parent corporation is considered an

20    employer under federal law "only where it exercises day-to-day control over the employees at

21    issue.")

22

23        Here, the U.S. District Court for the Western District of Pennsylvania has found – on two

24    occasions – that SCI is a holding company without any employees and, accordingly, that a class

25    cannot be certified against it.  Specifically, on April 19, 2007, Judge Joy Flowers Conti denied

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 MJJ**                                              **Page 16**

conditional certification with respect to SCI, stating "I am not sure that I would be able to move forward and certify a class of employees if [SCI] is merely a holding company and really wouldn't have those type of [non-exempt] employees." (Apr. 19 Tr. at 8:18-21, attached hereto as Ex. "A".) However, Judge Conti allowed Prise and Rady to conduct additional discovery with respect to SCI and to renew their request for conditional certification, which they did on June 8, 2007. At a hearing on that renewed motion on September 6, 2007, Judge Conti again held that SCI was not an employer and thus could not be responsible for any of the conduct alleged by Prise and Rady. In so holding, Judge Conti rejected Prise's and Rady's arguments that SCI could be liable as a parent corporation, stating that "SCI as the corporate board is not doing something overtly to be involved in the management or the operation control of the business." (Sept. 6 Tr. at 10-11, attached hereto as Ex. "B".) Notably, all of the Plaintiffs in this lawsuit also have opted-in, or attempted to opt-in, as plaintiffs in the Pennsylvania lawsuit, meaning that Judge Conti's determination that SCI is not an employer applies directly to the Plaintiffs in this action.

Plaintiffs thus know, from their experience in the Western District of Pennsylvania, that SCI is not an employer and is not a proper defendant in their lawsuits seeking overtime pay from the Defendants. Plaintiffs were fully motivated to litigate this issue in Pennsylvania and twice fully briefed and argued the question of SCI's status. But, having been denied twice in Pennsylvania, Plaintiffs seek to take another bite out of the apple here, hoping for a different result in a different forum. This Court should not countenance Plaintiffs' tactics, and should dismiss SCI from this case.

SCI also cannot be held liable, as alleged in the Complaint (FAC. ¶ 38), as "a successor-in-interest to Defendant Alderwoods' liability" because SCI did not enter into any merger transaction with Alderwoods. Indeed, Plaintiffs have acknowledged in yet another case filed in the Western

District of Pennsylvania[1] that Alderwoods merged, not with SCI, but with an SCI subsidiary, Coronado Acquisition Corporation, on or about November 28, 2006. The surviving corporation is Alderwoods Group, Inc., a wholly-owned subsidiary of SCI. *See Prise, et al. v. Alderwoods Group, Inc., et al*, Case No. 2:06-cv-01470-JFC, Docket No. 33 (Pls.' Mot. for Leave to File Second Amd. Compl. ¶ 9, attached hereto as Ex. "C".) This is a standard "triangle" merger, a "common" and "legitimate" form of merger under the law. *See Lewis v. Ward*, 852 A.2d 896, 906 (Del. Super. Ct. 2004); *see also Morgan v. Powe Timber Co.*, 367 F. Supp. 2d 1032, 1035 (S.D. Miss. 2005) (quoting Balotti and Finkelstein, The Delaware Law of Corporations and Business Organizations § 9.7 (Aspen Law & Business 1998), explaining "A triangle merger permits A, the acquiring company, to acquire control of T, the target company, without A being a constituent corporation, by forming a new Delaware subsidiary, (S), into which T is merged.").

Plaintiffs' claim that SCI is liable as a successor-in-interest to Alderwoods' liability based on this transaction is contrary to basic corporate law principles. A parent corporation, except in extraordinary circumstances, is not liable for its subsidiaries' actions. As the United States Supreme Court has noted, "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). Likewise, the "[m]ere ownership of a subsidiary does not justify the imposition of liability on a parent corporation. Such liability only is appropriate 'when the court must prevent fraud, illegality or injustice, or when

---

[1] On November 6, 2006, Plaintiffs Prise and Rady filed a Complaint in the U.S. District Court for the Western District of Pennsylvania, Court, Civil Action No. 2:06-cv-01470-JFC, against Alderwoods Group, Inc. and certain Alderwoods subsidiaries alleging violations of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) *at seq.* and the Equal Pay Act, 29 U.S.C. § 206.

**MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**
**Case No. C 07-05140 MJJ**                                                                 **Page 18**

recognition of the corporate entity would defeat public policy or shield someone from liability for a crime.'" *Mitsubishi Corp. v. Goldmark Plastic Compounds, Inc.*, 446 F. Supp. 2d 378 (W.D. Pa. 2006) (quoting *Zubik v. Zubik*, 384 F.2d 267, 272 (3d Cir. 1967)).

Plaintiffs here have not alleged any form of fraud, illegality or injustice that would require SCI to be a party to this lawsuit. To the contrary, Alderwoods merged with an SCI subsidiary and continues to exist as a corporation, separate and distinct from SCI. As a matter of law, SCI, as a parent company, cannot be liable as a successor-in-interest to Alderwoods. Thus, to the extent that Plaintiffs assert claims against SCI as a "successor-in-interest" to Alderwoods (FAC. ¶ 19), those claims must be dismissed.

**D.    Plaintiffs' First and Second Causes of Action Should Be Dismissed Because They Have Failed to Comply with California Labor Code Section 2699.**

Plaintiffs' First and Second causes of action allege technical violations of the California Labor Code which are subject to the provisions of Labor Code Section 2699, the "Labor Code Private Attorneys General Act of 2004" (hereinafter "PAGA"). The First and Second causes of action must necessarily fail because Plaintiffs have not and cannot plead and prove their compliance with PAGA.

The recently enacted Private Attorney General Act of 2004, allows aggrieved employees to bring civil actions to recover penalties for violations of the Labor Code when the Labor Commissioner fails to act. A civil action seeking civil remedies available under the Act, which are enumerated in Section 2699.5 may not be commenced (or a pending action amended to include a Section 2699 claim) until the following statutory requirements have been met:

////

A. ***Written notice to the employer and the state:*** The aggrieved party must give written notice *by certified mail* to the employer and the Labor and Workforce Development agency specifying the Labor Code provisions violated, 'including the facts and theories to support the alleged violation.' Lab C § 2699.3(a)(1); and,

B. ***Agency Action:*** If the Agency does not intend to investigate the alleged violation, it must so notify the aggrieved employee and the employer by certified mail within 30 days after the employee's was postmarked. The aggrieved employee may file a §2699 action upon receipt of the Agency's notice; or if the Agency fails to provide notice, within 33 days after the employee's notice was postmarked. Lab.C. §2699.3(a)(2)(A). If the Agency intends to investigate the alleged violation, it must so notify the aggrieved employee and the employer with 33 days after the employee's notice was postmarked. It then has 120 days to issue a citation. Lab.C. § 2699.3(a)(2)(B).

*See also, Caliber Bodyworks, Inc, v. Superior Court, (2005) 134 Cal.App.4[th] 365.*

*[holding that causes of action, and portions thereof, seeking civil remedies available under the Act were subject to notice and exhaustion perquisites under the Act.]*

Here, Plaintiffs First and Second causes of action seek civil penalties which are subject to the PAGA notice and exhaustion requisites. Plaintiffs have not and cannot plead that they have properly satisfied these statutory prerequisite prior to filing their civil action. They have not provided written notice to either defendant, or the State. Consequently, Plaintiffs cannot plead that the State has taken any action in response to alleged Labor Code violations by defendants. The First and Second cause of action must therefore be dismissed.

////

////

////

////

////

## IV.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court issue an order dismissing and/or striking Plaintiff's Rule 23 class certification allegations (specifically, FAC., ¶¶ 8, 50-58; and all references to "Class Members" and "Subclasses" contained in the Complaint), and dismissing SCI with prejudice.

Dated:   November 6, 2007                              GURNEE & DANIELS LLP


By _____s/David M. Daniels_____
                                                    STEVEN H. GURNEE, ESQ.
                                                    DAVID M. DANIELS, ESQ.
                                                    Attorneys for Defendants
                                                    ALDERWOODS GROUP, INC. and
                                                    SERVICE CORPORATION
                                                    INTERNATIONAL

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

---

DEBORAH PRISE, et al

                                        Plaintiffs

            vs.                         Civil Action No. 06-1641

ALDERWOODS GROUP, INC., et al

                                        Defendants

---

PROCEEDINGS

        Transcript of Hearing on Thursday, April 19, 2007,
United States District Court, Pittsburgh, Pennsylvania,
before Honorable Joy Flowers Conti, District Judge.

APPEARANCES:

For the Plaintiffs:            J. Nelson Thomas, Esq.
                              Charles H. Saul, Esq.
                              Patrick J. Solomon, Esq.
                              Liberty J. Weyandt, Esq.
                              Justin Cordello, Esq.
                              Michael Lingle, Esq.

For the Defendants:           Matthew W. Lampe, Esq.
                              Amy E. Dias, Esq.


                              Reported by:
                              Michael D. Powers
                              Official Court Reporter
                              Room 5335 USPO & Courthouse
                              Pittsburgh, Pennsylvania 15219
                              (412) 208-7572


Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.

1                   P R O C E E D I N G S

2    (Court reconvened on Thursday, April 19, 2007, at 4:00 p.m.)

3              THE COURT:  This is a hearing on a motion for

4    expedited collective action notification and a motion to

5    strike in the civil action Prise versus Alderwoods Group

6    Inc., Civil Action No. 06-1641.

7              Will counsel please enter your appearance.

8              MR. THOMAS:  Yes, Your Honor.  Nelson Thomas on

9    behalf of the plaintiffs.

10             MR. SOLOMON:  Patrick Solomon on behalf of the

11   plaintiffs.

12             MR. SAUL:  Charles Saul on behalf of the

13   plaintiffs.

14             MS. WEYANDT:  Liberty Weyandt on behalf of the

15   plaintiffs.

16             THE COURT:  I am sorry?

17             MS. WEYANDT:  Liberty Weyandt on behalf of the

18   plaintiffs.

19             MR. CORDELLO:  Justin Cordello on behalf of

20   plaintiffs.

21             MR. LINGLE:  Michael Lingle on behalf of the

22   plaintiffs.

23             THE COURT:  Who is going to be speaking for the

24   plaintiffs?

25             MR. THOMAS:  Your Honor, I will be.  Nelson Thomas.

1            THE COURT:  Nelson Thomas.

2            MR. LAMPE:  Matthew Lampe on behalf of the

3    defendants.

4            MS. DIAS:  Amy Dias on behalf of the defendants.

5            THE COURT:  Who will be speaking on behalf of the

6    defendants?

7            MR. LAMPE:  I will, Your Honor.  Matthew Lampe.

8            THE COURT:  This is a hearing on a motion for an

9    expedited collective action notice to go out, and I have

10   already had sort of a preliminary hearing on this previously,

11   and that was held on January 31st, 2007, of this year.

12           And the standards that the Court went through there

13   in considering a motion for expedited class notification

14   pursuant to Section 216(b) of the Fair Labor Standards Act --

15   and I will call that throughout this hearing the FLSA -- the

16   potential plaintiffs must opt into a collective action suit

17   and affirmatively notify the Court of their intentions to

18   join the suit.

19           In order to facilitate that notice, the

20   representative plaintiffs must show that the potential

21   plaintiffs are similarly situated to the representative

22   plaintiffs and that the action should go forward as a

23   representative action.  To establish that the absent

24   collective action member is similarly situated, plaintiffs

25   must, one, be or have been employed in the same corporate

1    department, division and location; two, have advanced similar

2    claims; and, three, have sought substantially the same form

3    of relief.

4         And that is from Asencio versus Tyson Foods, Inc.,

5    130 F.Supp. 660, Eastern District of Pa., 2001, citing

6    Lockhart versus Westinghouse Credit Corp., 879 F.2d 43,

7    Third Circuit, 1989.

8         There is a two-tier approach that courts often use

9    with respect to determining whether plaintiffs are similarly

10   situated.  Mooney versus Aramco Service Company,

11   54 F.3d 1207, Fifth Circuit, 1995.  The first stage or the

12   first tier is what is called the notice phase.  And that

13   begins when the plaintiff seeks authorization to issue notice

14   to the other prospective class members which would permit

15   them to be notified that they could opt into the action.

16        This notice usually occurs at an early stage and

17   the Court will determine the viability of a possible class

18   based upon the claim and affidavits in support of that claim.

19        Morisky versus Public Service Electric and Gas

20   Company, 111 F.Supp.2d 493, District of New Jersey, 2000.  At

21   this first tier, there is a relatively low burden to show the

22   similarly situated requirement.

23        And from Asencio, 130 F.Supp.2d at 663, the Court

24   may conditionally certify the class for the purposes of

25   notice and discovery under a comparatively liberal standard,

1    that is, by showing that or by determining that the members

2    of the punitive class, quote, were together the victims of a

3    single decision, policy or plan, close quote.

4         Sperling versus Hoffmann-LaRoche, 118 F.R.D. 392,

5    District New Jersey affirmed 862 F.2d 439, Third Circuit,

6    1988.

7         And after the first tier, then the second tier will

8    occur where all the consents have come in and there will be

9    further discovery to determine whether or not the defendant

10   violated the FLSA and the matter is ready for trial. And at

11   that second tier, the Court will reconsider the class

12   certification issue in light of the similarly situated

13   standard. And will conduct a specific fact review with

14   respect to the class members who have opted in, and will look

15   at matters such as employment setting, defenses and other

16   procedural issues.

17        The Court finds that at the second tier, if they

18   are not similarly situated, then the conditional class is

19   de-certified.

20        At this stage, we are at what I would classify the

21   first tier. It's a question of whether the notice should go

22   out. And given that this is a collective action under

23   Section 216(b) of the FLSA, there is potential prejudice if

24   notice doesn't go out because as the clock goes on,

25   individuals will lose their rights because they may be barred

1   in whole or in part for some claims that they may

2   legitimately have if, down the road after discovery is

3   completed, or whatever discovery is relevant to what we would

4   normally do in a Rule 23 class action situation, having a

5   more robust hearing and a more lengthy time prior to the

6   determination of class certification, valuable rights could

7   be lost.

8           So, I think that's why the courts do take an

9   approach at this stage to be fairly liberal in approaching

10  the decision-making process.

11          My preliminary sense, having read the various

12  briefing, is that at least with respect to Alderwoods, the

13  questions of whether there is a common policy with respect to

14  the five classes, I think there would have to be some

15  refinement of the notice that would go out and a refinement

16  of the punitive classes that, at this preliminary stage

17  without really looking at the merits, just looking at some of

18  the filings that were made and the allegations, that there is

19  arguably enough to move forward on.

20          And the things that the Court would look to at this

21  stage would be the affidavits.  I know there is a motion to

22  strike that is there, but -- and some of it is set forth as

23  being hearsay.  But, some of the things that are hearsay --

24  and I will hear some argument on this -- I am not sure is

25  hearsay.  It may be admissions if a manager is making a

1  statement.  If it would fall within that party admission, it
2  is not hearsay.

3         I can tell you if a superior or representative of
4  the company tells me something and that is adverse to the
5  company, I can certainly put that in an affidavit because it
6  might be a party admission and, therefore, could come in.

7         So, you know, it may not be -- everything that was
8  arguably set forth as hearsay doesn't necessarily fall within
9  that.  And then there is an affidavit from someone who is or
10  was a manager and had a familiarity and said that they were
11  familiar with the corporate policies across the board, and
12  whether, on cross-examination, if they are deposed and it
13  comes out that they really lack a complete foundation for
14  that, I think that's a different story.  But, just to take
15  the affidavit at face valid may be enough at this stage to
16  move forward.

17         I am more troubled about the issues with respect to
18  Service Corporation International.  There is, in the
19  defendant's response, a statement that Service Corporation
20  International is, itself, just a holding company and that has
21  no employees.  That's typically the way -- or if they do have
22  employees, they are generally the very high-up officers of
23  the company, would not be the hourly employees of the nature
24  that would be the punitive class members in this case.

25         So, if that is the case, even though you have a

1    10K, a 10K is usually, you know, is usually done on a

2    consolidated basis where they are representing a multiple

3    tier of companies.  And I know, and I did look over the 10K

4    where it used the words, we have this and we have that.  But,

5    as a legal matter, maybe they don't have employees.  And I

6    have sufficient concerns about that, but I don't think I can

7    rely purely on a 10K in making that assessment.

8           So, my question would be if you have -- if you

9    operate as a holding company and you have fifty subsidiaries,

10   say, you have a subsidiary in each state, you have a separate

11   entity in each state, do you have to sue each separate

12   subsidiary and then you can bring them all together?  Or can

13   you just, in this context, sue the parent and make them

14   liable for the overtime or FLSA infractions that are at issue

15   here?  I don't know.

16          I don't have an answer to that and it wasn't

17   robustly briefed by the parties, but I am troubled by that.

18   So, I am not sure that I would be able to move forward and

19   certify a class of employees if the defendant is merely a

20   holding company and really wouldn't have those type of

21   employees.

22          So, what good have we done to send out the notice?

23   We will get a flurry of people coming back.  But, if you tell

24   the defendants to send it out to your employees, you know,

25   they will send it out maybe to the head officers who won't be

1 | within that class.

2 |         So, those are sort of the issues that I see here
3 | today.

4 |         So, I will let the defendants be heard first on the
5 | Alderwoods situation because my preliminary assessment would
6 | be in favor of the plaintiffs, albeit I think there is some
7 | refinements that have to be made to the punitive classes, as
8 | well as to the form of notice that they are proposing to
9 | send.

10 |         MR. LAMPE:  Thank you, Your Honor.  Good afternoon.
11 | I am not sure if this is on or if I am speaking loudly
12 | enough.  May I address the SCI issue first?

13 |         THE COURT:  Yes.  I am sort of going in your favor
14 | that way.

15 |         MR. LAMPE:  I understand.  I wasn't sure if
16 | procedurally you wanted me to speak second to him on that.

17 |         THE COURT:  I sort of found for you.  I would like
18 | to hear from the other side if I have it wrong unless you
19 | know something I don't.

20 |         MR. LAMPE:  I would like to point out there was an
21 | allegation made in the plaintiff's reply brief as to Service
22 | Corporation International relying on, and you alluded to it,
23 | relying on the annual report and the 10K.  And what I think
24 | is important to point out to Your Honor is, I have the -- all
25 | three of them here and would be happy to submit them, but in

1    the annual report, there is the annual report and then the
2    10K is right behind, it's a booklet.

3            And if you open the annual report and look at the
4    very first page, there is a reference to the Service
5    Corporation International and it goes on to speak about it,
6    and there is an asterisk after Service Corporation
7    International.  If you go down to the bottom of the page, you
8    will see the very point that you were making, and that is
9    that, as used here, SCI and the company refer to Service
10   Corporation International and companies owned directly or
11   indirectly by Service Corporation International.

12           So, there is simply nothing inconsistent with our
13   affidavit that we submitted indicating that this is a holding
14   company that has no employees.  It's not just a few.  It has
15   none.  And these annual reports -- because, as you said, this
16   is a consolidated report and the footnote very specifically
17   says that at the top --

18           THE COURT:  That would be -- my understanding would
19   be consistent with how public companies handle their 10K
20   reporting requirements.

21           MR. LAMPE:  So, as to SCI, it is a holding company.
22   It has no employees.  It would be pointless to issue notice
23   to its employees.  There are none.

24           And you are right that there was no briefing or
25   discussion of the other question that you raised about

1    whether or not --

2            THE COURT:  You could just sue the parent and bring

3    them all in?

4            MR. LAMPE:  Right.

5            THE COURT:  In a normal case, you wouldn't be able

6    to do that.  I don't know if there is some exception in these

7    circumstances.

8            MR. LAMPE:  Under the FLSA, there is a doctrine

9    called the single employer, also referred to as the joint

10   employer doctrine.  It is, as you would expect, the parent

11   can be held liable based on the fact of the -- based on the

12   six factor test, whether there is interlocutory boards,

13   whether the formalities are observed --

14           THE COURT:  We don't have any of that.

15           MR. LAMPE:  Right, Your Honor.  There has been no

16   evidence at all to suggest that the parent could be liable

17   for the acts of these various and myriad subsidiaries spread

18   around the country.

19           So, we would submit that your tentative views on

20   the issue of SCI are correct and that no notice to the order

21   should be issued at this time.

22           THE COURT:  At this time.

23           MR. LAMPE:  I am going to try convince you that

24   your preliminary views to Alderwoods is not right.  In a case

25   like this, as you said again, you previewed the law.  The

1    issue is, is there evidence of a common unlawful policy?

2            THE COURT:  Right.  And you have a number of

3    affidavits, some of which is hearsay.  So, the hearsay, I

4    will tell you I will disregard the hearsay or give it very

5    little weight.

6            It is very different at this stage where it is

7    not -- I am not making factual findings, so there are a

8    number of other cases, none that are precedential for this

9    Court, that have discussed the motion to strike in this

10   context.  That's Crawford versus Lexington-Fayette Urban

11   County Government, 2007 Westlaw 293865, Eastern District

12   Kentucky, January 26, 2007, showing the relaxed standard.

13           But, I think most Judges would say at this stage

14   when you are reviewing this type of information, if it is

15   true hearsay, you give it very little weight, if at all, and

16   I can disregard it and I can treat each of those affidavits

17   in an appropriate fashion.

18           There is some other aspect of the affidavits,

19   however, that I don't find would be hearsay and would have

20   some evidential value with respect to these matters and I

21   just commented on a few of those aspects.

22           MR. LAMPE:  In these cases, they set up, as you

23   said, is there evidence of a common unlawful policy?  And

24   there is a distinction in the cases between, on the one hand,

25   evidence of wage problems that could suggest a common,

1    unlawful corporate policy.

2         On the other hand, there is cases that deal with

3    allegations of wage problems that were very apparently

4    violations of company policy and certainly not the sum and

5    substance of company policy.

6         THE COURT: I understand that there are. I

7    understand from the record, and I will put this on there,

8    that there are corporate policies that Alderwoods have that

9    would be clearly in compliance with the law. So, the formal

10   policies are in compliance with the law.

11        The question is whether, notwithstanding the

12   corporate policy, there was an unwritten policy to, in

13   effect, violate the written policies and to, say, disregard

14   that and do something different which the plaintiffs argue is

15   violative of the FLSA.

16        MR. LAMPE: And that was exactly what I was going

17   to say, and let me move to the next step.

18        What we have then is, we have lawful policies that

19   state employees are to be paid for all of their hours. We

20   have allegations from five affiants, there was a sixth

21   Alderwoods affiant included in the plaintiff's reply brief

22   that said your order said they weren't allowed. There are

23   five Alderwoods affiants; three of them are from the

24   Pittsburgh area, two others are from other areas. All five

25   are in one of twenty-five nonexempt positions represented and

1    these five individuals do, in fact, claim that they
2    experienced wage problems.

3         In the context of the evidence before the Court,
4    and there is the cases such as Harrison versus McDonald's and
5    Flores versus Lifeway and England versus New Century, they
6    say that the mere fact that there are some allegations is not
7    sufficient to justify conditional certification.

8         And the Flores case, for instance, dealt with a
9    situation where there were two allegations out of fifty
10   employees and the Court said that is not enough.

11        The England case, in that case, there were two
12   hundred affidavits, but it did not show any kind of a nexus
13   to any sort of corporate policy. And the Court said that is
14   not enough. These are local complaints. They are
15   insufficient to establish a company policy.

16        THE COURT:  That is why I made reference to the one
17   fellow that was the manager. That was the one that was most
18   compelling. Let's talk about him.

19        MR. LAMPE:  McDonald's -- Harrison versus
20   McDonald's, this is a case where there were comments
21   attributed to a manager who supposedly said that there was
22   improper wage violations going on in that unit and the Court
23   said -- the Court did not find that to be sufficient to
24   justify notice and denied the motion. And there is only one
25   manager here and this is a manager whose name is --

```
 1           THE COURT:  Deborah Prise?
 2           MR. LAMPE:  Prise is the plaintiff, right.
 3           THE COURT:  Who was the manager?
 4           MR. LAMPE:  There is a manager.
 5           THE COURT:  In this case.
 6           MR. LAMPE:  There is a manager named --
 7           THE COURT:  She says as a manager, she was aware of
 8  the defendant's company-wide policy, policies, and was
 9  responsible for the enforcement of those policies at her
10  facility and the policies were issued from the defendant's
11  Cincinnati, Ohio headquarters and most were contained in the
12  defendant's policy and procedures binder.  Then goes on to
13  describe those.
14           So, I am not -- you know, so this, what is the one
15  that is speaking to company-wide policy?
16           MR. LAMPE:  Let me raise -- address the very point
17  that you mentioned.  She said that there are policies kept in
18  a binder.  She does not say that the policies that she is
19  about to describe were among those in the binder.
20           THE COURT:  Says most were contained.
21           MR. LAMPE:  And she goes on to describe policies.
22  She does not say they are in the binder.  There is a policy
23  that says you have to work in the community.  So, I think
24  that there is -- I think that is a little misleading.  There
25  are no written policies that reflect these five supposedly
```

1  unlawful policies and she -- saying she enforced those

2  policies at other her locations.

3          I would pose this question:  If there is a written

4  policy everyone needs to get paid for all of their hours of

5  work and there is some unwritten company policy that says you

6  violated the written policy, what foundation is there in the

7  record that this woman, who worked at one location in the

8  Pittsburgh area, would have knowledge of these practices that

9  occurred in other locations throughout the forty states where

10 this company operates?

11         It would be different if she had a written policy

12 that said you are supposed to work off --

13         THE COURT:  But, then you will never, ever have a

14 case based on an unwritten policy.  A lot of the things may

15 be fodder for depositions and cross-examination of the

16 witness.  But, this is a person who purports, because of the

17 position that she held, to be aware of company-wide policies.

18         MR. LAMPE:  Yeah.

19         THE COURT:  So, I don't know what more -- and then

20 goes on with some specificity to talk about those and some of

21 the indications that they have.

22         MR. LAMPE:  We would submit that in a case where

23 there is a written policy that's lawful where there is no

24 production of an unlawful written policy and where there is

25 no explanation in the record for how this individual, who

```
 1    worked in one place, supposedly had knowledge of practices
 2    across the country, and that is insufficient, and it is a
 3    very isolated instance.
 4          And this case does line up with the other ones in
 5    which notice was denied because in the context of how many
 6    employees and how many states there are operations, the
 7    allegations are insufficient to justify notice at this point.
 8          Let me move to another point.  You mentioned the
 9    class definition.
10          THE COURT:  Before you go there, you would agree
11    with me then, wouldn't you, at least as to the locale in
12    which she was operating, whether it would be Pennsylvania or
13    the areas that she would be in, as well as some of the other
14    employees that are here, that you could have class issues
15    with respect to -- you could have at least a subclass that
16    may survive?
17          MR. LAMPE:  We would say that, at the very most,
18    notice would issue for two locations, Brandt and Hirsch.
19    Those are two facilities where she was involved.
20          THE COURT:  Before we move off of that, I would
21    like to hear from the plaintiffs with respect to this
22    particular affidavit and this particular manager because this
23    is the most compelling support for the class, the nationwide
24    notification.
25          MR. THOMAS:  To the podium it is better?
```

```
 1          THE COURT:  You don't have anything further on this
 2   issue, on this affidavit?
 3          MR. LAMPE:  I have more on Alderwoods, but not on
 4   this one.
 5          THE COURT:  On this one, right.  It is easier for
 6   me if I keep the issues together.
 7          MR. THOMAS:  Your Honor, I would note several
 8   things.
 9          First of all, the vast majority of cases, as this
10   Court has cited and held, go contrary to the very few
11   outliners on which defendants rely and, in fact, even the
12   cases on which they rely, they are patently distinguishable
13   from this case here.
14          But, let me leave that aside because I think the
15   standard has been set by the Court and we are in agreement
16   with that.
17          In terms of Alderwoods, it is not correct to say
18   that we have one manager's testimony.  We have Deborah Prise,
19   who is a manager.
20          THE COURT:  But, I think his issue -- and this is
21   what you need to focus on.  You need somebody that is going
22   to speak to company-wide things.
23          It would be one thing if you had a hundred
24   affidavits that would include several from each state or
25   locale that you would be involved with.  But, his argument
```

1    is, your affidavits are discretely tied to just certain

2    locations, and then the one that has the real company-wide

3    issues is Miss Prise.

4          MR. THOMAS:  Actually, that is not true.  There is

5    Miss Prise as a manager.  There is Bob Pramik, who is a

6    general market manager and a location manager.  We also have

7    Michael Lanza from Puyallup, Washington State, where I

8    heard -- where the regional manager and his manager admitted

9    the same policy existed.  We have --

10          THE COURT:  Those are the admissions that I was

11    talking about that arguably the Court could consider.

12          MR. THOMAS:  Jack Reddick from Independence,

13    Kansas, where his manager and the district manager made the

14    same admissions about company policies.

15          At this stage, where we are, without any discovery

16    and given the great bridges to the people out there, to say

17    that we have two managers directly stating that these are the

18    policies, followed up by affiants and managers in multiple

19    other locations, Kansas, Washington State, making the same

20    points, as well as all of those employees confirming that all

21    of the locations all across the country were experiencing the

22    same violations, that is well more than enough to meet the

23    lenient standards.

24          It is not the case that we need to go to each state

25    or each location and solicit an affidavit from each of them

1  saying that's what this is.  But, when the company managers
2  say repeatedly this is our policy and it is enforced
3  nationwide, that meets the lenient standard that is here.
4            THE COURT:  Okay.
5            MR. THOMAS:  Would you --
6            THE COURT:  That is fine.
7            MR. THOMAS:  Should I go on to any points I have or
8  step down?
9            THE COURT:  How about SCI?
10           MR. THOMAS:  SCI.  Two responses on SCI.
11           First of all, leaving aside their 10K and annual
12  report, perhaps more damaging are the additional exhibits we
13  have submitted from their own website which they refer to as
14  having employees.  You can apply for their jobs, on this
15  website to SCI jobs.  They say that we have one of the most
16  diverse and dedicated workforces in the county.  It says our
17  people, employees of SCI continually strive to exceed
18  expectations.
19           THE COURT:  That is all sort of that colloquial way
20  that holding companies often hold themselves out because they
21  all talk about we, us, our, and it would not be uncommon for
22  them to have a website that would be reflecting the same
23  kinds of things that you saw in the 10K.
24           But, as a matter of law, when we have to ask, who
25  is the employee who is going to be responsible for any FLSA

1  violations, that's what I need to look at.  And at this

2  stage, I have some sufficient concerns that SCI may not be

3  the right defendant unless, you know, when you go through the

4  other tests that were articulated to see if they are a single

5  employer, you can impose that burden on them.

6        But, there is no evidentiary support for that here.

7        MR. THOMAS:  Two things.

8        First of all, the standard under the Supreme Court

9  is that the FLSA -- and this is in our papers -- that a

10  broader or more comprehensive coverage of employees would be

11  difficult to frame, and that anybody who has suffered or

12  permitted to work, whose work benefits a company or

13  individual, is considered that person's employer.

14        I will be glad to brief this in more depth on the

15  joint employer issue, but it is a standard that is even more

16  liberal than the Title VII standard for consideration of who

17  the employer is, and Courts routinely say that you are.

18        THE COURT:  The holding company is routinely held

19  liable just because they are the holding company?

20        MR. THOMAS:  Correct.  Because they suffer for or

21  permit the people to work.

22        MR. LAMPE:  We completely disagree with that.  As I

23  mentioned, there is a test that deals with this very

24  situation.

25        THE COURT:  It's sort of like piercing the

1    corporate veil.  That's what I was hearing.  I don't have it

2    in front of me, but it just struck me when I was reading

3    through this, because it really wasn't briefed in any fashion

4    when the issue was raised.

5         And the response was, well, look at the 10K.  To my

6    mind, knowing something, not an extensive amount about 10K's,

7    it's just they are consolidated documents and you can't, I

8    don't think, point to someone being an employer just because

9    there is a 10K, and I think that would be the same thing for

10   a website.

11        Now, it may be evidence when you get into this

12   other issues as to how they are holding themselves out, but

13   how do they hold themselves out to these employees?  How were

14   their checks written?  Who did they understand the employer

15   to have been?  Where are the personnel directors and the bank

16   accounts?

17        These are the types of issues, and if you have some

18   evidence that would indicate that, maybe it would be enough

19   to get the initial notification going out.

20        But, on the record before the Court today, I don't

21   have that evidential base, even though it's a somewhat

22   liberal standard as I indicated, that I would be comfortable

23   in staying that I am going to send out a notice to SCI's --

24   anyone who may have been on call during that period of time.

25        MR. THOMAS:  Your Honor, if I understand what you

1    have said, I think, you will see the good news is -- at least

2    the good news for us and maybe the good news for the Court in

3    dealing with this -- it is not a piercing-the-veil standard.

4    It is a very low standard.

5            THE COURT:  I don't have that in front of me and I

6    am not prepared to rule on it and -- if a 10K is enough to

7    get you there, I would be probably surprised if that were the

8    case, but I would have to withhold judgment on that.

9            MR. THOMAS:  With Your Honor's permission, could we

10   submit supplemental briefing or a motion to reconsider on an

11   expedited fashion on the joint employer position?

12           THE COURT:  What I would do is, I would deny the

13   motion with respect to SCI, but it would be without prejudice

14   for you to file a subsequent motion if you feel that you have

15   the support to do it.

16           So, it is not going to be a reconsideration.  It

17   just would be a new motion and it would take on -- it would

18   have its own life.

19           MR. THOMAS:  Thank you, Your Honor.

20           THE COURT:  Okay.

21           MR. LAMPE:  So, back to Alderwoods then.

22           The sum and substance of the record before the

23   Court is that there are two managers.  Mr. Thomas mentioned

24   them.  There is Pramik and Prise; prise at two locations in

25   the Pittsburgh area; Pramik at two locations; one in

1    Harrisburg; the other one in Camp Hill.  And that is it in

2    terms of managerial evidence in this case.

3            THE COURT:  See, a manager -- and at this lenient

4    standard, you know, if the manager at that level has certain

5    knowledge of and exposure to the corporate policies on a

6    nationwide basis, that may be enough at this stage.

7            MR. LAMPE:  I would just say the "if" that you just

8    said is not presented in the form of evidence before the

9    Court.  There is no evidence that these two local managers

10   had knowledge of what was going on --

11           THE COURT:  They said they have personal knowledge

12   because of their position.

13           MR. LAMPE:  That takes us all the way back to the

14   hearing on January 31st where you said conclusory allegations

15   wouldn't be enough.

16           And I think all this needs to be looked at in the

17   context of a company whose formal pay policies are completely

18   lawful and necessary individuals.  They are speaking of some

19   unwritten policy that is supposedly in effect throughout the

20   entire country.

21           How do they know that when they have only been

22   responsible for applying these practices in their own locale?

23   Our view is, there isn't sufficient evidence beyond the four

24   locations.

25           And let me move to another point, and that is the

1   class definition issue that you raised.  We think it's an
2   important issue.
3         When the brief was filed, the request was that
4   notice issued to these five subclasses, and we pointed out
5   that it is impossible to know which employees are within
6   these subclasses because they are built on the allegations in
7   the case.
8         And there is good authority from this Court in
9   Mueller versus CBS that indicates that a class cannot be
10  certified where you have to do a little mini-adjudication on
11  the merits to find out who is the class member.
12        There is a very practical problem here.  If you
13  order us to issue a notice, we need to know which employees
14  to issue the notice to.  And the way the class definition
15  reads is, for instance, class number one, the people in the
16  class are those people who have been required to work in the
17  community but have not been paid for that.
18        In our view, there is no one that meets that
19  definition.  That's what's in dispute in the case.
20        THE COURT:  I think the response there would be --
21  and this is a problem.  I said there had to be some
22  refinement.
23        My understanding is that the people that had
24  required that were the funeral directors around the country
25  who were hourly employers and the theory would be that it is

1    all of those people who worked during that period of time are

2    punitive class members.

3          MR. LAMPE:  Well, I think that would have been a

4    more reasonable position for the plaintiff to take, and I can

5    I can see that the Court might reach that view, but that is

6    not what the plaintiffs argued in their papers.

7          We raised this issue of the --

8          THE COURT:  I think someone who is an hourly

9    employee at one of these funeral homes who is doing

10   janitorial work is not going to be required to do community

11   service work.  So, I think that is the type of refinement

12   that is necessary here, although I can read enough of the

13   papers that have been prepared to discern what they are

14   really looking at.

15         MR. LAMPE:  Well, their explicit response, when we

16   pointed out the class definition problem was, if that

17   definition is wrong, we actually mean all nonexempt

18   employees.

19         THE COURT:  I don't think that is the case either.

20         MR. LAMPE:  No, Your Honor.  In fact, we would

21   encourage the Court to look at our exhibits and, in

22   particular, we have an Exhibit F, and this exhibit lists all

23   of the different nonexempt positions within Alderwoods.

24   There is twenty-five of them and there is many of these

25   positions that you have assumed.  There is grave digger,

1  grounds keeper, maintenance --

2          THE COURT:  Those people are not going to fall

3  within this, and I am not sure they are on call, those

4  people.  Maybe they are.  I don't know.

5          Let me hear from the plaintiff's side.

6          MR. LAMPE:  One other point.

7          THE COURT:  Yes.

8          MR. LAMPE:  In the chart that is Exhibit F, what we

9  have done is, we have taken the position descriptions for

10 these twenty-five positions and we put a check next to any

11 position that lines up with any of these policies that are

12 supposedly at issue in the case.

13         THE COURT:  Just for future reference, any time

14 there are going to be any lengthy documents like this filed,

15 if you could supply the Court with a courtesy copy that's

16 tabbed and marked, I would really appreciate it.

17         MR. LAMPE:  We will certainly do that, Your Honor.

18 I apologize.

19         THE COURT:  It is tough to find it here because I

20 don't have it tabbed.

21         MR. LAMPE:  The last piece of paper in our brief is

22 the summary of those position descriptions, none of the

23 nonexempt employees whose job description --

24         THE COURT:  Okay.

25         MR. LAMPE:  You are exactly right.  Look at the

1    on-call responsibility of the twenty-five positions.  There

2    are only three that have that.  There are only three that are

3    involved in selling insurance, only three that are

4    commissioned, and there are six that are involved --

5         THE COURT:  And the notice would not go out to

6    everybody, because somebody is going to get a notice, you

7    hope, gee, I am going to get a big benefit here.  If I opt

8    in, I am going to get money, but they are not going to ever

9    be in at one of those classes.

10        MR. LAMPE:  Our position is that there should be no

11   notice --

12        THE COURT:  It has to be tailored to those that are

13   affected and there is going to have to be some way to

14   identify which class they are in.

15        MR. LAMPE:  The only evidence before the Court as

16   to all of these positions, with the exception of funeral

17   director, is the evidence that we put forward.  There are no

18   affiants who are not funeral directors or assistant funeral

19   directors, and that simply is not spoken to in the record.

20        THE COURT:  They may be the bulk of the class

21   because those are the ones that are in all categories.

22        MR. LAMPE:  The funeral directors is, but a

23   fraction of the potential all nonexempt employee group, you

24   are absolutely right about that.

25        THE COURT:  It is not going to be all nonexempt

1   employees, it can't be, because I don't think the facts would
2   support that.

3       MR. LAMPE:  So, we think it should be four
4   locations and limited to funeral directors or funeral
5   director types as indicated on our chart here that could
6   possibly have been involved in these policies.

7       But, again, we think that, in light of the fact
8   that we have written lawful policies and we are talking about
9   such a very few, five affidavits out of over thousands and
10  thousands of employees, it's just insufficient under the
11  standards to justify any notice.  Thank you.

12      MR. THOMAS:  Your Honor, I think there is probably
13  less disagreement about this point than most of the other
14  issues in the case.

15      We don't have any desire to send notice out to
16  people who I think there were two competing -- we don't have
17  any desire to send out notice to people who do not fall
18  within --

19      THE COURT:  Who have the responsibilities which
20  would have generated these FLSA issues?

21      MR. THOMAS:  Correct.  It is not in our good or the
22  Court's.

23      The other practical problem though, in having dealt
24  with these cases many, many, many of these cases is, the
25  clock is ticking right now.  And the problem is, if we spend

1    years, months, weeks sorting out who could potentially be in

2    the class and who could not, the time could run out on these

3    people.

4         THE COURT:  But, you can't send it out to

5    everybody.  There got to be a practical solution here where

6    you get a list and see who had these positions during this

7    period of time and that's who the notice goes to.

8         MR. THOMAS:  The problem is, I am not sure that

9    the -- this is the bigger concern.  And the other concern is,

10   if you don't send it out to everyone who is supposed to get

11   notice, you have people hanging out there whose claims are

12   lost because of a mistake.

13        THE COURT:  There is not much we can do unless you

14   want to give a notice in a national newspaper, or something

15   like that.  But, I don't think that that is cost justified in

16   this type of case.

17        What do you want to have happen here?

18        MR. THOMAS:  What I would like to have happen is

19   notice to go to anybody who could potentially have a claim.

20        THE COURT:  If you are the defendant -- that is too

21   broad.  I mean, that's putting a terrible burden on them.

22   You have to have some -- I am sympathetic to the individuals

23   who are losing rights.

24        But, on the other hand, you can't tell a defendant,

25   at your own peril, you better notify everybody in the world

1  that they may have it.  You have people on your side who are

2  knowledgeable about the structuring of these entities and who

3  did what and how they did it.  And if this exhibit is

4  correct, these are the people that would get it.  And if one

5  or two are lost, you have a lot of word of mouth among these

6  people, I am sure, all around the country, or you put out

7  some notification in a journal, or something, that would

8  attract their attention, some other way to deal with that

9  concern that you have.

10         MR. THOMAS:  I think what I would suggest is this:

11  Here's another concern I have --

12         THE COURT:  I am not going to have you put a burden

13  on the defendant that is too broad-based and makes them

14  having to flail around and spend a lot of time and money when

15  it has to be more focused.

16         MR. THOMAS:  What I would propose is this:

17         First of all, I am concerned about relying on job

18  titles alone because often in these locations, you have

19  issues where the person may be listed as an embalmer.  That's

20  what their official job title is.  That's what they are coded

21  as.  But, they are, in fact, doing funeral director

22  responsibilities and always have been and sort of known for

23  doing that, but just for the sake of internal company

24  documents, they are referred to differently.

25         I think that if we did two things, one is liberally

```
 1   see anybody who could be within the group and, number two,
 2   make sure that the notices are posted at the funeral homes to
 3   say, listen, notices have gone out to people who appear to be
 4   within this group.  However, if you didn't receive a notice
 5   but you were doing these type of things, we are informing you
 6   that you may have a claim and you need to do something about
 7   it, and put that posting up for ninety days.
 8            THE COURT:  I just have to take a break because I
 9   have a criminal matter -- I have to just go off the bench for
10   a moment.
11            Talk about, when I am out of here, if there is a
12   way to refine how you can identify these individuals.
13   (Court recessed at 4:40 p.m.)
14   (Court reconvened at 4:45 p.m.)
15            THE COURT:  Okay.  Please be seated.  Okay.
16            MR. THOMAS:  Your Honor, I had a chance to confer
17   briefly with my side on this, but I haven't had a chance to
18   talk the other side, but I think we may have -- let me put a
19   proposal here that may make some sense.
20            What we would be prepared to do is to talk -- speak
21   to Mr. Lampe over the next, I would say -- first, while the
22   toll is in effect, so people aren't losing their rights, we
23   have a toll in effect.
24            THE COURT:  I thought the total was over --
25            MR. THOMAS:  It started again if we are cutting
```

1    people's time off --

2            THE COURT:  I think the defendants said no to that

3    in the past and I think they would say no again.

4            My preliminary assessment -- and it is going to be

5    my final assessment -- is that a collective action notice

6    would be appropriate to go out, but I have to have an

7    appropriate class and the notice has to be appropriate.

8            I have trouble with the breadth of the parties, we

9    just talked about that, I have trouble with, how do we say

10   who is in which class, you know, the five subclasses.  The

11   notice that was attached to your form doesn't deal with any

12   of that.  It seems to talk broadly in terms of the hourly

13   employees, and all of that.

14           So, I will permit the class notification to go out,

15   but I need you to re-submit a form of notice and a

16   redefinition of the classes that is more narrowly drawn, and

17   some of the -- I just want to get to --

18           You have, like, number one for Alderwoods current

19   and former hourly employees of defendants.

20           Well, that's not going to be the case.  It is going

21   to be some discrete subset of those hourly -- it is not all

22   hourly employees.  So, it is how do you define those hourly

23   employees who would be in the community work policy?  And

24   there appear to be five categories.  So, you are going to

25   have to refine that.

1          Then you go on to say who were suffered or
2    permitted.  I think it has to be who were required because I
3    don't think it is a violation if somebody just permitted you
4    to do community work service.  I think that would be --
5          MR. THOMAS:  Tied more to the regulation.
6          THE COURT:  Right.  So, it has to be -- because
7    there is no violation if they weren't required as part of
8    their job to --
9          MR. THOMAS:  I think the regulation is encouraged.
10         THE COURT:  Okay.
11         MR. THOMAS:  We can tailor that to the regulation.
12         THE COURT:  Whatever it is.  I mean, it is
13   something where it is -- as a condition of their employment,
14   there was something that they were expected to do if they
15   were going to keep their job.  That's the way I understand
16   it, you get paid for that, if there is a violation, and the
17   same thing as with two.  And then they -- the training
18   policy, that's the same issue, and the people that would be
19   in that, and four and five.  So, those are -- all have the
20   same similar kinds of issues.
21         And then when you look at the form of the notice, I
22   didn't have attached to it the form of consent that they
23   would be -- at least my copy didn't have a consent form so we
24   could see what they would be sending back.  And the question
25   is, who sends out the notice?  You know, does that -- do you

 1    give the notice to the defendant?

 2         MR. THOMAS:  We would bear the burden of the cost

 3    for that, unless they want to pay for it.

 4         THE COURT:  But, you need to coordinate how you are

 5    going to get the list, the mailing list, you just give that

 6    to them and they certify that they sent it, however you want

 7    to do it, but I need that process done, so I need a

 8    restatement of the classes that comport with what I discussed

 9    here today.

10         We need the revised notice, you know, that it would

11    be appropriate.  And the notice, how it is going to go.  Is

12    it going to go by mail to these individuals?  How do you get

13    the list?  Do you turn it over to the defendants?

14         You need to coordinate with the defendant so I have

15    a way of understanding that.  And then I need to see the form

16    of the consent that they are signing, that they will be

17    expected to sign as well.

18         So, the sooner you get that in, the sooner the

19    order will be able to go out, because my order won't become

20    final until I have the refined classes and the appropriate

21    form of notice that I feel is appropriate.

22         MR. THOMAS:  Your Honor, we sincerely appreciate

23    all of your efforts to issue quick decisions when I know

24    there is a lot on your docket.

25         One request, which is typically done in these

1    cases, and I request that we do it here, that is within

2    fourteen days, the sides either submit to you an agreed --

3    mutually agreed notice and form.  If that's not done --

4             THE COURT:  It would be without prejudice to the

5    other side's right to preserve -- but, I mean, they are going

6    to be objecting to what I have done here today, I am

7    assuming.

8             MR. LAMPE:  In part.

9             THE COURT:  So, if you can agree that whatever that

10   is produced is consistent with my order, it does not mean

11   that you are agreeing that I made the right decision, but if

12   you can mutually agree that this comports with what I have

13   ordered today, that would be helpful and we can move on.

14            MR. THOMAS:  If there are issues that we can't

15   agree on, both sides --

16            THE COURT:  Then you have to come back here

17   promptly.

18            MR. THOMAS:  We'd submit our notice, their proposed

19   notice so you can see the difference.

20            MR. LAMPE:  That makes sense to us.  If there is a

21   disagreement, it may go to the content or manner of

22   distribution.  We will try to work that out, both sides.

23            THE COURT:  And I am going to impose on both sides

24   an obligation to work diligently because I am finding that it

25   is the collective notice -- I will say there will be a

1    determination at the first tier that the class will be

2    conditionally certified along the lines that I described.

3    They have to be narrowly limited to those employees who would

4    fit within the work issues that were raised, and the workers

5    have to be, the classes have to be refined to reflect that

6    and to be more consistent with the regulations, and then we

7    need to work out how the notifications will go out and the

8    form of the notice has to be changed to reflect what we have

9    talked about.

10          MR. THOMAS:  Your Honor, one last issue on the

11   joint employer SCI issue.  We may be able to submit that

12   briefing to you without any additional discovery, but we

13   would request an order today that if we need limited

14   discovery on that issue, that that be expedited and begin

15   immediately and be turned around in less than fifteen days.

16          THE COURT:  It depends on what kind of volume of

17   material you are asking for.

18          MR. THOMAS:  I don't think much.  But, we have had

19   disagreements with defense counsel about whether discovery

20   can proceed.  But, we would request that the Court's

21   direction be that it be done immediately and in an expedited

22   basis.  We will try to work cooperatively with them, but we

23   would like there to be an understanding that discovery on

24   that issue is to be going forward as quickly as possible

25   since it is so important.

1            MR. LAMPE:  Your Honor recalls from the hearing in
2    January that Mr. Thomas indicated he did not need any
3    discovery and he was confident he could settle with what he
4    had --
5            THE COURT:  At least I am concerned today that at
6    SCI, that that's not the case.
7            MR. LAMPE:  If he wants to go take discovery,
8    obviously as you said in the hearing, it has to be a two-way
9    street and there can't be any parameters on how many days
10   because they don't know what we want and I don't know what
11   they want.  We need to discuss it before there is any sort of
12   restriction.
13           THE COURT:  You meet and confer on a discovery
14   plan, okay?  And find out what you are going to need, what
15   you are going to be asking for.  You should have a meet and
16   confer sometime next week as to what the parameters are.  It
17   is a two-way street when you are going down there.  That way,
18   if you feel you need some limited discovery with respect to
19   this issue that is contemplated, that can happen.
20           So, you need to do that.  And if you want to get
21   together again, if you can agree on it, you can just start.
22   If you have to know something, say what you want and how long
23   you need to take it, and the other side can respond.  We will
24   let you file something like that, but you have to notify the
25   other side that you are asking for an expedited hearing.  The

1   response turn-around should be two business days, and I will
2   try to have a hearing within a week on that.

3          So, that the sooner you get working and seeing what
4   you need to do, you know, you will be protecting the interest
5   of the parties that you are seeking to represent as class
6   members here.  But, so it is up to you really to do that.
7   So, just work together, to the extent that you can, if they
8   want discovery.

9          On the other hand, to be responding to it, you are
10  going to have to make that available as well.

11         MR. THOMAS:  Certainly, Your Honor.

12         MR. LAMPE:  We just would reserve the right to
13  object to having to turn anything around in two days.  If
14  there is a brief we have to file within two days of getting
15  their brief, it may not be possible.  We may be asking for
16  additional time to do that.

17         THE COURT:  It is going to depend.  But, I think
18  that should be the goal.  If they can get something out two
19  days from now and you can respond in two days, I think if it
20  is somewhat short, that is fine.  We can have a more full
21  dialogue and a telephone conference if necessary.

22         MR. THOMAS:  Your Honor, those issues --

23         THE COURT:  That is the goal, is what I am saying.
24  I am not ordering that that is the case.  That would be the
25  goal.  Because if they are going to ask for an expedited

1   hearing, you have to ask for it.

2           MR. LAMPE:  Right.

3           THE COURT:  If you feel you can't do it, you

4   respond that way.

5           THE COURT:  Okay?  So, we need to set a time for

6   the argument on the motion to dismiss.  There just wasn't

7   enough time to get all of this in today.

8           How about June 8th at two o'clock?

9           MR. THOMAS:  That's fine with us, Your Honor.

10          MR. LAMPE:  That is fine with us, Your Honor.

11          THE COURT:  That's a Friday at two o'clock.  Okay?

12  And so I will look for you, and it is so ordered on the

13  record today that the findings that I made with respect to

14  the evidentiary materials that support the plaintiffs'

15  motion, as well as the lack thereof with respect to

16  Alderwoods, and the lack thereof with respect to SCI, the

17  Court will conditionally certify the class as reflected on

18  the record today, and it's subject though to the plaintiffs'

19  filing with the Court the revised class description, a

20  revised notice that comports with what the Court has said

21  today, as well as a plan for notice which would include how

22  the notice is going to go out, and I will need to see the

23  consent form that's an exhibit to the file.

24          Anything else I overlooked?

25          MR. LAMPE:  Your Honor, I wanted to ask one

1   question.

2         Have you reached a conclusion yet about the

3   geographic scope?

4         THE COURT:  The geographic scope, I am going to say

5   is national.  I think the -- I am sufficiently -- at this

6   stage of the proceedings, applying the liberal standard

7   looking at the managers who are professing to have personal

8   knowledge in their positions of the corporate policies, the

9   Court finds at this stage that that is sufficient.

10        MR. THOMAS:  Thank you, Your Honor.

11        THE COURT:  Okay?  It is all subject to

12  reconsideration at the second stage.

13        MR. LAMPE:  Yes, Your Honor.  Thank you.

14  (Court adjourned on Thursday, April 19, 2007, at 4:30 p.m.)

15

16                    *  *  *  *  *

17        I certify that the forgoing is a correct transcript

18  from the record of proceedings in the above-entitled matter.

19

20                              S/Michael D. Powers
                                Michael D. Powers
21                              Official Reporter

22        *****NOT CERTIFIED WITHOUT ORIGINAL SIGNATURE*****

23

24

25