David M. Daniels (SBN 170315)
Steven H. Gurnee (SBN 66056)
Nicholas P. Forestiere (SBN 125118)
Gurnee & Daniels, LLP
2240 Douglas Boulevard., Suite 150
Roseville, CA 95661-3875
Telephone: (916) 797-3100
Facsimile: (916) 797-3131

Amy E. Dias (pro hac vice motion pending)
aedias@jonesday.com
JONES DAY
500 Grant Street, Suite 3100
Pittsburgh, PA 15219-2502
Telephone: (412) 391-3939
Facsimile: (412) 394-7959

Matthew W. Lampe (pro hac vice motion pending)
mwlampe@jonesday.com
JONES DAY
325 John H. McConnell Boulevard, Suite 600
P.O. Box 165017
Columbus, OH 43216-5017
Telephone:    (614) 469-3939
Facsimile:    (614) 461-4198

Attorneys for Defendants
Alderwoods Group, Inc. and Service Corporation
International

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Deborah Prise, et al., on behalf of themselves and all other employees similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>Alderwoods Group, Inc., et al.,<br><br>        Defendants. | Case No. C 07-05140 EDL<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**[FRE 201(b)]**<br><br>Date:    December 18, 2007<br>Time:    9:30 a.m.<br>Ctrm:    11<br><br>Trial Date:    None Set |

Moving parties ALDERWOODS GROUP, INC., and SERVICE CORPORATION INTERNATI0NAL, hereby request that the Court take judicial notice pursuant to FRE 201(b) of the following documents attached hereto:

**Exhibit A**:    Transcript of Hearing on Thursday, April 19, 2007 in the matter *Prise, et al. v. Alderwoods Group, Inc., et al*, Case No. 2:06-cv-01470-JFC, Docket No. 33, United States District Court for the Western District of Pennsylvania before the Honorable Joy Flowers Conti, District Judge.

**Exhibit B**:    Transcript of Hearing on September 6, 2007 in the matter *Prise, et al. v. Alderwoods Group, Inc., et al*, Case No. 2:06-cv-01470-JFC, Docket No. 33, United States District Court for the Western District of Pennsylvania before the Honorable Joy Flowers Conti, District Judge.

**Exhibit C**:    Plaintiffs.' Motion for Leave to File Second Amended Complaint in the matter *Prise, et al. v. Alderwoods Group, Inc., et al*, Case No. 2:06-cv-01470-JFC, Docket No. 33, United States District Court for the Western District of Pennsylvania.

*International Board of Teamsters v. Zantop Air Transportation Corp.*, 394 F.2d 36, 40 (6th Cir. 1968) ("[A] court may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority"); *U.S. v. City of St. Paul*, 258 F.3d 750, 753 (8th Cir. 2001) *cert. denied*, 535 U.S. 904 (writing showing an agency's interpretation of its own regulations is entitled to judicial notice absent showing the interpretation is unreasonable or inconsistent with the statutory authority).

////

////

////

////

**REQUEST OF JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS    Page 2**
**Case No. C 07-05140 MJJ**

1    Dated: November 6, 2007                         GURNEE & DANIELS LLP

2

3                                            By: ___s/David M. Daniels_____
                                                    Steven H. Gurnee
4                                                   David M. Daniels
                                                    Nicholas P. Forestiere
5
                                                    Attorneys for Defendant
6                                                   ALDERWOODS GROUP, INC. AND
                                                    SERVICE CORPORATION
7                                                   INTERNATIONAL

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REQUEST OF JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS**   **Page 3**
**Case No. C 07-05140 MJJ**

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

---

DEBORAH PRISE, et al

                                        Plaintiffs

            vs.                         Civil Action No. 06-1641

ALDERWOODS GROUP, INC., et al

                                        Defendants

---

PROCEEDINGS

        Transcript of Hearing on Thursday, April 19, 2007,
United States District Court, Pittsburgh, Pennsylvania,
before Honorable Joy Flowers Conti, District Judge.

APPEARANCES:

For the Plaintiffs:          J. Nelson Thomas, Esq.
                             Charles H. Saul, Esq.
                             Patrick J. Solomon, Esq.
                             Liberty J. Weyandt, Esq.
                             Justin Cordello, Esq.
                             Michael Lingle, Esq.

For the Defendants:          Matthew W. Lampe, Esq.
                             Amy E. Dias, Esq.


                             Reported by:
                             Michael D. Powers
                             Official Court Reporter
                             Room 5335 USPO & Courthouse
                             Pittsburgh, Pennsylvania 15219
                             (412) 208-7572


Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.

1        P R O C E E D I N G S

2   (Court reconvened on Thursday, April 19, 2007, at 4:00 p.m.)

3            THE COURT:  This is a hearing on a motion for

4   expedited collective action notification and a motion to

5   strike in the civil action Prise versus Alderwoods Group

6   Inc., Civil Action No. 06-1641.

7            Will counsel please enter your appearance.

8            MR. THOMAS:  Yes, Your Honor.  Nelson Thomas on

9   behalf of the plaintiffs.

10            MR. SOLOMON:  Patrick Solomon on behalf of the

11   plaintiffs.

12            MR. SAUL:  Charles Saul on behalf of the

13   plaintiffs.

14            MS. WEYANDT:  Liberty Weyandt on behalf of the

15   plaintiffs.

16            THE COURT:  I am sorry?

17            MS. WEYANDT:  Liberty Weyandt on behalf of the

18   plaintiffs.

19            MR. CORDELLO:  Justin Cordello on behalf of

20   plaintiffs.

21            MR. LINGLE:  Michael Lingle on behalf of the

22   plaintiffs.

23            THE COURT:  Who is going to be speaking for the

24   plaintiffs?

25            MR. THOMAS:  Your Honor, I will be.  Nelson Thomas.

1    THE COURT:  Nelson Thomas.

2    MR. LAMPE:  Matthew Lampe on behalf of the

3  defendants.

4    MS. DIAS:  Amy Dias on behalf of the defendants.

5    THE COURT:  Who will be speaking on behalf of the

6  defendants?

7    MR. LAMPE:  I will, Your Honor.  Matthew Lampe.

8    THE COURT:  This is a hearing on a motion for an

9  expedited collective action notice to go out, and I have

10  already had sort of a preliminary hearing on this previously,

11  and that was held on January 31st, 2007, of this year.

12    And the standards that the Court went through there

13  in considering a motion for expedited class notification

14  pursuant to Section 216(b) of the Fair Labor Standards Act --

15  and I will call that throughout this hearing the FLSA -- the

16  potential plaintiffs must opt into a collective action suit

17  and affirmatively notify the Court of their intentions to

18  join the suit.

19    In order to facilitate that notice, the

20  representative plaintiffs must show that the potential

21  plaintiffs are similarly situated to the representative

22  plaintiffs and that the action should go forward as a

23  representative action.  To establish that the absent

24  collective action member is similarly situated, plaintiffs

25  must, one, be or have been employed in the same corporate

1    department, division and location; two, have advanced similar

2    claims; and, three, have sought substantially the same form

3    of relief.

4          And that is from Asencio versus Tyson Foods, Inc.,

5    130 F.Supp. 660, Eastern District of Pa., 2001, citing

6    Lockhart versus Westinghouse Credit Corp., 879 F.2d 43,

7    Third Circuit, 1989.

8          There is a two-tier approach that courts often use

9    with respect to determining whether plaintiffs are similarly

10   situated.  Mooney versus Aramco Service Company,

11   54 F.3d 1207, Fifth Circuit, 1995.  The first stage or the

12   first tier is what is called the notice phase.  And that

13   begins when the plaintiff seeks authorization to issue notice

14   to the other prospective class members which would permit

15   them to be notified that they could opt into the action.

16         This notice usually occurs at an early stage and

17   the Court will determine the viability of a possible class

18   based upon the claim and affidavits in support of that claim.

19         Morisky versus Public Service Electric and Gas

20   Company, 111 F.Supp.2d 493, District of New Jersey, 2000.  At

21   this first tier, there is a relatively low burden to show the

22   similarly situated requirement.

23         And from Asencio, 130 F.Supp.2d at 663, the Court

24   may conditionally certify the class for the purposes of

25   notice and discovery under a comparatively liberal standard,

1   that is, by showing that or by determining that the members

2   of the punitive class, quote, were together the victims of a

3   single decision, policy or plan, close quote.

4            Sperling versus Hoffmann-LaRoche, 118 F.R.D. 392,

5   District New Jersey affirmed 862 F.2d 439, Third Circuit,

6   1988.

7            And after the first tier, then the second tier will

8   occur where all the consents have come in and there will be

9   further discovery to determine whether or not the defendant

10  violated the FLSA and the matter is ready for trial.  And at

11  that second tier, the Court will reconsider the class

12  certification issue in light of the similarly situated

13  standard.  And will conduct a specific fact review with

14  respect to the class members who have opted in, and will look

15  at matters such as employment setting, defenses and other

16  procedural issues.

17           The Court finds that at the second tier, if they

18  are not similarly situated, then the conditional class is

19  de-certified.

20           At this stage, we are at what I would classify the

21  first tier.  It's a question of whether the notice should go

22  out.  And given that this is a collective action under

23  Section 216(b) of the FLSA, there is potential prejudice if

24  notice doesn't go out because as the clock goes on,

25  individuals will lose their rights because they may be barred

1    in whole or in part for some claims that they may

2    legitimately have if, down the road after discovery is

3    completed, or whatever discovery is relevant to what we would

4    normally do in a Rule 23 class action situation, having a

5    more robust hearing and a more lengthy time prior to the

6    determination of class certification, valuable rights could

7    be lost.

8          So, I think that's why the courts do take an

9    approach at this stage to be fairly liberal in approaching

10   the decision-making process.

11         My preliminary sense, having read the various

12   briefing, is that at least with respect to Alderwoods, the

13   questions of whether there is a common policy with respect to

14   the five classes, I think there would have to be some

15   refinement of the notice that would go out and a refinement

16   of the punitive classes that, at this preliminary stage

17   without really looking at the merits, just looking at some of

18   the filings that were made and the allegations, that there is

19   arguably enough to move forward on.

20         And the things that the Court would look to at this

21   stage would be the affidavits.  I know there is a motion to

22   strike that is there, but -- and some of it is set forth as

23   being hearsay.  But, some of the things that are hearsay --

24   and I will hear some argument on this -- I am not sure is

25   hearsay.  It may be admissions if a manager is making a

1  statement.  If it would fall within that party admission, it
2  is not hearsay.

3       I can tell you if a superior or representative of
4  the company tells me something and that is adverse to the
5  company, I can certainly put that in an affidavit because it
6  might be a party admission and, therefore, could come in.

7       So, you know, it may not be -- everything that was
8  arguably set forth as hearsay doesn't necessarily fall within
9  that.  And then there is an affidavit from someone who is or
10 was a manager and had a familiarity and said that they were
11 familiar with the corporate policies across the board, and
12 whether, on cross-examination, if they are deposed and it
13 comes out that they really lack a complete foundation for
14 that, I think that's a different story.  But, just to take
15 the affidavit at face valid may be enough at this stage to
16 move forward.

17      I am more troubled about the issues with respect to
18 Service Corporation International.  There is, in the
19 defendant's response, a statement that Service Corporation
20 International is, itself, just a holding company and that has
21 no employees.  That's typically the way -- or if they do have
22 employees, they are generally the very high-up officers of
23 the company, would not be the hourly employees of the nature
24 that would be the punitive class members in this case.

25      So, if that is the case, even though you have a

1   10K, a 10K is usually, you know, is usually done on a

2   consolidated basis where they are representing a multiple

3   tier of companies.  And I know, and I did look over the 10K

4   where it used the words, we have this and we have that.  But,

5   as a legal matter, maybe they don't have employees.  And I

6   have sufficient concerns about that, but I don't think I can

7   rely purely on a 10K in making that assessment.

8        So, my question would be if you have -- if you

9   operate as a holding company and you have fifty subsidiaries,

10  say, you have a subsidiary in each state, you have a separate

11  entity in each state, do you have to sue each separate

12  subsidiary and then you can bring them all together?  Or can

13  you just, in this context, sue the parent and make them

14  liable for the overtime or FLSA infractions that are at issue

15  here?  I don't know.

16       I don't have an answer to that and it wasn't

17  robustly briefed by the parties, but I am troubled by that.

18  So, I am not sure that I would be able to move forward and

19  certify a class of employees if the defendant is merely a

20  holding company and really wouldn't have those type of

21  employees.

22       So, what good have we done to send out the notice?

23  We will get a flurry of people coming back.  But, if you tell

24  the defendants to send it out to your employees, you know,

25  they will send it out maybe to the head officers who won't be

1   within that class.

2          So, those are sort of the issues that I see here

3   today.

4          So, I will let the defendants be heard first on the

5   Alderwoods situation because my preliminary assessment would

6   be in favor of the plaintiffs, albeit I think there is some

7   refinements that have to be made to the punitive classes, as

8   well as to the form of notice that they are proposing to

9   send.

10          MR. LAMPE:  Thank you, Your Honor.  Good afternoon.

11   I am not sure if this is on or if I am speaking loudly

12   enough.  May I address the SCI issue first?

13          THE COURT:  Yes.  I am sort of going in your favor

14   that way.

15          MR. LAMPE:  I understand.  I wasn't sure if

16   procedurally you wanted me to speak second to him on that.

17          THE COURT:  I sort of found for you.  I would like

18   to hear from the other side if I have it wrong unless you

19   know something I don't.

20          MR. LAMPE:  I would like to point out there was an

21   allegation made in the plaintiff's reply brief as to Service

22   Corporation International relying on, and you alluded to it,

23   relying on the annual report and the 10K.  And what I think

24   is important to point out to Your Honor is, I have the -- all

25   three of them here and would be happy to submit them, but in

1    the annual report, there is the annual report and then the

2    10K is right behind, it's a booklet.

3           And if you open the annual report and look at the

4    very first page, there is a reference to the Service

5    Corporation International and it goes on to speak about it,

6    and there is an asterisk after Service Corporation

7    International.  If you go down to the bottom of the page, you

8    will see the very point that you were making, and that is

9    that, as used here, SCI and the company refer to Service

10   Corporation International and companies owned directly or

11   indirectly by Service Corporation International.

12          So, there is simply nothing inconsistent with our

13   affidavit that we submitted indicating that this is a holding

14   company that has no employees.  It's not just a few.  It has

15   none.  And these annual reports -- because, as you said, this

16   is a consolidated report and the footnote very specifically

17   says that at the top --

18          THE COURT:  That would be -- my understanding would

19   be consistent with how public companies handle their 10K

20   reporting requirements.

21          MR. LAMPE:  So, as to SCI, it is a holding company.

22   It has no employees.  It would be pointless to issue notice

23   to its employees.  There are none.

24          And you are right that there was no briefing or

25   discussion of the other question that you raised about

1    whether or not --

2         THE COURT:  You could just sue the parent and bring

3    them all in?

4         MR. LAMPE:  Right.

5         THE COURT:  In a normal case, you wouldn't be able

6    to do that.  I don't know if there is some exception in these

7    circumstances.

8         MR. LAMPE:  Under the FLSA, there is a doctrine

9    called the single employer, also referred to as the joint

10   employer doctrine.  It is, as you would expect, the parent

11   can be held liable based on the fact of the -- based on the

12   six factor test, whether there is interlocutory boards,

13   whether the formalities are observed --

14        THE COURT:  We don't have any of that.

15        MR. LAMPE:  Right, Your Honor.  There has been no

16   evidence at all to suggest that the parent could be liable

17   for the acts of these various and myriad subsidiaries spread

18   around the country.

19        So, we would submit that your tentative views on

20   the issue of SCI are correct and that no notice to the order

21   should be issued at this time.

22        THE COURT:  At this time.

23        MR. LAMPE:  I am going to try convince you that

24   your preliminary views to Alderwoods is not right.  In a case

25   like this, as you said again, you previewed the law.  The

1    issue is, is there evidence of a common unlawful policy?

2              THE COURT:   Right.   And you have a number of

3    affidavits, some of which is hearsay.   So, the hearsay, I

4    will tell you I will disregard the hearsay or give it very

5    little weight.

6              It is very different at this stage where it is

7    not -- I am not making factual findings, so there are a

8    number of other cases, none that are precedential for this

9    Court, that have discussed the motion to strike in this

10   context.   That's Crawford versus Lexington-Fayette Urban

11   County Government, 2007 Westlaw 293865, Eastern District

12   Kentucky, January 26, 2007, showing the relaxed standard.

13             But, I think most Judges would say at this stage

14   when you are reviewing this type of information, if it is

15   true hearsay, you give it very little weight, if at all, and

16   I can disregard it and I can treat each of those affidavits

17   in an appropriate fashion.

18             There is some other aspect of the affidavits,

19   however, that I don't find would be hearsay and would have

20   some evidential value with respect to these matters and I

21   just commented on a few of those aspects.

22             MR. LAMPE:   In these cases, they set up, as you

23   said, is there evidence of a common unlawful policy?   And

24   there is a distinction in the cases between, on the one hand,

25   evidence of wage problems that could suggest a common,

1    unlawful corporate policy.

2         On the other hand, there is cases that deal with

3    allegations of wage problems that were very apparently

4    violations of company policy and certainly not the sum and

5    substance of company policy.

6         THE COURT: I understand that there are. I

7    understand from the record, and I will put this on there,

8    that there are corporate policies that Alderwoods have that

9    would be clearly in compliance with the law. So, the formal

10   policies are in compliance with the law.

11        The question is whether, notwithstanding the

12   corporate policy, there was an unwritten policy to, in

13   effect, violate the written policies and to, say, disregard

14   that and do something different which the plaintiffs argue is

15   violative of the FLSA.

16        MR. LAMPE: And that was exactly what I was going

17   to say, and let me move to the next step.

18        What we have then is, we have lawful policies that

19   state employees are to be paid for all of their hours. We

20   have allegations from five affiants, there was a sixth

21   Alderwoods affiant included in the plaintiff's reply brief

22   that said your order said they weren't allowed. There are

23   five Alderwoods affiants; three of them are from the

24   Pittsburgh area, two others are from other areas. All five

25   are in one of twenty-five nonexempt positions represented and

1  these five individuals do, in fact, claim that they

2  experienced wage problems.

3        In the context of the evidence before the Court,

4  and there is the cases such as Harrison versus McDonald's and

5  Flores versus Lifeway and England versus New Century, they

6  say that the mere fact that there are some allegations is not

7  sufficient to justify conditional certification.

8        And the Flores case, for instance, dealt with a

9  situation where there were two allegations out of fifty

10  employees and the Court said that is not enough.

11        The England case, in that case, there were two

12  hundred affidavits, but it did not show any kind of a nexus

13  to any sort of corporate policy.  And the Court said that is

14  not enough.  These are local complaints.  They are

15  insufficient to establish a company policy.

16        THE COURT:  That is why I made reference to the one

17  fellow that was the manager.  That was the one that was most

18  compelling.  Let's talk about him.

19        MR. LAMPE:  McDonald's -- Harrison versus

20  McDonald's, this is a case where there were comments

21  attributed to a manager who supposedly said that there was

22  improper wage violations going on in that unit and the Court

23  said -- the Court did not find that to be sufficient to

24  justify notice and denied the motion.  And there is only one

25  manager here and this is a manager whose name is --

```
 1            THE COURT:  Deborah Prise?

 2            MR. LAMPE:  Prise is the plaintiff, right.

 3            THE COURT:  Who was the manager?

 4            MR. LAMPE:  There is a manager.

 5            THE COURT:  In this case.

 6            MR. LAMPE:  There is a manager named --

 7            THE COURT:  She says as a manager, she was aware of

 8   the defendant's company-wide policy, policies, and was

 9   responsible for the enforcement of those policies at her

10   facility and the policies were issued from the defendant's

11   Cincinnati, Ohio headquarters and most were contained in the

12   defendant's policy and procedures binder.  Then goes on to

13   describe those.

14            So, I am not -- you know, so this, what is the one

15   that is speaking to company-wide policy?

16            MR. LAMPE:  Let me raise -- address the very point

17   that you mentioned.  She said that there are policies kept in

18   a binder.  She does not say that the policies that she is

19   about to describe were among those in the binder.

20            THE COURT:  Says most were contained.

21            MR. LAMPE:  And she goes on to describe policies.

22   She does not say they are in the binder.  There is a policy

23   that says you have to work in the community.  So, I think

24   that there is -- I think that is a little misleading.  There

25   are no written policies that reflect these five supposedly
```

1 unlawful policies and she -- saying she enforced those
2 policies at other her locations.

3      I would pose this question: If there is a written
4 policy everyone needs to get paid for all of their hours of
5 work and there is some unwritten company policy that says you
6 violated the written policy, what foundation is there in the
7 record that this woman, who worked at one location in the
8 Pittsburgh area, would have knowledge of these practices that
9 occurred in other locations throughout the forty states where
10 this company operates?

11      It would be different if she had a written policy
12 that said you are supposed to work off --

13      THE COURT: But, then you will never, ever have a
14 case based on an unwritten policy. A lot of the things may
15 be fodder for depositions and cross-examination of the
16 witness. But, this is a person who purports, because of the
17 position that she held, to be aware of company-wide policies.

18      MR. LAMPE: Yeah.

19      THE COURT: So, I don't know what more -- and then
20 goes on with some specificity to talk about those and some of
21 the indications that they have.

22      MR. LAMPE: We would submit that in a case where
23 there is a written policy that's lawful where there is no
24 production of an unlawful written policy and where there is
25 no explanation in the record for how this individual, who

1    worked in one place, supposedly had knowledge of practices

2    across the country, and that is insufficient, and it is a

3    very isolated instance.

4            And this case does line up with the other ones in

5    which notice was denied because in the context of how many

6    employees and how many states there are operations, the

7    allegations are insufficient to justify notice at this point.

8            Let me move to another point.  You mentioned the

9    class definition.

10           THE COURT:  Before you go there, you would agree

11   with me then, wouldn't you, at least as to the locale in

12   which she was operating, whether it would be Pennsylvania or

13   the areas that she would be in, as well as some of the other

14   employees that are here, that you could have class issues

15   with respect to -- you could have at least a subclass that

16   may survive?

17           MR. LAMPE:  We would say that, at the very most,

18   notice would issue for two locations, Brandt and Hirsch.

19   Those are two facilities where she was involved.

20           THE COURT:  Before we move off of that, I would

21   like to hear from the plaintiffs with respect to this

22   particular affidavit and this particular manager because this

23   is the most compelling support for the class, the nationwide

24   notification.

25           MR. THOMAS:  To the podium it is better?

1           THE COURT:  You don't have anything further on this

2    issue, on this affidavit?

3           MR. LAMPE:  I have more on Alderwoods, but not on

4    this one.

5           THE COURT:  On this one, right.  It is easier for

6    me if I keep the issues together.

7           MR. THOMAS:  Your Honor, I would note several

8    things.

9           First of all, the vast majority of cases, as this

10   Court has cited and held, go contrary to the very few

11   outliners on which defendants rely and, in fact, even the

12   cases on which they rely, they are patently distinguishable

13   from this case here.

14          But, let me leave that aside because I think the

15   standard has been set by the Court and we are in agreement

16   with that.

17          In terms of Alderwoods, it is not correct to say

18   that we have one manager's testimony.  We have Deborah Prise,

19   who is a manager.

20          THE COURT:  But, I think his issue -- and this is

21   what you need to focus on.  You need somebody that is going

22   to speak to company-wide things.

23          It would be one thing if you had a hundred

24   affidavits that would include several from each state or

25   locale that you would be involved with.  But, his argument

1   is, your affidavits are discretely tied to just certain
2   locations, and then the one that has the real company-wide
3   issues is Miss Prise.
4           MR. THOMAS:  Actually, that is not true.  There is
5   Miss Prise as a manager.  There is Bob Pramik, who is a
6   general market manager and a location manager.  We also have
7   Michael Lanza from Puyallup, Washington State, where I
8   heard -- where the regional manager and his manager admitted
9   the same policy existed.  We have --
10          THE COURT:  Those are the admissions that I was
11  talking about that arguably the Court could consider.
12          MR. THOMAS:  Jack Reddick from Independence,
13  Kansas, where his manager and the district manager made the
14  same admissions about company policies.
15          At this stage, where we are, without any discovery
16  and given the great bridges to the people out there, to say
17  that we have two managers directly stating that these are the
18  policies, followed up by affiants and managers in multiple
19  other locations, Kansas, Washington State, making the same
20  points, as well as all of those employees confirming that all
21  of the locations all across the country were experiencing the
22  same violations, that is well more than enough to meet the
23  lenient standards.
24          It is not the case that we need to go to each state
25  or each location and solicit an affidavit from each of them

1    saying that's what this is.  But, when the company managers

2    say repeatedly this is our policy and it is enforced

3    nationwide, that meets the lenient standard that is here.

4              THE COURT:  Okay.

5              MR. THOMAS:  Would you --

6              THE COURT:  That is fine.

7              MR. THOMAS:  Should I go on to any points I have or

8    step down?

9              THE COURT:  How about SCI?

10             MR. THOMAS:  SCI.  Two responses on SCI.

11             First of all, leaving aside their 10K and annual

12   report, perhaps more damaging are the additional exhibits we

13   have submitted from their own website which they refer to as

14   having employees.  You can apply for their jobs, on this

15   website to SCI jobs.  They say that we have one of the most

16   diverse and dedicated workforces in the county.  It says our

17   people, employees of SCI continually strive to exceed

18   expectations.

19             THE COURT:  That is all sort of that colloquial way

20   that holding companies often hold themselves out because they

21   all talk about we, us, our, and it would not be uncommon for

22   them to have a website that would be reflecting the same

23   kinds of things that you saw in the 10K.

24             But, as a matter of law, when we have to ask, who

25   is the employee who is going to be responsible for any FLSA

```
 1   violations, that's what I need to look at.  And at this
 2   stage, I have some sufficient concerns that SCI may not be
 3   the right defendant unless, you know, when you go through the
 4   other tests that were articulated to see if they are a single
 5   employer, you can impose that burden on them.
 6           But, there is no evidentiary support for that here.
 7           MR. THOMAS:  Two things.
 8           First of all, the standard under the Supreme Court
 9   is that the FLSA -- and this is in our papers -- that a
10   broader or more comprehensive coverage of employees would be
11   difficult to frame, and that anybody who has suffered or
12   permitted to work, whose work benefits a company or
13   individual, is considered that person's employer.
14           I will be glad to brief this in more depth on the
15   joint employer issue, but it is a standard that is even more
16   liberal than the Title VII standard for consideration of who
17   the employer is, and Courts routinely say that you are.
18           THE COURT:  The holding company is routinely held
19   liable just because they are the holding company?
20           MR. THOMAS:  Correct.  Because they suffer for or
21   permit the people to work.
22           MR. LAMPE:  We completely disagree with that.  As I
23   mentioned, there is a test that deals with this very
24   situation.
25           THE COURT:  It's sort of like piercing the
```

1   corporate veil.  That's what I was hearing.  I don't have it

2   in front of me, but it just struck me when I was reading

3   through this, because it really wasn't briefed in any fashion

4   when the issue was raised.

5       And the response was, well, look at the 10K.  To my

6   mind, knowing something, not an extensive amount about 10K's,

7   it's just they are consolidated documents and you can't, I

8   don't think, point to someone being an employer just because

9   there is a 10K, and I think that would be the same thing for

10  a website.

11      Now, it may be evidence when you get into this

12  other issues as to how they are holding themselves out, but

13  how do they hold themselves out to these employees?  How were

14  their checks written?  Who did they understand the employer

15  to have been?  Where are the personnel directors and the bank

16  accounts?

17      These are the types of issues, and if you have some

18  evidence that would indicate that, maybe it would be enough

19  to get the initial notification going out.

20      But, on the record before the Court today, I don't

21  have that evidential base, even though it's a somewhat

22  liberal standard as I indicated, that I would be comfortable

23  in staying that I am going to send out a notice to SCI's --

24  anyone who may have been on call during that period of time.

25          MR. THOMAS:  Your Honor, if I understand what you

1    have said, I think, you will see the good news is -- at least

2    the good news for us and maybe the good news for the Court in

3    dealing with this -- it is not a piercing-the-veil standard.

4    It is a very low standard.

5         THE COURT:  I don't have that in front of me and I

6    am not prepared to rule on it and -- if a 10K is enough to

7    get you there, I would be probably surprised if that were the

8    case, but I would have to withhold judgment on that.

9         MR. THOMAS:  With Your Honor's permission, could we

10   submit supplemental briefing or a motion to reconsider on an

11   expedited fashion on the joint employer position?

12        THE COURT:  What I would do is, I would deny the

13   motion with respect to SCI, but it would be without prejudice

14   for you to file a subsequent motion if you feel that you have

15   the support to do it.

16        So, it is not going to be a reconsideration.  It

17   just would be a new motion and it would take on -- it would

18   have its own life.

19        MR. THOMAS:  Thank you, Your Honor.

20        THE COURT:  Okay.

21        MR. LAMPE:  So, back to Alderwoods then.

22        The sum and substance of the record before the

23   Court is that there are two managers.  Mr. Thomas mentioned

24   them.  There is Pramik and Prise; prise at two locations in

25   the Pittsburgh area; Pramik at two locations; one in

1   Harrisburg; the other one in Camp Hill.  And that is it in
2   terms of managerial evidence in this case.
3           THE COURT:  See, a manager -- and at this lenient
4   standard, you know, if the manager at that level has certain
5   knowledge of and exposure to the corporate policies on a
6   nationwide basis, that may be enough at this stage.
7           MR. LAMPE:  I would just say the "if" that you just
8   said is not presented in the form of evidence before the
9   Court.  There is no evidence that these two local managers
10  had knowledge of what was going on --
11          THE COURT:  They said they have personal knowledge
12  because of their position.
13          MR. LAMPE:  That takes us all the way back to the
14  hearing on January 31st where you said conclusory allegations
15  wouldn't be enough.
16          And I think all this needs to be looked at in the
17  context of a company whose formal pay policies are completely
18  lawful and necessary individuals.  They are speaking of some
19  unwritten policy that is supposedly in effect throughout the
20  entire country.
21          How do they know that when they have only been
22  responsible for applying these practices in their own locale?
23  Our view is, there isn't sufficient evidence beyond the four
24  locations.
25          And let me move to another point, and that is the

```
 1    class definition issue that you raised.  We think it's an
 2    important issue.
 3              When the brief was filed, the request was that
 4    notice issued to these five subclasses, and we pointed out
 5    that it is impossible to know which employees are within
 6    these subclasses because they are built on the allegations in
 7    the case.
 8              And there is good authority from this Court in
 9    Mueller versus CBS that indicates that a class cannot be
10    certified where you have to do a little mini-adjudication on
11    the merits to find out who is the class member.
12              There is a very practical problem here.  If you
13    order us to issue a notice, we need to know which employees
14    to issue the notice to.  And the way the class definition
15    reads is, for instance, class number one, the people in the
16    class are those people who have been required to work in the
17    community but have not been paid for that.
18              In our view, there is no one that meets that
19    definition.  That's what's in dispute in the case.
20              THE COURT:  I think the response there would be --
21    and this is a problem.  I said there had to be some
22    refinement.
23              My understanding is that the people that had
24    required that were the funeral directors around the country
25    who were hourly employers and the theory would be that it is
```

1   all of those people who worked during that period of time are

2   punitive class members.

3          MR. LAMPE:  Well, I think that would have been a

4   more reasonable position for the plaintiff to take, and I can

5   I can see that the Court might reach that view, but that is

6   not what the plaintiffs argued in their papers.

7          We raised this issue of the --

8          THE COURT:  I think someone who is an hourly

9   employee at one of these funeral homes who is doing

10  janitorial work is not going to be required to do community

11  service work.  So, I think that is the type of refinement

12  that is necessary here, although I can read enough of the

13  papers that have been prepared to discern what they are

14  really looking at.

15         MR. LAMPE:  Well, their explicit response, when we

16  pointed out the class definition problem was, if that

17  definition is wrong, we actually mean all nonexempt

18  employees.

19         THE COURT:  I don't think that is the case either.

20         MR. LAMPE:  No, Your Honor.  In fact, we would

21  encourage the Court to look at our exhibits and, in

22  particular, we have an Exhibit F, and this exhibit lists all

23  of the different nonexempt positions within Alderwoods.

24  There is twenty-five of them and there is many of these

25  positions that you have assumed.  There is grave digger,

1    grounds keeper, maintenance --

2         THE COURT:  Those people are not going to fall

3    within this, and I am not sure they are on call, those

4    people.  Maybe they are.  I don't know.

5         Let me hear from the plaintiff's side.

6         MR. LAMPE:  One other point.

7         THE COURT:  Yes.

8         MR. LAMPE:  In the chart that is Exhibit F, what we

9    have done is, we have taken the position descriptions for

10   these twenty-five positions and we put a check next to any

11   position that lines up with any of these policies that are

12   supposedly at issue in the case.

13        THE COURT:  Just for future reference, any time

14   there are going to be any lengthy documents like this filed,

15   if you could supply the Court with a courtesy copy that's

16   tabbed and marked, I would really appreciate it.

17        MR. LAMPE:  We will certainly do that, Your Honor.

18   I apologize.

19        THE COURT:  It is tough to find it here because I

20   don't have it tabbed.

21        MR. LAMPE:  The last piece of paper in our brief is

22   the summary of those position descriptions, none of the

23   nonexempt employees whose job description --

24        THE COURT:  Okay.

25        MR. LAMPE:  You are exactly right.  Look at the

1    on-call responsibility of the twenty-five positions. There

2    are only three that have that. There are only three that are

3    involved in selling insurance, only three that are

4    commissioned, and there are six that are involved --

5         THE COURT: And the notice would not go out to

6    everybody, because somebody is going to get a notice, you

7    hope, gee, I am going to get a big benefit here. If I opt

8    in, I am going to get money, but they are not going to ever

9    be in at one of those classes.

10        MR. LAMPE: Our position is that there should be no

11   notice --

12        THE COURT: It has to be tailored to those that are

13   affected and there is going to have to be some way to

14   identify which class they are in.

15        MR. LAMPE: The only evidence before the Court as

16   to all of these positions, with the exception of funeral

17   director, is the evidence that we put forward. There are no

18   affiants who are not funeral directors or assistant funeral

19   directors, and that simply is not spoken to in the record.

20        THE COURT: They may be the bulk of the class

21   because those are the ones that are in all categories.

22        MR. LAMPE: The funeral directors is, but a

23   fraction of the potential all nonexempt employee group, you

24   are absolutely right about that.

25        THE COURT: It is not going to be all nonexempt

1    employees, it can't be, because I don't think the facts would

2    support that.

3           MR. LAMPE:  So, we think it should be four

4    locations and limited to funeral directors or funeral

5    director types as indicated on our chart here that could

6    possibly have been involved in these policies.

7           But, again, we think that, in light of the fact

8    that we have written lawful policies and we are talking about

9    such a very few, five affidavits out of over thousands and

10   thousands of employees, it's just insufficient under the

11   standards to justify any notice.  Thank you.

12          MR. THOMAS:  Your Honor, I think there is probably

13   less disagreement about this point than most of the other

14   issues in the case.

15          We don't have any desire to send notice out to

16   people who I think there were two competing -- we don't have

17   any desire to send out notice to people who do not fall

18   within --

19          THE COURT:  Who have the responsibilities which

20   would have generated these FLSA issues?

21          MR. THOMAS:  Correct.  It is not in our good or the

22   Court's.

23          The other practical problem though, in having dealt

24   with these cases many, many, many of these cases is, the

25   clock is ticking right now.  And the problem is, if we spend

1    years, months, weeks sorting out who could potentially be in
2    the class and who could not, the time could run out on these
3    people.

4            THE COURT:  But, you can't send it out to
5    everybody.  There got to be a practical solution here where
6    you get a list and see who had these positions during this
7    period of time and that's who the notice goes to.

8            MR. THOMAS:  The problem is, I am not sure that
9    the -- this is the bigger concern.  And the other concern is,
10   if you don't send it out to everyone who is supposed to get
11   notice, you have people hanging out there whose claims are
12   lost because of a mistake.

13           THE COURT:  There is not much we can do unless you
14   want to give a notice in a national newspaper, or something
15   like that.  But, I don't think that that is cost justified in
16   this type of case.

17           What do you want to have happen here?

18           MR. THOMAS:  What I would like to have happen is
19   notice to go to anybody who could potentially have a claim.

20           THE COURT:  If you are the defendant -- that is too
21   broad.  I mean, that's putting a terrible burden on them.
22   You have to have some -- I am sympathetic to the individuals
23   who are losing rights.

24           But, on the other hand, you can't tell a defendant,
25   at your own peril, you better notify everybody in the world

1   that they may have it.  You have people on your side who are

2   knowledgeable about the structuring of these entities and who

3   did what and how they did it.  And if this exhibit is

4   correct, these are the people that would get it.  And if one

5   or two are lost, you have a lot of word of mouth among these

6   people, I am sure, all around the country, or you put out

7   some notification in a journal, or something, that would

8   attract their attention, some other way to deal with that

9   concern that you have.

10          MR. THOMAS:  I think what I would suggest is this:

11  Here's another concern I have --

12          THE COURT:  I am not going to have you put a burden

13  on the defendant that is too broad-based and makes them

14  having to flail around and spend a lot of time and money when

15  it has to be more focused.

16          MR. THOMAS:  What I would propose is this:

17          First of all, I am concerned about relying on job

18  titles alone because often in these locations, you have

19  issues where the person may be listed as an embalmer.  That's

20  what their official job title is.  That's what they are coded

21  as.  But, they are, in fact, doing funeral director

22  responsibilities and always have been and sort of known for

23  doing that, but just for the sake of internal company

24  documents, they are referred to differently.

25          I think that if we did two things, one is liberally

 1    see anybody who could be within the group and, number two,

 2    make sure that the notices are posted at the funeral homes to

 3    say, listen, notices have gone out to people who appear to be

 4    within this group.  However, if you didn't receive a notice

 5    but you were doing these type of things, we are informing you

 6    that you may have a claim and you need to do something about

 7    it, and put that posting up for ninety days.

 8         THE COURT:  I just have to take a break because I

 9    have a criminal matter -- I have to just go off the bench for

10    a moment.

11         Talk about, when I am out of here, if there is a

12    way to refine how you can identify these individuals.

13    (Court recessed at 4:40 p.m.)

14    (Court reconvened at 4:45 p.m.)

15         THE COURT:  Okay.  Please be seated.  Okay.

16         MR. THOMAS:  Your Honor, I had a chance to confer

17    briefly with my side on this, but I haven't had a chance to

18    talk the other side, but I think we may have -- let me put a

19    proposal here that may make some sense.

20         What we would be prepared to do is to talk -- speak

21    to Mr. Lampe over the next, I would say -- first, while the

22    toll is in effect, so people aren't losing their rights, we

23    have a toll in effect.

24         THE COURT:  I thought the total was over --

25         MR. THOMAS:  It started again if we are cutting

1  people's time off --

2          THE COURT:  I think the defendants said no to that

3  in the past and I think they would say no again.

4          My preliminary assessment -- and it is going to be

5  my final assessment -- is that a collective action notice

6  would be appropriate to go out, but I have to have an

7  appropriate class and the notice has to be appropriate.

8          I have trouble with the breadth of the parties, we

9  just talked about that, I have trouble with, how do we say

10  who is in which class, you know, the five subclasses.  The

11  notice that was attached to your form doesn't deal with any

12  of that.  It seems to talk broadly in terms of the hourly

13  employees, and all of that.

14          So, I will permit the class notification to go out,

15  but I need you to re-submit a form of notice and a

16  redefinition of the classes that is more narrowly drawn, and

17  some of the -- I just want to get to --

18          You have, like, number one for Alderwoods current

19  and former hourly employees of defendants.

20          Well, that's not going to be the case.  It is going

21  to be some discrete subset of those hourly -- it is not all

22  hourly employees.  So, it is how do you define those hourly

23  employees who would be in the community work policy?  And

24  there appear to be five categories.  So, you are going to

25  have to refine that.

1          Then you go on to say who were suffered or

2   permitted.  I think it has to be who were required because I

3   don't think it is a violation if somebody just permitted you

4   to do community work service.  I think that would be --

5          MR. THOMAS:  Tied more to the regulation.

6          THE COURT:  Right.  So, it has to be -- because

7   there is no violation if they weren't required as part of

8   their job to --

9          MR. THOMAS:  I think the regulation is encouraged.

10         THE COURT:  Okay.

11         MR. THOMAS:  We can tailor that to the regulation.

12         THE COURT:  Whatever it is.  I mean, it is

13  something where it is -- as a condition of their employment,

14  there was something that they were expected to do if they

15  were going to keep their job.  That's the way I understand

16  it, you get paid for that, if there is a violation, and the

17  same thing as with two.  And then they -- the training

18  policy, that's the same issue, and the people that would be

19  in that, and four and five.  So, those are -- all have the

20  same similar kinds of issues.

21         And then when you look at the form of the notice, I

22  didn't have attached to it the form of consent that they

23  would be -- at least my copy didn't have a consent form so we

24  could see what they would be sending back.  And the question

25  is, who sends out the notice?  You know, does that -- do you

1   give the notice to the defendant?

2        MR. THOMAS:  We would bear the burden of the cost

3   for that, unless they want to pay for it.

4        THE COURT:  But, you need to coordinate how you are

5   going to get the list, the mailing list, you just give that

6   to them and they certify that they sent it, however you want

7   to do it, but I need that process done, so I need a

8   restatement of the classes that comport with what I discussed

9   here today.

10       We need the revised notice, you know, that it would

11  be appropriate.  And the notice, how it is going to go.  Is

12  it going to go by mail to these individuals?  How do you get

13  the list?  Do you turn it over to the defendants?

14       You need to coordinate with the defendant so I have

15  a way of understanding that.  And then I need to see the form

16  of the consent that they are signing, that they will be

17  expected to sign as well.

18       So, the sooner you get that in, the sooner the

19  order will be able to go out, because my order won't become

20  final until I have the refined classes and the appropriate

21  form of notice that I feel is appropriate.

22       MR. THOMAS:  Your Honor, we sincerely appreciate

23  all of your efforts to issue quick decisions when I know

24  there is a lot on your docket.

25       One request, which is typically done in these

1    cases, and I request that we do it here, that is within

2    fourteen days, the sides either submit to you an agreed --

3    mutually agreed notice and form.  If that's not done --

4              THE COURT:  It would be without prejudice to the

5    other side's right to preserve -- but, I mean, they are going

6    to be objecting to what I have done here today, I am

7    assuming.

8              MR. LAMPE:  In part.

9              THE COURT:  So, if you can agree that whatever that

10   is produced is consistent with my order, it does not mean

11   that you are agreeing that I made the right decision, but if

12   you can mutually agree that this comports with what I have

13   ordered today, that would be helpful and we can move on.

14             MR. THOMAS:  If there are issues that we can't

15   agree on, both sides --

16             THE COURT:  Then you have to come back here

17   promptly.

18             MR. THOMAS:  We'd submit our notice, their proposed

19   notice so you can see the difference.

20             MR. LAMPE:  That makes sense to us.  If there is a

21   disagreement, it may go to the content or manner of

22   distribution.  We will try to work that out, both sides.

23             THE COURT:  And I am going to impose on both sides

24   an obligation to work diligently because I am finding that it

25   is the collective notice -- I will say there will be a

1   determination at the first tier that the class will be

2   conditionally certified along the lines that I described.

3   They have to be narrowly limited to those employees who would

4   fit within the work issues that were raised, and the workers

5   have to be, the classes have to be refined to reflect that

6   and to be more consistent with the regulations, and then we

7   need to work out how the notifications will go out and the

8   form of the notice has to be changed to reflect what we have

9   talked about.

10         MR. THOMAS:  Your Honor, one last issue on the

11   joint employer SCI issue.  We may be able to submit that

12   briefing to you without any additional discovery, but we

13   would request an order today that if we need limited

14   discovery on that issue, that that be expedited and begin

15   immediately and be turned around in less than fifteen days.

16         THE COURT:  It depends on what kind of volume of

17   material you are asking for.

18         MR. THOMAS:  I don't think much.  But, we have had

19   disagreements with defense counsel about whether discovery

20   can proceed.  But, we would request that the Court's

21   direction be that it be done immediately and in an expedited

22   basis.  We will try to work cooperatively with them, but we

23   would like there to be an understanding that discovery on

24   that issue is to be going forward as quickly as possible

25   since it is so important.

1          MR. LAMPE:  Your Honor recalls from the hearing in
2    January that Mr. Thomas indicated he did not need any
3    discovery and he was confident he could settle with what he
4    had --
5          THE COURT:  At least I am concerned today that at
6    SCI, that that's not the case.
7          MR. LAMPE:  If he wants to go take discovery,
8    obviously as you said in the hearing, it has to be a two-way
9    street and there can't be any parameters on how many days
10   because they don't know what we want and I don't know what
11   they want.  We need to discuss it before there is any sort of
12   restriction.
13         THE COURT:  You meet and confer on a discovery
14   plan, okay?  And find out what you are going to need, what
15   you are going to be asking for.  You should have a meet and
16   confer sometime next week as to what the parameters are.  It
17   is a two-way street when you are going down there.  That way,
18   if you feel you need some limited discovery with respect to
19   this issue that is contemplated, that can happen.
20         So, you need to do that.  And if you want to get
21   together again, if you can agree on it, you can just start.
22   If you have to know something, say what you want and how long
23   you need to take it, and the other side can respond.  We will
24   let you file something like that, but you have to notify the
25   other side that you are asking for an expedited hearing.  The

1  response turn-around should be two business days, and I will
2  try to have a hearing within a week on that.

3           So, that the sooner you get working and seeing what
4  you need to do, you know, you will be protecting the interest
5  of the parties that you are seeking to represent as class
6  members here.  But, so it is up to you really to do that.
7  So, just work together, to the extent that you can, if they
8  want discovery.

9           On the other hand, to be responding to it, you are
10  going to have to make that available as well.

11           MR. THOMAS:  Certainly, Your Honor.

12           MR. LAMPE:  We just would reserve the right to
13  object to having to turn anything around in two days.  If
14  there is a brief we have to file within two days of getting
15  their brief, it may not be possible.  We may be asking for
16  additional time to do that.

17           THE COURT:  It is going to depend.  But, I think
18  that should be the goal.  If they can get something out two
19  days from now and you can respond in two days, I think if it
20  is somewhat short, that is fine.  We can have a more full
21  dialogue and a telephone conference if necessary.

22           MR. THOMAS:  Your Honor, those issues --

23           THE COURT:  That is the goal, is what I am saying.
24  I am not ordering that that is the case.  That would be the
25  goal.  Because if they are going to ask for an expedited

1    hearing, you have to ask for it.

2            MR. LAMPE:  Right.

3            THE COURT:  If you feel you can't do it, you

4    respond that way.

5            THE COURT:  Okay?  So, we need to set a time for

6    the argument on the motion to dismiss.  There just wasn't

7    enough time to get all of this in today.

8            How about June 8th at two o'clock?

9            MR. THOMAS:  That's fine with us, Your Honor.

10           MR. LAMPE:  That is fine with us, Your Honor.

11           THE COURT:  That's a Friday at two o'clock.  Okay?

12   And so I will look for you, and it is so ordered on the

13   record today that the findings that I made with respect to

14   the evidentiary materials that support the plaintiffs'

15   motion, as well as the lack thereof with respect to

16   Alderwoods, and the lack thereof with respect to SCI, the

17   Court will conditionally certify the class as reflected on

18   the record today, and it's subject though to the plaintiffs'

19   filing with the Court the revised class description, a

20   revised notice that comports with what the Court has said

21   today, as well as a plan for notice which would include how

22   the notice is going to go out, and I will need to see the

23   consent form that's an exhibit to the file.

24           Anything else I overlooked?

25           MR. LAMPE:  Your Honor, I wanted to ask one

1    question.

2          Have you reached a conclusion yet about the

3    geographic scope?

4          THE COURT:  The geographic scope, I am going to say

5    is national.  I think the -- I am sufficiently -- at this

6    stage of the proceedings, applying the liberal standard

7    looking at the managers who are professing to have personal

8    knowledge in their positions of the corporate policies, the

9    Court finds at this stage that that is sufficient.

10          MR. THOMAS:  Thank you, Your Honor.

11          THE COURT:  Okay?  It is all subject to

12    reconsideration at the second stage.

13          MR. LAMPE:  Yes, Your Honor.  Thank you.

14    (Court adjourned on Thursday, April 19, 2007, at 4:30 p.m.)

15

16                    *  *  *  *  *

17          I certify that the forgoing is a correct transcript

18    from the record of proceedings in the above-entitled matter.

19

20                          S/Michael D. Powers
                          Michael D. Powers
21                          Official Reporter

22        *****NOT CERTIFIED WITHOUT ORIGINAL SIGNATURE*****

23

24

25