**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBORAH PRISE, et al.,

      Plaintiffs,

    vs.

ALDERWOODS GROUP, INC., et al.,

      Defendants.

Civil Action

No. 06-1641

_____

Transcript of proceedings on September 6, 2007,
United States District Court, Pittsburgh, Pennsylvania,
before Joy Flowers Conti, District Judge

APPEARANCES:

For the Plaintiffs:      J. Nelson Thomas, Esq.
                     Patrick J. Solomon, Esq.
                     Charles H. Saul, Esq.
                     Liberty J. Weyandt, Esq.
                     Justin M. Cordello, Esq.

For the Defendants:      Matthew W. Lampe, Esq.
                     Amy E. Dias, Esq.

Court Reporter:          Richard T. Ford, RMR, CRR
                     619 U.S. Courthouse
                     Pittsburgh, PA  15219
                     (412) 261-0802

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1          (Proceedings held in open court; September 6, 2007).

2            THE COURT:  This is a hearing in Prise versus

3  Alderwoods Group, Inc., Civil Action No. 06-1641.  The hearing

4  concerns a question as to whether or not notice should be sent

5  to employees of Service Corporation International.

6            Will counsel please enter your appearance.

7            MR. THOMAS:  Yes, Your Honor, Nelson Thomas, Dolin,

8  Thomas & Solomon.

9            MR. LAMPE:  Matt Lampe, Your Honor, Jones Day, on

10  behalf of the Defendants.

11           THE COURT:  I notice a number of other people are

12  present here.  Are the two that have just entered your

13  appearance the ones who will make the argument?

14           MR. THOMAS:  Yes, Your Honor.

15           THE COURT:  Would the others just like to be on the

16  record so we know who is present.

17           MR. SOLOMON:  Patrick Solomon for the Plaintiffs.

18           MR. SAUL:  Charles Saul of the firm Margolis

19  Edelstein for the Plaintiffs.

20           MR. CORDELLO:  Justin Cordello.

21           MS. WEYANDT:  Liberty Weyandt from the firm

22  Margolis Edelstein.

23           MS. DIAS:  Amy Dias for the Defendant.

24           THE COURT:  Thank you.  The briefing of the parties

25  is, quite frankly, like two ships passing in the night because

1    the views of the law are just dramatically different from each

2    side.  So I just want to take a moment and reset the framework

3    for this.

4            The Plaintiffs are requesting that a collective

5    action notification be sent as a result of alleged violations

6    of the Fair Labor Standards Act, the FLSA.  The subclass

7    proposed as to the Defendant that is at issue here -- because

8    one notification has already gone out with respect to the

9    Alderwoods Group, Inc., I might be mistaken on that, there are

10   some other issues coming up on that.  The question concerns

11   the ultimate parent of the organization, which is Service

12   Corporation International.

13           The class would be current and former hourly

14   employees of Defendants who were suffered or permitted to

15   perform work by handling calls and other work related issues

16   after hours, but not compensated by Defendant for such work

17   performed after the workday off-site from the funeral home --

18   the on-call pay policy.

19           The Plaintiffs are asserting that the Defendant --

20   we will call the Defendant SCI for ease of reference -- is

21   their employer under the FLSA.  The Defendant says no, it is a

22   mere holding company and has no employees.

23           The problem I had was that the Plaintiff in the

24   briefing set forth a lot of factors which, if they were true,

25   would implicate an employment/employer relationship, which is

1   a very broad concept for purposes of the Fair Labor Standards

2   Act.

3          But Defendant has set forth affidavits, which have

4   not been contradicted to this Court's knowledge, showing that

5   those allegations are simply not true.

6          Just to give a preview, the definition of employer

7   under the FLSA, as set forth in 29 United States Code,

8   Section 203(d), provides that an employer includes any person

9   acting directly or indirectly in the interest of an employer

10  in relation to an employee.

11         The courts have to look at an economic reality test

12  and a totality of the circumstances test that the courts look

13  at, and the courts have noted that there's a broad definition,

14  it's broader than what would normally be the case in a

15  traditional common-law sense.  Those cases are Rutherford Food

16  Corp. versus McComb, 331 US 722, 1947; Zavala versus Wal-Mart

17  Stores, Inc., 393 Fed Supp. 2d 295, District of New Jersey,

18  2005.  There are a number of others that stand for that same

19  proposition.

20         The cases -- and I have read all of the seminal

21  Supreme Court cases that were decided, as well as the other

22  cases cited by the Plaintiffs in this situation, and also the

23  regulation which is set forth in 29 Code of Federal

24  Regulations, Section 791, and I think it's (b) -- I have to

25  get my copy of that.  The one that has the applicability in

1   this case is (b)(3), but I did want to quote for purposes of

2   the record the exact language of (b)(3), which I had printed.

3   Can you reprint that for me?

4           THE LAW CLERK:  I will.

5           THE COURT:  Thank you.

6           I also read the cases that were cited in the

7   WESTLAW version of the Code of Fed Regulations that are cited

8   under that section.  Quite frankly, the cases that are

9   implicated here mainly deal with individuals who are

10  shareholders or officers of a corporation.  As the

11  shareholder, they may have been the majority shareholder or

12  controlling shareholder.  The courts have found those

13  individuals in certain circumstances to be employers.

14          But there was generally some affirmative conduct

15  that was involved, direct involvement in the operations of the

16  business such that the courts could find some relationship,

17  more than just being a shareholder.  That there was direction

18  and control actually being exercised.

19          When I looked at the cases that the Plaintiff has

20  cited, the cases of the Plaintiff generally dealt with

21  situations where there was some affirmative action being taken

22  by the person sought to be held as the employer.

23          For example, in the Alba versus Loncar case, which

24  was 2004 WESTLAW 1144052, Northern District of Texas,

25  May 20, 2004, the Court there was considering whether an

1   individual's control over the employees of a corporation were

2   sufficient to warrant a finding of an employer/employee

3   status.

4           The Court there found that there were certain

5   managerial responsibilities and substantial control over the

6   terms and conditions of the employment.  So they were looking

7   for operational control in some sense.  I don't think it had

8   to be complete, but it had to be substantial.

9           Indeed the seminal decision of the Supreme Court,

10  and they all seem to be fairly old cases going back into the

11  1940s and the most recent being the 1973 decision of the

12  Supreme Court in Falk versus Brennan, 414 US 190.  In that

13  case there was a partnership that was providing management

14  services for a number of real estate apartment complexes, and

15  the Supreme Court there found that even though the individuals

16  may have been paid by the separate -- at issue may have been

17  paid by the separate apartment complexes, the partnership

18  could actually be an employer as well, and what they looked

19  for was -- this is on Page 431 -- they looked at the extent of

20  the managerial responsibility at each of the buildings, which

21  gave that partnership substantial control of the terms and

22  conditions of the work of the employees.  So they were looking

23  really to the actions.

24          When you look at the regulation that's been raised

25  here, there were two things that I wanted to bring to bear

1    here.  The first is that the Plaintiffs cite Section 791.2(a)
2    for the proposition that there has to be some kind of a
3    showing that they are completely disassociated.  But if you
4    read that phrase in context, what the entire sentence says is:
5    If all the relevant facts establish that two or more employers
6    are acting entirely independently of each other and are
7    completely disassociated with respect to the employment of a
8    particular employee who during the same work week performs
9    work for more than one employer, each employer may disregard
10   all work performed by the employee for the other employer.
11        So in (a) they are not dealing with a
12   parent/subsidiary relationship we have here; they were talking
13   about someone who works part-time for one entity in a week and
14   part-time for someone else in a week.
15        The question is when can you lump those two
16   employers together, and the Court in that circumstance -- I
17   mean the regulation in that circumstance was looking for some
18   kind of complete disassociation because of the nature of how
19   the work was being performed during the same week.  So I think
20   you can't take that completely disassociated just out of
21   context in terms of what was the concern being addressed in
22   Section 791.2(a).
23        Then when you get to (b), because I think this is
24   the one that is more directly relevant here, because what
25   they're concerned with in (b) is a benefit.  It is where the

1    employee performs work which simultaneously benefits two or

2    more employers or works for two or more employers at different

3    times during the work week, a joint employment generally --

4    relationship generally will be considered to exist in

5    situations such as.

6              So at best what you have here is, arguably,

7    performing work which will simultaneously benefit two entities

8    because you could argue going up the chain that whoever is

9    working at the lowest tier subsidiary, there could be some

10   indirect benefit flowing up to the parent level.

11             Then when you get to subpart (1), it has to deal

12   with if there is an agreement to share, and I don't think

13   there is any issue here that there is any sharing of the

14   employee.

15             The second aspect of that regulation is where one

16   employer is acting directly or indirectly in the interest of

17   the other employer in relation to the employee.  And I think

18   that's probably the management kind of services.  If you are

19   stepping in and providing management services and you're doing

20   that in relation to the particular employer, maybe you could

21   be caught up in the parameters of the regulation.

22             The final one, which is the only one I think that

23   has some, arguably, applicability here, is (3), where the

24   employers are not completely disassociated with respect to the

25   employment of a particular employee.  And I don't know what

1  completely disassociated means in this context, and it could
2  mean that you're providing some services for one, some
3  services to another.

4          But it goes on to say that:  May be deemed to share
5  control of the employee, directly or indirectly, by reason of
6  the fact that one or more employer controls or is controlled
7  by or is under common control with the other employer.

8          The cases that are cited there are the same kinds
9  of cases that the Plaintiff was citing where there was some
10 individual generally who was actually providing the hands-on
11 management and was interfacing and making decisions, directs
12 decisions, relevant to the particular employee or employees in
13 question.

14         So these were not the cases where you have a parent
15 company and a subsidiary, and that's the sole relation that
16 you have, and you don't have the parent actually managing the
17 business of human relations or anything else like that.

18         So that's why when you first read the Plaintiffs'
19 brief, the Plaintiff is making all the arguments, they're
20 providing human relations services, they're providing the
21 benefits, they're providing policies, all of that type thing.

22         The response by the Defendant shown by affidavit
23 said that was not the case.  That there were other entities.
24 So there may be other employers here who may be appropriate to
25 be brought in, but it doesn't appear that it would be SCI if

1  SCI as the corporate board is not doing something overtly to

2  be involved in the management or the operational control of

3  the businesses.

4        So that's the problem that I see here for the

5  Plaintiffs.  So I will hear from the Plaintiffs first.

6        MR. THOMAS:  Your Honor, you -- I understand your

7  position on that, and I don't think -- I will leave it be.  I

8  understand where you are coming out on that.  I think that

9  probably what makes the most sense is for us to, if the test

10 is going to be focusing on the operational control, they have

11 certainly listed those entities in their papers and we will

12 either file a new complaint or amend this one to bring those

13 in, and then we will tee up the issue on that score.

14       THE COURT:  Right.  One other thing I wanted to

15 mention, when you look at the definition in Section 203(d)

16 where it defines the person, and it says any person acting

17 directly, so that in itself connotes there has to be some

18 affirmative action.  It can't be just totally passive.

19       There are a number of lower court decisions where

20 you have just the pure parent/subsidiary relationship where

21 the parent really is a pure holding company and has no

22 operational functions of any kind.  The lower courts that have

23 considered this view that as not being an employer for

24 purposes of this statute.

25       MR. THOMAS:  That's fine.  We can bring in those

1   individuals potentially and we will see where we go.  But the

2   operational people have been identified and the operational

3   entities, and that may be a better approach, and we have that

4   in their papers and I think that would be the next step.

5           THE COURT:  So I will deny this motion.  And I

6   think also that would give me the grounds to grant the summary

7   judgment at this stage without prejudice if you are going to

8   continue to try -- are you going to continue to try to keep

9   SCI in?

10          MR. THOMAS:  Yes, Your Honor, and maybe I would

11  make the motion now for leave to amend the complaint to add in

12  the -- at least the entities they have identified in their

13  papers, which are the SCI Eastern Market Support Center LLP,

14  SCI Western Market Support Center, Houston Market Support

15  Center, and the SCI Funeral and Cemetery Publishing -- or

16  Purchasing Cooperative.

17          So we request that that be deferred until we make

18  our motion to amend and motion for notice for those people.

19  We may be adding in individuals or different entities, I don't

20  know.

21          THE COURT:  Because that seems to be what they are

22  looking for.  In all the cases -- and I did read the

23  Defendants' cases and the Plaintiffs, and particularly the

24  Supreme Court cases, and they were all looking for some kind

25  of exercise of control, not just the mere power to control,

1   but somebody that was actually an entity or a person that was

2   actually, you know, involved with the employee.

3           MR. THOMAS:  And I think from their papers you have

4   that there.  They say these were the ones that did the HR

5   functions, these are the ones that interfaced.  If it is

6   simply a question of putting in the new party that has that,

7   we request leave to amend and put those in.

8           THE COURT:  Okay.  I will hear from the Defendant.

9           MR. LAMPE:  Well, since the Court has decided to

10  deny the motion, I am not going to speak to that.

11          I think the two issues that you want to hear from

12  me on is, first of all, you raised the point about the summary

13  judgment motion.

14          THE COURT:  Right.  I specifically said it wouldn't

15  be argued today here.  But in light of their statement that

16  they're willing to -- or they want to amend the complaint, I

17  just don't know if that should be denied without prejudice at

18  this time because I don't know -- it is really difficult when

19  you have serial summary judgments and that type of thing.  So

20  that for judicial economy would be my question where to go

21  from here.

22          MR. LAMPE:  The two named Plaintiffs, Prise and

23  Rady, they never worked for SCI or even an affiliate of SCI.

24  During the time that they were employed by Alderwoods,

25  Alderwoods was a competitor.

1         THE COURT:  So they would have to amend the

2   complaint to bring in another Plaintiff too then.

3         MR. LAMPE:  Right.  We think as to SCI, the named

4   Defendant in this case, these two named Plaintiffs couldn't

5   possibly have a claim against them.  You have already

6   determined that SCI is not an employer, and even if it were --

7         THE COURT:  At least they haven't presented

8   anything to get the notification.

9         MR. LAMPE:  Correct.  But even if they were an

10  employer, they certainly wouldn't be Ms. Prise and Rady's

11  employer because those two people left Alderwoods before there

12  was any association of any kind between Alderwoods and SCI.

13  We think -- we do think it makes sense to dismiss SCI from the

14  case.  There certainly aren't any facts that would suggest the

15  two named Plaintiffs could have any kind of a claim against

16  them.

17         Then as to the request to amend the complaint, I

18  think -- I would need to look to see whether we would have

19  grounds in the law to oppose that.  I know the rules on

20  amendments are fairly liberal, but I am also sort of struck by

21  the fact that we were together back in April and Mr. Thomas

22  raised back then the fact that he needed to take some

23  discovery to find out what the interrelationships were among

24  these various corporate entities.  We agreed to that, and they

25  have taken no discovery.  A half a year has now passed and it

1   seems to me that the time to investigate which corporate

2   Defendants should be brought into the case was a half a year

3   ago, not now.  This case is coming up on a year old and we're

4   talking about trying to bring two completely separate

5   corporations into this lawsuit.

6           This class period, if you go back three years, to

7   the vast majority of this class period, Alderwoods and SCI are

8   competitors.  There is no relationship at all.  As of November

9   of last year they became related.  But there's no request for

10  injunctive relief in this case.  This is a damages case.

11          Again, I would want to research this and be able to

12  formally respond, but I think our inclination would be it is

13  too late to try to continue to dredge up some SCI entity to

14  drag into this case which is an Alderwoods case.

15          THE COURT:  If at the time -- I think what they are

16  saying is if at the time in issue, unless you have some other

17  Plaintiffs that come up later, their argument is that these

18  Plaintiffs don't have anything to do with any SCI entity.

19          MR. THOMAS:  Your Honor, that was addressed in our

20  summary judgment papers, which is --

21          THE COURT:  I haven't really spent a lot of time on

22  that.

23          MR. THOMAS:  Exactly.  I was not prepared today to

24  be dealing with that based on the Court's decision.

25          However, what we point out in those papers is there

1  is currently over 50 Plaintiffs in this case who are -- and

2  actually substantially more -- who are SCI employees and who

3  under --

4        THE COURT:  I think what you need to address is

5  whether you need additional -- you can amend to add Plaintiffs

6  as well.  But if they are not -- if they don't have the same

7  basis, I mean, if this all happened under Alderwoods and SCI

8  just inherited them because of their acquisition, they may

9  have inherited the liabilities through the Alderwoods entity

10  that they acquired and they may have to be indirectly

11  financially responsible.  But as a separate entity, maybe they

12  don't have a role to play here.

13        MR. THOMAS:  Actually, Your Honor, when I

14  referred -- there is over 500 Plaintiffs in this lawsuit.

15  Under the FLSA, they are actually party Plaintiffs, they

16  actually become parties, so there is actually over 500 party

17  Plaintiffs here.  Over 50 of those are direct SCI employees.

18  So I think that Mr. Lampe's point is not well-founded in terms

19  of this.  We do have over 50 SCI Plaintiffs.

20        That said, based on what I just heard, we will have

21  to evaluate all of our options.

22        I guess another -- I too am concerned about -- I

23  want to get this case moving forward.

24        THE COURT:  Right.

25        MR. THOMAS:  It may be easier for us, and we will

1  evaluate everything, I don't know what we conclude, we may

2  conclude just simply filing another complaint against SCI and

3  name these people officially, we may choose that.  We may

4  speak to Mr. Lampe to see if he consents.  We may bring a

5  motion to amend.

6       THE COURT:  Is there any concern the same activity

7  is still continuing?

8       MR. THOMAS:  Yes, Your Honor, it is.  Again, the

9  statute of limitations of people is dropping off and we are

10  very concerned about that.  So, again, much like Mr. Lampe, I

11  don't want to answer today not having done the research on the

12  statute of limitations and the parties and the best course,

13  but I think that really whether it's by -- this issue is not

14  going to disappear, it is either going to be by separate

15  complaint or motion to amend, we will get this teed up as soon

16  as possible so we can get these employees -- and, you know,

17  the Defendants, although they say they are concerned about the

18  length of the case, they have knocked off a third of their

19  liability by the length that has gone on already and we want

20  to put that -- we want to put that to an end now.  So we are

21  going to move as quickly as we can so that these employees

22  shouldn't be bearing the cost of what has --

23       THE COURT:  So this motion will be denied on the

24  notification for the reason that there wasn't sufficient

25  evidence presented to the Court to implicate an

1    employer/employee relationship with SCI.  And I will cite the

2    standards of the Falk decision and -- there is a recent

3    Maryland case, Glunt versus GES Exposition Services, Inc., 123

4    Fed Supp. 2d, 847, District of Maryland, 2000.  There's a

5    couple other decisions like this that are cited.  Those are

6    the lower courts I said that have considered this, just a

7    simple parent/subsidiary relationship.

8              But if you wish to amend the complaint, you will

9    file a motion to do that and it can be responded to in due

10   course.  If you want to meet and confer to try to expedite

11   this, it isn't good for either party to have these issues

12   languishing.  So I think we need to move on from there so that

13   the case can progress.

14             MR. THOMAS:  Your Honor, we would like to get, once

15   the motion is made, as expedited a schedule as possible to get

16   that done.  Procedurally how would you prefer us to request

17   when we file the motion that there be --

18             THE COURT:  Ask for an expedited hearing.  File a

19   separate motion asking for an expedited hearing and a

20   shortened briefing schedule.  The other side has to have an

21   opportunity to respond.  So if you ask for an expedited

22   briefing schedule and an expedited hearing, I will see those

23   as they come in.

24             MR. THOMAS:  Thank you, Your Honor.

25             THE COURT:  Okay.  Anything further?

1        MR. LAMPE:  Not from me, Your Honor, thank you.

2        THE COURT:  Thank you all.

3        (Record closed).

4

5

6

7                    *       *       *       *       *

8

9

10

11              C E R T I F I C A T E

12        I, Richard T. Ford, certify that the foregoing

13   is a correct transcript from the record of proceedings in the

14   above-titled matter.

15   S/Richard T. Ford    _____

**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORAH PRISE AND HEATHER RADY | Civil Action No. 06-1470 |
| Plaintiffs, | |
| v. | Judge Joy Flowers Conti |
| ALDERWOODS GROUP, INC., BURTON L. HIRSCH FUNERAL HOME, INC., H. P. BRANDT FUNERAL HOME, INC., H. SAMSON, INC., NEILL FUNERAL HOME, INC, & SERVICE CORPORATION INTERNATIONAL | JURY TRIAL DEMANDED |
| Defendants. | |

## <u>MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT</u>

NOW COME, the Plaintiffs, Deborah Prise and Heather Rady, by and through their attorneys, MARGOLIS EDELSTEIN, CHARLES H. SAUL, ESQUIRE and LIBERTY J. WEYANDT, ESQUIRE, and file the following Motion for Leave to File Second Amended Complaint and aver as follows:

1.    This civil action was originally filed by Plaintiffs Prise and Rady on November 6, 2006, which sought relief against Defendants Alderwoods Group, Inc., Burton L. Hirsch Funeral Home, Inc., H. P. Brandt Funeral Home, Inc., H. Samson, Inc., Neill Funeral Home, Inc., under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000(e), *et. seq* ("Title VII") and the Equal Pay Act, 29 U.S.C. § 206 ("EPA").

2.    Plaintiffs filed an Amended Complaint on February 23, 2007, in which Plaintiffs added Service Corporation Inc., as a Defendant in the case. Upon information and belief, Plaintiffs

1

averred that Alderwoods and SCI merged on or about November 28, 2006, via an "Agreement and Plan of Merger," dated April 2, 2006 (see Exhibit 1), which occurred after the filing of Plaintiffs' original Complaint.

3.      It was Plaintiffs' intention to include SCI as a Defendant under a theory of successor liability. However, Defendants interpreted Plaintiffs' Amended Complaint differently, and believed that Plaintiffs' claimed that SCI was the actual employer of Plaintiffs during the time period of the alleged incidents.

4.      Defendants' interpretations of what Plaintiffs' Complaint alleges are hypo-technical and exaggerated, in light of this Court's liberal notice-pleading requirements. It has been confirmed to Defendants that Plaintiffs do not claim that SCI was their employer during the time period in which the incidents alleged in the Complaint occurred, but that SCI is alleged to be liable under a successor liability theory.

5.      Plaintiffs' counsel offered to amend the Complaint to clarify Plaintiffs' position with respect to Defendant SCI in order to resolve this conflict. However, Defendants' counsel refused to consent to Plaintiffs' filing of a Second Amended Complaint, (to resolve the problems which Defendants complained of), but instead demanded the Complaint be withdrawn, or Defendants would request Rule 11 sanctions[1].

6.      Defendants' counsel then claimed that Alderwods and SCI did not merge. Defendants asserted that Alderwoods and SCI are two separate and distinct corporations, and, therefore, Defendants claim that SCI is not a proper party in this action.

---

[1] Plaintiffs believe that Defendants wanted Plaintiffs to withdraw their Complaint, such that when a new Complaint was filed, Defendants could then assert that the statute of limitations had expired.

7.    The parties appeared before the Court on May 23, 2007, for a status conference, during which the above issues were discussed. The Court permitted Plaintiffs the opportunity to file a Motion requesting leave to file a Second Amended Complaint and also permitted Defendants to file a response thereto[2].

8.    Upon information and belief, Plaintiffs aver that Alderwoods and SCI effectively merged on or about November 28, 2006, through the use of a subsidiary corporation, Coronado Acquisition Corporation ("Coronado"), created solely for the purpose of SCI's acquisition of Alderwoods. The merge of SCI's interests with that of Alderwoods has been scrutinized at length by the Federal Trade Commission. The two entities signed what has been publically referred to as "Agreement and Plan of Merger." (Exhibit 1). Public  records also state that SCI acquired Alderwoods. The merger of the two entities is somewhat complicated, and without the benefit of discovery, Plaintiffs are unable to ascertain for certain the true relationship between Alderwoods, SCI and SCI's wholly owned subsidiary, Coronado.

9.    SCI has already legitimately been named as a party in Plaintiffs' First Amended Complaint. In all fairness, Plaintiffs' request to amend the Complaint again, with respect to Defendant SCI, stems from Defendants' complaints about the amendment. In all fairness, the relationship between the two entities is complicated and confusing with numerous filings with the SEC. Defendants have stated that another entity, namely Coronado Acquisition Group ("Coronado"), was created to effectuate the acquisition of Alderwoods. Coronado is believed to be a wholly owned subsidiary of SCI. According to documents filed by SCI with the SEC, Alderwoods

---

[2] Should the Court grant Plaintiffs' Motion, new deadlines for Responsive pleadings and responses thereto will need to be set.

and Coronado merged, and became a wholly owned subsidiary of SCI, which is now called Alderwoods (see Exhibit 1). Plaintiffs contend that this makes SCI a successor in interest to Alderwoods.

10.    Upon information and belief SCI has acquired all the stock and assets of Alderwoods. It is also Plaintiffs understanding that SCI agreed to assume all of Alderwood's liabilities, based upon a review of limited documents which have been available for review. Since the merger between Alderwoods and SCI took place after the filing of this suit, and after the EEOC investigation, SCI either knew, or should have known of the action and, therefore, should have been aware that they would also be taking on responsibility for the liabilities of Alderwoods that have been alleged in the Complaint.

11.    A true and correct copy of Plaintiff's proposed Second Amended Complaint is attached hereto and marked as Exhibit 2.

12.    Additionally, Plaintiffs also wish to amend their Complaint to include allegations under the Pennsylvania Human Relations Act. Subsequent to the filing of the First Amended Complaint, Plaintiffs received Notices of Rights from the Pennsylvania Human Relations Commission, dated April 17, 2007. Therefore, Plaintiffs wish to amend their Complaint to include causes of action which arise under the Pennsylvania Human Relations Act ("PHRA"), of which this Court has supplement jurisdiction. See attachments to Exhibit 2.

13.    No party is prejudiced by the filing of the Second Amended Complaint. Defendant SCI has already been named as a party to the action via Plaintiffs' First Amended Complaint. The Amendment with respect to SCI is to clarify Plaintiffs' position that SCI is liable under a successor

liability theory, which is being done in part to rectify Defendants' complaints with respect to the pleading. The amendment with respect to the PHRA claims is the type of amendment which is routinely granted by the Court, in light of the fact that Plaintiffs could not have included such causes of action in their Complaint until they were given the right to do so by the PHRC. Furthermore, the PHRA claim, mirrors the claims already pled under Title VII.

     WHEREFORE, Plaintiffs, respectfully requests that this Court grant the instant Motion for Leave to Amend Complaint.

                        Respectfully submitted,

                        MARGOLIS EDELSTEIN

Date:  6/8/07                 /s/ Liberty J. Weyandt

                        CHARLES H. SAUL, ESQUIRE
                        PA I.D. #19938

                        LIBERTY J. WEYANDT, ESQUIRE
                        P.A. I.D. #87654

                        525 William Penn Place
                        Suite 3300
                        Pittsburgh, PA 15219
                        (412) 281-4256

                        Attorneys for Plaintiff