**EXHIBIT 9**

LEXSEE



Caution
As of: Oct 11, 2007

**Margarita Madrigal et al., Plaintiffs v. Green Giant Company, Defendant.**

**No. C-78-157.**

**United States District Court for the Eastern District of Washington.**

**1981 U.S. Dist. LEXIS 15325; 92 Lab. Cas. (CCH) P34,068; 25 Wage & Hour Cas.
(BNA) 89**

**July 27, 1981.**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employees brought motions to compel answers to its interrogatories; for leave to notify employees; and for class certification in their employment class action raising a claim against defendant employer under 29 U.S.C.S. § 216 of the Fair Labor Standards Act (FLSA). The employer brought a motion to dismiss the employees' lawsuit.

**OVERVIEW:** The employees' class action against the employer contested the propriety of their compensation under the FLSA in light of deductions of travel and food coupon advances from paychecks and concerning wages and hours records. The court denied the employees' motion to obtain a list of similarly situated employees to notify them about opting in the class action because precedent did not allow the court to assist with this discovery. The court concluded that the employer's provision of food coupons and travel allowances did not constitute "free and clear" advances under law and therefore the employees' could proceed on their first cause of action. The court concluded that, under the first and fifth causes of action, the employer did not breach the their contract by allegedly not paying the hourly wage rate. The court granted the employer's motion for the judgment of dismissal on the employees' fifth cause of action, as well as the third and fourth ones. The court

found both the third and fourth to be solely based on FLSA violations and their inclusion of remedies under Wash. Rev. Code §§ 49.52.050, .49.52.070 and the Wagner-Peyser Act to enforce the FLSA was against congressional intent.

**OUTCOME:** The court denied the employees' motions to compel answers to its interrogatories; for leave to notify employees; and for class certification in their employment class action making a claim against the employer under the act. The denied in part as to the first cause of action and granted in part as to the third, fourth, and fifth causes of action, the employer's motion to dismiss the lawsuit.

**CORE TERMS:** cause of action, minimum wage, class members, clearance, Wagner-Peyser Act, class certification, notification, employment contracts, prevailing, class actions, summary judgment, job order, travel, wage rate, agricultural workers, free and clear, conditions of employment, alternative remedies, working conditions, civil remedies, notify, coupon, food, opt, premised, answers to interrogatories, attorney's fees, present case, material terms, remedy available

**LexisNexis(R) Headnotes**




1981 U.S. Dist. LEXIS 15325, *; 92 Lab. Cas. (CCH) P34,068;
25 Wage & Hour Cas. (BNA) 89

*Civil Procedure > Class Actions > Class Members > General Overview*
*Civil Procedure > Class Actions > Opt-Out Provisions*
*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*
[HN1]The Fair Labor Standards Act (FLSA) provision for class actions operates independently of Fed. R. Civ. P. 23. The FLSA requires potential class members to "opt in" rather than "opt out," and only those who file a written consent become parties to the suit. Those who do not opt in are not prejudiced from bringing subsequent suits individually.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Minimum Wage*
[HN2]Employer deductions from an employee's pay to recoup advances made by the employer do not violate Fair Labor Standards Act minimum wage provisions if the advances are made "free and clear."

*Governments > Legislation > Statutory Remedies & Rights*
*Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview*
[HN3]The statutory remedy is the sole remedy available to the employee for enforcement of whatever rights he may have under the Fair Labor Standards Act.

*Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview*
[HN4]The Wagner-Peyser Act (Act) as enacted does not provide civil remedies for violations of the Act.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Minimum Wage*
[HN5] 20 C.F.R. § 653.108 makes the following references to wages: (c) No local office shall place a job order for agricultural workers into intrastate clearance unless(2) The employer has signed the statement required by paragraph (c)(3) of this section that the job offer states all the material terms and conditions of employment and(4) The wages and working conditions offered are not less than the prevailing wages and working conditions among similarly employed agricultural workers in the area of intended employment or the applicable federal or state minimum wage, whichever is higher. If a base rate and a bonus is offered, the base rate must not be less than the prevailing wage rate or applicable federal or state minimum wage, whichever is higher.

*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Reasonable Fees*
*Contracts Law > Remedies > Punitive Damages*
*Labor & Employment Law > Employment Relationships > General Overview*
[HN6]Wash. Rev. Code § 49.52.050 provides in part: Any employer who (2) shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract. Shall be guilty of a misdemeanor. Wash. Rev. Code § 49.52.070 further states: Any employer who shall violate any of the provisions of subdivisions (1) and (2) of Wash. Rev. Code § 49.51.050 shall be liable in a civil action by the aggrieved employee to a judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum of attorney's fees.

**OPINION BY:** [*1] McNICHOLS

**OPINION**

McNICHOLS, D.J.: This case is before the Court on the following motions: (1) plaintiffs' motion for order compelling answers to interrogatories; (2) plaintiffs' motion for leave to notify employees; (3) plaintiffs' motion for class certification; and (4) defendant's motion to dismiss.

The Court raised an additional issue at the hearing on these motions; namely, whether the holding in Brennan v. Veterans Cleaning Service 482 F.2d 1362 (5th Cir. 1973), should be applied to dispose of the merits of plaintiffs' FLSA claim in the instant case. The parties have thoroughly briefed this question, and it will be decided in this Memorandum and Order.

Motions to Compel Answers and Notify Employees

The first two motions listed above must be considered together. Plaintiffs' reason for seeking the answers to interrogatories is to obtain names and addresses of Green Giant employees whom plaintiffs seek to notify of the pending action. Defendant objects to any judicial intervention related to notification of class members in an action brought under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b).

Page 2

  

1981 U.S. Dist. LEXIS 15325, *1; 92 Lab. Cas. (CCH) P34,068;
25 Wage & Hour Cas. (BNA) 89

It is well-settled that [HN1]the FLSA provision for class actions operates [*2] independently of Fed.R.Civ.P. 23. The FLSA requires potential class members to "opt in" rather than "opt out," and only those who file a written consent become parties to the suit. Those who do not opt in are not prejudiced from bringing subsequent suits individually. Kinney Shoe Corp. v. Vorhes , 567 F.2d 859, 862 (9th Cir. 1977). In responding to plaintiffs' motion regarding notification of potential class members, defendant relies primarily on Kinney , which I believe is controlling authority in the instant case. Under facts very close to those here, the court in Kinney vacated a district court discovery order to produce an employee list to the extent the list was requested for notification purposes, holding that a district court is without power to aid a plaintiff in notifying potential FLSA class members. Accord Joyce v. Sandia Laboratories , 22 FEP Cases 1727 (N.D. Cal. May 31, 1980).

I do not believe that the reasoning adopted by plaintiffs from the holding in Riojas v. Seal Produce, Inc ., 82 F.R.D. 613 (S.E. Tex. 1979), can be harmonized with Kinney . Nor do I find In re Primus 436 U.S. 412 (1978), to be controlling. As noted by the court in Joyce v. Sandia Laboratories, [*3] supra , at 1728, In re Primus does not overrule Kinney . Rather, In re Primus addressed the propriety of a legal aid attorney soliciting clients.

Plaintiffs also contend that considerations of fairness and judicial economy require that notice be given to potential FLSA claimants where allegations of both a Rule 23 class and a § 216(b) class create the possibility of collateral estoppel. I need not address this issue in light of my holding on plaintiff's motion for Rule 23 class certification.

Because the decision in In re Primus may arguably afford plaintiffs in the present case a legal basis on which to proceed in soliciting additional parties if they so choose, the Court will not prohibit further notification of Green Giant employees by plaintiffs. The Court will, however, avoid giving any aid in notification efforts, including the request for production of an employee list. Plaintiffs' motion in that respect is therefore DENIED.

Merits of Plaintiff's FLSA Claims

The Fifth Circuit in Brennan v. Veterans Cleaning Service , 482 F.2d 1362 (5th Cir. 1973), held that [HN2]employer deductions from an employee's pay to recoup advances made by the employer did not violate FLSA [*4] minimum wage provisions if the advances were made "free and clear." The issue presented, then, is whether the travel advances and food coupons issued by Green Giant in the case at bar are "free and clear." After reading the memoranda submitted on this point and the pertinent case authority, I have concluded that neither the food coupons nor the travel allowances offered by Green Giant represent "free and clear" advances within the context of 29 C.F.R. § 531.35 and Brennan . Plaintiffs are therefore permitted to go forward with their first cause of action based on the FLSA.

Motions to Dismiss Third, Fourth, and Fifth Cause of Action

In arguing their respective positions on defendant's motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), both parties have relied upon and filed various exhibits and affidavits. These documents are relevant to the disposition of defendant's motions. Under these circumstances Fed.R.Civ. P. 12 provides that the Court may treat the motions as ones for summary judgment and dispose of them as provided in Fed.R.Civ.P. 56. The parties have had sufficient opportunity to present material pertinent to a summary judgment determination, as required by Fed.R.Civ.P. [*5] 12. Neither party, in my judgment, would be prejudiced by treating defendant's motions to dismiss as motions for summary judgment. See Dayco Corp v. Goodyear Tire and Rubber Co ., 523 F.2d 389 (6th Cir. 1975). Therefore, I shall treat the motions as motions for summary judgment and consider the affidavits and exhibits filed in support thereof. I will, however, allow either party, by way of a motion for reconsideration, to supplement the record with materials relevant to my decision herein. Such a motion shall be filed within ten (10) days of the receipt of this opinion.

Dealing first with the fifth cause of action in the complaint, I conclude that as a matter of law defendants have not breached the employment agreement in the manner alleged by the complaint. Plaintiffs' allegations in the complaint concerning the contracts state:

6.5. Plaintiffs and other class members entered into written contracts of employment prior to the seasons at issue obligating the defendant to keep accurate records of hours worked, pay at least the applicable minimum wage, and comply with other state and federal laws covering wages.

Page 3





1981 U.S. Dist. LEXIS 15325, *5; 92 Lab. Cas. (CCH) P34,068;
25 Wage & Hour Cas. (BNA) 89

7.5. Fifth Cause of Action

Defendant has unlawfully breached [*6] its contract of terms and conditions of employment with plaintiffs and their class.

As part of plaintiff's class action allegation, the complaint further states:

The basic questions of law and fact common to the class are... (c) Whether the defendant has violated the contractual rights of class members with respect to payroll deductions and record-keeping.

These breach of contract allegations in the complaint are aimed solely at the payroll practices of Green Giant set forth in Section VI of the complaint titled "STATEMENT OF FACTS;" namely, the deduction of travel and food coupon advances from employees' paychecks and the alleged failure to make, keep, and preserve accurate records of employees' wages and hours. A ereview of the employment contracts contained in Counsel's Joint Submission of Clearance Orders and Form Employment Contracts, filed with the Court, reveals that in each of the years in question the contract states an hourly wage rate, equal to or above the minimum wage required by the FLSA. The contract further provides that Green Giant may make deductions from an employee's paycheck to recover "personal advances" by the company. There is, however, no language [*7] in the contract that guarantees the employees a certain minimum wage after the advances are deducted from their checks. Given these undisputed facts as evidenced by the contracts, I find as a matter of law that there can be no breach of contract claim premised solely on a failure to pay the hourly wage rate provided for by the contracts.

The third and fourth causes of action arguably state claims upon which relief could be granted. However, if it is determined that the success of either cause of action is wholly dependent upon the showing of a FLSA violation, it must be dismissed. In Lerwill v. Inflight Motion Pictures, Inc., 343 F.Supp. 1027 (N.D. Cal. 1972), the court in a well-reasoned opinion explained why a remedy other than the FLSA should not be allowed as a means of enforcing a FLSA minimum wage violation.

It is true that nowhere in the statute is it provided that § 216(b) provides the sole means of recovery for an employee. A brief review of some of the legislative history of the Act, as amended has not revealed an express statement of such intention. On its face, however, a clearer case of implied intent to exclude other alternative remedies by the provision of [*8] one would be difficult to conceive....

On the other hand, a careful examination of the other provisions of the FLSA, as amended, does disclose an Congressional intent that the right of action so provided was to be the sole means by which employees could enforce the rights created by § 207. The restriction on class recoveries found in § 216(b), the statute of limitations in § 255, and the restriction on liquidated damages awards in § 260; all part of the "Portal to Portal Pay Act of 1947", 61 Stat. 84, are examples of the refining process to which Congress has subjected the § 216(b) remedy.... In so doing Congress created a remedy conditioned with both advantages and disadvantages to the claimant. It would be difficult indeed to find any purpose in that careful process if alternative remedies, varying with variations of state law were also to be available in any case in which the alternative seemed more advantageous to the plaintiff-employee seeking to enforce his § 207 rights.

The only conclusion possible, then, is that [HN3]the statutory remedy is the sole remedy available to the employee for enforcement of whatever rights he may have under the FLSA....

Id., at 1028-29; [*9] accord Carter v. Marshall, 457 F. Supp. 38 (D. Col. 1978); Platt v. Burroughs Corp., 242 F. Supp. 1329 (E.D. Penn. 1976).

The advantage to plaintiffs in maintaining either the Wagner-Peyser claim or the claim under R.C.W. 49.52.070 is obvious: those claims can serve as bases for certifying a Fed.R.Civ.P. 23 class, thereby circumventing the disadvantageous "optin" procedure for class actions under the FLSA. Moreover, the Washington statute provides for a broader remedy in the form of double damages and attorney's fees. If such a result were permitted, the statutory requirements of the FLSA would effectively be gutted.

For the reasons stated below, I have concluded that the third and fourth causes of action are both premised solely on violations of the FLSA, and thus their inclusion in the complaint as alternative remedies for enforcing the FLSA runs afoul of the intent of Congress in enacting the FLSA.





1981 U.S. Dist. LEXIS 15325, *9; 92 Lab. Cas. (CCH) P34,068;
25 Wage & Hour Cas. (BNA) 89

The third cause of action is based on the Wagner-Peyser Act, 29 U.S.C. § 49 et seq . That act, originally enacted in 1933, created a cooperative federal-state employment service with a primary purpose of connecting unemployed workers with jobs. Frederick County Fruit Growers [*10] Association v. Marshall , 436 F. Supp. 218 (W.D. Va. 1977). Recruitment of workers through an interstate clearance system is accomplished by the employer filling out a "job order." Federal regulations set forth certain requirements for an acceptable job order. The job order form signed by the employer discloses all the material terms and conditions of employment. Before the order is approved, it must be determined that regulatory standards relating to discrimination, housing, minimum wages, and other working conditions have been met.

[HN4]The Wagner-Peyser Act as enacted did not provide civil remedies for violations of the Act. The courts have in recent years, however, created an implied cause of action. E.g., Gomez v. Florida State Employment Service , [62 LC P9395] 417 F.Supp. 569 (5th Cir. 1969). While such a remedy is available, I do not believe that an implied cause of action is warranted under the facts of this controversy. In the reported decisions where courts have implied a civil remedy, the complaints have alleged Wagner-Peyser Act violations of far greater magnitude than wage deduction infractions. Gomez v. Florida State Employment Service , 417 F.2d 569 (5th Cir. 1969) [*11] (housing lacked plumbing, electricity, heat, drinking water, or refuse disposal); Vasquez v. Ferre , 404 F. Supp. 815 (D.N.J. 1957) (workers found no work as promised and were forced into peonage); Galindo v. Del Monte Corp ., 382 F. Supp. 464 (N.D. Ill. 1974) (same facts as in Vasquez, id .).

Moreover, in Gomez , the court stated its reasoning for implying a remedy as follows:

What better way will there be to eliminate the problem of poor workers responding to "Clearance Orders", journeying hundreds of miles across the country to accept work and the advantage of the benefits promised by the laws of the United States only to find that the promise is a fraud? Absent an implied remedy, the workers have no protection .

417 F.2d at 576. (Emphasis added). Such is not the case here; plaintiffs can obtain redress under the FLSA. I believe the instant case is analogous to 27 Puerto Rican

Migrant farm Workers v. Shade Tobacco Growers Agricultural Association, Inc ., 352 F. Supp 986, 991 (D. Conn. 1973), where the court distinguished Gomez .

The two most significant differences between Gomez and the present case are that the plaintiffs in Gomez had no other remedy available to [*12] them, as has been suggested in Chavez v. Freshpict Foods , 456 F.2d 890 (10th Cir. 1972), cert. denied , 409 U.S. 1042, 93 S. Ct. 535, 34 L.Ed.2d 492 (1972); and in Gomez , the conditions to which the plaintiffs were subjected clearly existed in violation of specific federal regulations.

Even if a remedy under Wagner-Peyser was implied, the only basis for such an action is a FLSA violation. The only specific federal regulations enacted under the Wagner-Peyser Act which involve wages are codified in the Code of Federal Regulations. These regulations were amended during the time period relevant to the instant litigation. Prior to November, 1976, the requirements appeared at 20 C.F.R. § 602.9. The only reference to wages in that regulation provided that no job order would be placed unless

(c) The State agency has ascertained that wages offered are not less than the wages prevailing in the area of employment among similarly employed domestic agricultural workers recruited within the State and not less than those prevailing in the area of employment among similarly employed domestic agricultural workers recruited outside the State.

Section 602.9 was replaced by [HN5]20 C.F.R. § [*13] 653.108, which makes the following references to wages:

(c) No local office shall place a job order for agricultural workers into intrastate clearance unless...

(2) The employer has signed the statement required by paragraph (c)(3) of this section that the job offer states all the material terms and conditions of employment... [and]

(4) The wages and working conditions offered are not less than the prevailing wages and working conditions among similarly employed agricultural workers in the area of intended employment or the applicable Federal or State minimum wage , whichever is higher. If a base rate and a bonus is offered, the base rate must not be less than the prevailing wage rate or applicable Federal or State





1981 U.S. Dist. LEXIS 15325, *13; 92 Lab. Cas. (CCH) P34,068;
25 Wage & Hour Cas. (BNA) 89

minimum wage, whichever is higher. (Emphasis added)

Plaintiffs have not alleged that the wages paid by defendant are less than the prevailing rate in the geographic area of employment as required by the regulations. The only possible violation of the Wagner-Peyser regulations, therefore, is the payment of less than minimum wage under the FLSA as proscribed by the regulations.

Plaintiffs have cited cases where violations of the Wagner-Peyser Act were premised [*14] on misrepresentations in the clearance order or breaches of employment contracts accomplished through the interstate clearance system. (See Plaintiffs' Memorandum in Response to Defendant's Motion to Dismiss at p. 5, note 5). As discussed above, there has been no breach of the employment contracts by Green Giant with respect to wages. In reviewing the clearance orders contained in Counsel's Joint Submission of Clearance Orders and Form Employment Contracts for each of the relevant years, I find in every order a disclosure to the reader that deductions will be made from the employees' wages for travel and subsistance advances.

I therefore conclude not only that the implication of a civil remedy under Wagner-Peyser is inappropriate in this case, but also that plaintiffs have not stated an independent cause of action under Wagner-Peyser. Because the Wagner-Peyser cause of action is dependent upon the claims under the FLSA, judgment is granted to defendant on plaintiffs' third cause of action.

The fourth cause of action specifically alleges a violation of R.C.W. 49.52.050 and.070. [HN6]Subsection.050 provides in part:

Any employer... who... (2) shall pay any employee a lower wage [*15] than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract...

Shall be guilty of a misdemeanor.

Subsection.070 further states:

Any employer... who shall violate any of the

provisions of subdivisions (1) and (2) of R.C.W. 49.51.050 shall be liable in a civil action by the aggrieved employee... to a judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum of attorney's fees....

Because I have determined that there has been no breach of the employment contract by the employer with respect to wage rates, the only basis for a claim under the Washington statute is dependent upon a violation of the FLSA. As previously stated, the procedural aspects of the FLSA would be emasculated if I allowed a separate cause of action to proceed based on the state statute.

Plaintiffs' Motion for Rule 23 Class Certification

Because I am dismissing plaintiffs third, fourth, and fifth causes of action, no basis remains for a Rule 23 class action and the issue of class certification is therefore moot.

Summary

For the reasons stated in this Memorandum [*16] and Order, It Is Ordered that:

(1) plaintiffs' Motion for Notice to Similarly Situated Employees is Denied;

(2) plaintiffs' Motion to Enforce Magistrate Suko's Order Compelling Answers to Interrogatories is Denied:

(3) plaintiffs' Motion for Class Certification is Denied;

(4) defendant's Motion for an Order granting judgment on plaintiffs' third, fourth, and fifth causes of action is Granted; and

(5) the statute of limitations for the FLSA class members, as set forth at 29 U.S.C. § 255, shall be deemed tolled for the time period during which the plaintiffs' motions with respect to discovery of the identity of class members have been under advisement by the Court, to-wit: January 8, 1979 to the date of this Order.





**EXHIBIT 10**

LEXSEE

**BO VIN TRAN, on behalf of himself and others similarly situated, Plaintiffs, v. LE FRENCH BAKER, INC., and HERVE FORESTIER, Defendants.**

**No. C-94-0482 VRW**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**1995 U.S. Dist. LEXIS 8371**

**June 14, 1995, FILED**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employee filed an action against defendant employers seeking overtime compensation, liquidated damages, and attorney fees under the Fair Labor Standards Act (FLSA), 29 U.S.C.S. § 201 et seq. The employers filed a motion for summary judgment and a motion for sanctions under Fed. R. Civ. P. 11.

**OVERVIEW:** The employee brought an action after he was not paid overtime at his job as a delivery truck driver. The California Labor Commissioner entered judgment in favor of the employee and the employers sought administrative review. While the employers' review was pending, the employee filed a federal action under the FLSA. The court granted the employers' motion for summary judgment, but denied their motion for sanctions. The court found that the employee's action was barred by claim preclusion. The court determined that a federal court was required to give state court judgments the same preclusive effect that they would receive in the state in which they were rendered, pursuant to 28 U.S.C.S. § 1738. State administrative proceedings were entitled to preclusive effect if the administrative agency acted in a judicial capacity, if the agency resolved the disputed issues of material fact properly before it, and if the parties had an adequate opportunity to litigate. The court noted that all of these requirements were met in the employee's case. Finally, the court determined that sanctions against the employee were not appropriate where the adverse authority was from another circuit.

**OUTCOME:** The court granted the employers' motion for summary judgment in the employee's action under FLSA. The court denied the employers' motion for sanctions against the employee.

**CORE TERMS:** administrative proceedings, municipal, preclusive effect, federal claim, opportunity to litigate, res judicata, termination, overtime compensation, collateral estoppel, summary judgment, primary right, preclusion, unreviewed, litigate, lawsuit, waiting, unpaid, liquidated damages, administrative determinations, administrative hearings, civil service commission, writ of mandate, judicial review, jurisdiction to hear, forms of relief, overtime, situated, privity, existing law, overtime wages

**LexisNexis(R) Headnotes**

*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Full Faith & Credit > Full Faith & Credit Statute*
*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata*
[HN1]The doctrine of claim preclusion treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same claim or cause of action. The effect of a judgment extends to the litigation of all issues relevant to same claim between the same parties whether or not raised at trial. Federal courts must give preclusive effect to state court reviewed administrative determinations under 28 U.S.C.S. § 1738.

  

1995 U.S. Dist. LEXIS 8371, *
12 Wage & Hour Cas. 2d (BNA) 236

Section 1738 requires a federal court to give the same preclusive effect to state court judgments as they would be given in the state in which they were rendered.

*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata*
*Civil Procedure > Remedies > Writs > Common Law Writs > Mandamus*
*Governments > Local Governments > Employees & Officials*
[HN2]State administrative proceedings, even if unreviewed, preclude subsequent claims arising out of the same facts that gave rise to the administrative action, provided that the proceeding satisfies the requirements of fairness. The fairness requirements are that: (1) the administrative agency act in a judicial capacity, (2) the agency resolve disputed issues of material fact properly before it, and (3) the parties have an adequate opportunity to litigate.

*Administrative Law > Agency Adjudication > Decisions > Collateral Estoppel*
*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Estoppel > Collateral Estoppel*
*Governments > Local Governments > Police Power*
[HN3]California courts must accord collateral estoppel effect to municipal administrative hearings that have sufficient judicial safeguards, and that federal courts must give preclusive effect to state-court reviewed administrative decisions under 28 U.S.C.S. § 1738.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > Concurrent Jurisdiction*
*Labor & Employment Law > Wage & Hour Laws > Administrative Proceedings & Remedies > General Overview*
[HN4]State and federal courts have concurrent jurisdiction to hear Fair Labor Standards Act claims. 29 U.S.C.S. § 216.

*Administrative Law > Judicial Review > General Overview*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
*Governments > Courts > Justice Courts*
[HN5]Under Cal. Lab. Code § 98.2(a), appeals from the California Labor Commissioner's decision are heard de novo. The state court proceedings constitute a new trial and the parties may introduce any relevant evidence not presented at the administrative hearing.

*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata*
[HN6]When an administrative proceeding, whether or not appealed, is conducted so that the parties have a full opportunity to litigate, the final adjudicated outcome of that proceeding is entitled to preclusive effect in a subsequent proceeding.

*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata*
[HN7]California courts determine the res judicata effect of prior litigation by a "primary right" test. Prior litigation will bar subsequent litigation when the subsequent litigation concerns a primary right already litigated, even under a different legal theory, or entitles the injured party to diverse forms of relief.

*Administrative Law > Agency Adjudication > Decisions > Res Judicata*
*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata*
[HN8]Claim preclusion applies not only to claims between the same parties in the prior action, but also to those in privity with parties to the prior action. California courts ascertain whether one is in privity with a party to the prior litigation by asking whether the non-party is sufficiently close to the original case to afford application of the principle of preclusion.

*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata*
*Labor & Employment Law > Wage & Hour Laws > Administrative Proceedings & Remedies > General Overview*
[HN9]Under the Fair Labor Standards Act an action to recover unpaid wages may be maintained by any employee on behalf of himself and other employees similarly situated. But no employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. 29 U.S.C.S. § 216(b).

  

1995 U.S. Dist. LEXIS 8371, *
12 Wage & Hour Cas. 2d (BNA) 236

*Civil Procedure > Sanctions > Baseless Filings > General Overview*

[HN10]Fed. R. Civ. P. 11(c)(1)(A) requires that a motion for sanctions shall be made separately from other motions or requests.

*Civil Procedure > Counsel > General Overview*
*Civil Procedure > Sanctions > Baseless Filings > General Overview*

[HN11]Fed. R. Civ. P. 11 equates the signature of an attorney or party on a document submitted to the court as an attestation that the document is well grounded in fact, warranted by existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Courts must apply an objective test in assessing whether Rule 11 has been violated. Rule 11 is violated if no plausible, good faith argument can be made by a competent attorney to the contrary.

*Civil Procedure > Sanctions > Baseless Filings > General Overview*
*Governments > Courts > Judicial Precedents*

[HN12]The court may also impose Fed. R. Civ. P. 11 sanctions if plaintiff's claim is not warranted by existing law. Claims directly contrary to controlling precedents may violate Rule 11. Frivolousness is measured under the law of the local circuit. Thus, adverse authority from another circuit, even if directly in point, would not necessarily render an argument frivolous. Rule 11 sanctions cannot be imposed simply for failure to cite adverse authority.

**COUNSEL:** [*1] For BO VINH TRAN, Plaintiff: William Flynn, Neyhart Anderson Reilly & Freitas, San Francisco, CA.

For LE FRENCH BAKER, INC, HERVE FORESTIER, defendants: R. Brian Dixon, Littler Mendelson Fastiff Tichy, San Francisco, CA.

**JUDGES:** VAUGHN R. WALKER, United States District Judge

**OPINION BY:** VAUGHN R. WALKER

**OPINION**

**ORDER.**

Defendant Le French Baker, Inc. ("Le French"), employed plaintiff from October 26, 1989, until January 7, 1993, as a delivery driver. This action arises from Le French's alleged failure to pay plaintiff overtime wages for overtime work. On February 9, 1994, plaintiff filed this suit on behalf of himself and others similarly situated seeking overtime compensation, liquidated damages and attorney fees under the Fair Labor Standards Act ("FLSA"), 29 USC § 201, et seq. The complaint also names defendant Herve Forestier ("Forestier"), owner of Le French, individually.

Prior to this lawsuit, plaintiff sought relief from the California Labor Commissioner ("the Commissioner") and on December 6, 1993, obtained an order and award in the amount of $ 17,165.73 against Le French for all earned and unpaid wages and interest under California Labor Code § 98.1(c). The Commissioner determined that there was insufficient evidence of a willful violation of Labor Code § 201 to entitle plaintiff to "waiting time" penalties under Labor Code § 203.

Pursuant to California Labor Code § 98.2(a), on December 21, 1993, [*2] Le French appealed the Commissioner's decision to San Francisco Municipal Court (Case No. 099457). While the appeal was pending, plaintiff filed his federal claim in this court.

On April 25, 1994, plaintiff received a judgment for $ 14,644.22 for unpaid overtime wages, $ 3,987.11 for interest and reasonable attorneys' fees and costs against Le French in municipal court. The court found that plaintiff was not entitled to waiting time penalties. Le French has not taken an appeal.

Following entry of the municipal court judgment, Le French and Forestier (collectively, "defendants") amended their answer to assert res judicata and collateral estoppel as affirmative defenses to plaintiff's claim (Defs' Amended Ans at 5-6). Defendants also sent a letter to plaintiff dated May 20, 1994, informing plaintiff of the preclusive effect of the municipal court decision and asked plaintiff to dismiss his federal claim. Defs' Mot for SJ, Exh D.

Now before the court is defendants' motion for summary judgment and sanctions under FRCP 11. Defendants claim that: (1) the municipal court proceeding bars plaintiff's federal claim by the doctrines of res





1995 U.S. Dist. LEXIS 8371, *2
12 Wage & Hour Cas. 2d (BNA) 236

judicata and/or collateral estoppel; (2) because the [*3] only named plaintiff is barred by res judicata and/or collateral estoppel this action must be dismissed in its entirety; and (3) the imposition of sanctions against plaintiff and plaintiff's counsel is mandated by FRCP 11.

I

[HN1]The doctrine of claim preclusion "'treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same "claim" or "cause of action." * * * The effect of a judgment extends to the litigation of all issues relevant to same claim between the same parties whether or not raised at trial.'" *Haphey v. Linn County*, 924 F.2d 1512, 1515 (9th Cir. 1991) (quoting *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach. Inc.*, 575 F.2d 530, 535-36 (5th Cir. 1978)). Federal courts must give preclusive effect to state court reviewed administrative determinations under 28 USC § 1738. *Eilrich v. Remas*, 839 F.2d 630, 632 (9th Cir. 1988). Title 28 USC § 1738 requires a federal court to give the "'same preclusive effect to state court judgments as they would be given in the state in which they were rendered.'" *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032 (9th Cir. 1994) (quoting *Marrese v. American Academy of Orthopaedic* [*4] *Surgeons*, 470 U.S. 373, 380, 84 L. Ed. 2d 274, 105 S. Ct. 1327 (1985)).

In *Miller,* the Ninth Circuit held that [HN2]state administrative proceedings, even if unreviewed, preclude subsequent claims arising out of the same facts that gave rise to the administrative action, provided that the proceeding satisfies the requirements of fairness [1] outlined by the Supreme Court in *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 16 L. Ed. 2d 642, 86 S. Ct. 1545 (1966). *Miller,* 39 F.3d at 1033. Miller was a Santa Cruz employee who had been fired for disciplinary reasons. He appealed his termination to the county civil service commission. After Miller's civil service commission appeal was denied, he could have petitioned for a writ of mandate in California state court under CCP § 1094.5, but he failed to do so. Instead, he filed a § 1983 claim for violations of procedural and substantive due process in federal court.

[1] The fairness requirements of *Utah Construction* are that: (1) the administrative agency act in a judicial capacity, (2) the agency resolve disputed issues of material fact properly before it, and (3) the parties have an adequate opportunity to litigate. *Utah Construction,* 384

U.S. at 422.

[*5] The Ninth Circuit held that Miller's state administrative proceedings barred Miller's § 1983 claims. Miller elected to seek relief through the state's adjudicatory procedures, and he could have pursued his claims in state court via a writ of mandate under CCP § 1094.5. In the writ of mandate proceeding, Miller could also have raised his constitutional claims (he had not raised them in the earlier proceedings before the civil service commission). Following California cases that give preclusive effect to unreviewed administrative proceedings, the Ninth Circuit concluded that Miller could not continue to litigate issues related to his termination by recasting them in constitutional terms.

In *Eilrich,* the Ninth Circuit held that [HN3]California courts must accord collateral estoppel effect to municipal administrative hearings that have sufficient judicial safeguards, and that federal courts must give preclusive effect to state-court reviewed administrative decisions under § 1738. *Eilrich,* 839 F.2d at 632. Eilrich was a police officer discharged by the City of Riverbank for making statements about a controversy within the police department to the city council. Eilrich appealed [*6] his termination pursuant to California Government Code § 3304(b). The city conducted a municipal administrative hearing in which Eilrich's First Amendment claims were raised and resolved. The city upheld Eilrich's termination and informed him that judicial review of the decision by a California superior court was available. Eilrich failed to appeal the decision within the statutory period.

The Ninth Circuit held that collateral estoppel prevented the officer from asserting a § 1983 claim against the city in a subsequent suit because the same issues were resolved in a prior unreviewed administrative determination and the administrative proceeding provided the parties with an adequate opportunity to litigate. The Ninth Circuit further held that where administrative proceedings are in fact reviewed by a state court, under § 1738 such proceedings are entitled to preclusive effect in a subsequent proceeding.

Under *Miller* and *Eilrich,* plaintiff's federal claim is barred by the state administrative determination. Plaintiff chose to obtain relief for unpaid overtime compensation earned during the period he was employed by defendant through the Commissioner. Alternatively, plaintiff [*7] could have initially filed suit in either state or federal





LexisNexis    LexisNexis    LexisNexis

1995 U.S. Dist. LEXIS 8371, *7
12 Wage & Hour Cas. 2d (BNA) 236

court under 29 USC § 201. [HN4]State and federal courts have concurrent jurisdiction to hear FLSA claims. 29 USC § 216. Instead, plaintiff opted to pursue a remedy through the state's administrative proceedings. Plaintiff's contention that the Commissioner did not have jurisdiction to hear the FLSA claim (Pl's opp at 5) is correct; however, plaintiff had full opportunity to litigate the very same issues which constitute his FLSA claim before the Commissioner and the municipal court had jurisdiction to hear the FLSA claim. Just as the Ninth Circuit concluded that Miller could not attempt to relitigate issues related to his termination by recasting them in constitutional terms, plaintiff cannot continue to litigate issues related to defendants' failure to compensate plaintiff for overtime by recharacterizing defendants' actions as a violation of FLSA. Though procedurally plaintiff's claim differs from those asserted in *Miller* and *Eilrich,* these cases mandate that the findings of the Commissioner are entitled to preclusive effect under § 1738.

Of particular concern to the Ninth Circuit in both *Miller* and *Eilrich* [*8] was the injured party's ability to obtain judicial review of the administrative decision to ensure that the parties had an adequate opportunity to litigate their claims. In the present case, plaintiff clearly had the opportunity to obtain judicial review of the Commissioner's decision under California Labor Code § 98.2(a). [HN5]Under that section, appeals from the Commissioner's decision are heard de novo. The state court proceedings constitute a new trial and the parties may introduce any relevant evidence not presented at the administrative hearing. *Hernandez v. Mendoza,* 199 Cal. App. 3d 721, 725, 245 Cal. Rptr. 36, 38 (1988). Plaintiff's contention that the municipal court's authority is limited to those matters properly before the Labor Commissioner is incorrect. Pl's Opp at 6. *Hernandez* makes clear that the appeal is in effect a new trial in which the parties are free to introduce new evidence and that the scope of the trial may extend beyond the issues presented before the Commissioner. Plaintiff was thus not barred from litigating any issues which he now seeks to litigate in federal court. That Le French rather than plaintiff chose to exercise the option to appeal thus appears [*9] immaterial. The Commissioner's decision was reviewed de novo by a state court. The parties thus had an adequate opportunity to litigate plaintiff's claim. Taken together, *Miller* and *Eilrich* hold that [HN6]when an administrative proceeding, whether or not appealed, is conducted so that the parties have a full opportunity to litigate, the final adjudicated outcome of that proceeding is entitled to preclusive effect in a subsequent proceeding.

Plaintiff's federal claim clearly arises from the same set of facts giving rise to his initial claim and amounts to an attempt to relitigate issues already determined. [HN7]California courts determine the res judicata effect of prior litigation by a "primary right" test. Prior litigation will bar subsequent litigation when the subsequent litigation concerns a primary right already litigated, even under a different legal theory, *Miller,* 39 F.3d at 1034; *Takahashi v. Board of Educ.,* 202 Cal. App. 3d 1464, 1474, 249 Cal. Rptr. 578, 584 (1988), *cert. denied,* 490 U.S. 1011 (1989), or entitles the injured party to diverse forms of relief. *Boccardo v. Safeway Stores, Inc.,* 134 Cal. App. 3d 1037, 1043, 184 Cal. Rptr. 903, 907 (1982). Plaintiff's [*10] "primary right" in this litigation is the right to overtime compensation, for which the Commissioner provided relief and the municipal court affirmed. Plaintiff's subsequent federal claim does not differ from his claim before the Commissioner in any significant fashion, except to the extent that liquidated damages are available under 29 USC § 201. *Boccardo* holds that a plaintiff cannot split a cause of action by relitigating the same set of facts for a different form of relief. *Boccardo,* 134 Cal. App. 3d at 1043, 184 Cal. Rptr. at 907. Plaintiff sought compensation for overtime in addition to "waiting time" penalties under California Labor Code § 203 in the administrative proceedings and now seeks compensation in addition to liquidated damages under 29 USC § 216(b) in the present lawsuit. "Waiting time" penalties and liquidated damages are merely different forms of relief for the very same violation of plaintiff's "primary right" to overtime compensation.

Plaintiff's contention that his claim is maintainable against Forestier individually because he was not a party to the administrative proceeding is without merit. [HN8]Claim preclusion applies not only to claims between the [*11] same parties in the prior action, but also to those in privity with parties to the prior action. California courts ascertain whether one is in privity with a party to the prior litigation by asking "whether the non-party is sufficiently close to the original case to afford application of the principle of preclusion." *People v. Drinkhouse,* 4 Cal. App. 3d 931, 936, 84 Cal. Rptr. 773, 776 (1970); See also *Lynch v. Glass,* 44 Cal. App. 3d 943, 119 Cal. Rptr. 139 (1975). It is beyond doubt that Forestier is sufficiently close to the original case.



1995 U.S. Dist. LEXIS 8371, *11
12 Wage & Hour Cas. 2d (BNA) 236

Forestier is the president and sole shareholder of Le French. Defs' Mot for SJ at 10. He appeared before the Labor Commissioner on behalf of Le French to litigate plaintiff's claim. Sum of Hearing by Com at 1. Forestier is therefore clearly in privity with Le French.

Because the court finds that plaintiff's FLSA claim is barred by the res judicata effect of the prior state reviewed administrative proceedings, defendants' motion for summary judgment is **GRANTED**.

II

[HN9]Under FLSA an action to recover unpaid wages may be maintained by any employee on behalf of himself and other employees similarly situated. But "no employee shall be a [*12] party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 USC § 216(b). As defendants correctly indicate, plaintiff is the only named plaintiff in this lawsuit. As of this date no others who are "similarly situated" to plaintiff have opted in. Because plaintiff is barred by claim preclusion from maintaining this action and there remain no proper plaintiffs this action must be dismissed in its entirety.

III

Defendants seek sanctions under FRCP 11. [HN10]Rule 11(c)(1)(A) requires that a motion for sanctions shall be made separately from other motions or requests. Defendants' motion for sanctions was included within their motion for summary judgment. Nevertheless the court will address whether the imposition of sanctions would be warranted upon proper motion.

[HN11]Rule 11 equates the signature of an attorney or party on a document submitted to the court as an attestation that the document is "well grounded in fact * * * warranted by existing law * * * and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the [*13] cost of litigation." FRCP 11. Courts must apply an objective test in assessing whether the Rule has been violated. Rule 11 is violated if no "plausible, good faith argument can be made by a competent attorney to the contrary." _Zaldivar v. City of Los Angeles, 780 F.2d 823, 829-32 (9th Cir. 1986), abrogated on other grounds, 496 U.S. 384 (1990)._

Plaintiff contends that he has made several unsuccessful attempts to collect his judgment from Le French and that he seeks to collect such compensation through a judgment based upon FLSA. Though plaintiff's proper course of action is an action on the judgment rather than a second lawsuit, there is no evidence that the facts pleaded were false or that plaintiff filed this action for an improper purpose.

[HN12]The court may also impose Rule 11 sanctions if plaintiff's claim is not warranted by existing law. Claims directly contrary to controlling precedents may violate Rule 11. The Ninth Circuit has held that "frivolousness is measured under the law of the local circuit. Thus, adverse authority from another circuit, even if directly in point, would not necessarily render an argument frivolous." _United States v. Stringfellow, 911 F.2d 225_ [*14] _(9th Cir. 1990)._ Defendants' contention that sanctions are warranted because of plaintiff's failure to acknowledge contrary authority from other circuits is therefore incorrect. The Ninth Circuit has also held that Rule 11 sanctions cannot be imposed simply for failure to cite adverse authority. _Golden Eagle Distributing Corp. v. Burroughs Corp., 801 F.2d 1531, 1542 (9th Cir. 1986)._ Thus, plaintiff's failure to acknowledge _Miller_ and _Eilrich_, particularly because _Miller_ was decided after plaintiff filed his complaint, cannot alone form the basis for sanctions.

The fact that plaintiff's federal claim was filed before the municipal court entered judgment also cuts in plaintiff's favor. _Miller_ and _Eilrich_ do not stand for the proposition that all unreviewed administrative proceedings are entitled to preclusive effect. Plaintiff could rationally have believed that the Commissioner was not acting within a judicial capacity and that the administrative proceedings would not be entitled to preclusive effect.

Defendants' motion for sanctions is **DENIED**.

IT IS SO ORDERED.

VAUGHN R. WALKER

United States District Judge

JUDGMENT IN A CIVIL CASE

**Decision** [*15] **by Court.** This action came to trial or hearing before the Court. The issues have been tried or





1995 U.S. Dist. LEXIS 8371, *15
12 Wage & Hour Cas. 2d (BNA) 236

heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that in accordance with this court's order of June 14, 1995, defendants' motion for summary judgment is granted, and

defendants' motion for sanctions is denied.

June 14, 1995

Date

  

**EXHIBIT 11**

LEXSEE



Cited
As of: Oct 11, 2007

CHRISTOPHER HOPKINS, Plaintiff, vs. TEXAS MAST CLIMBERS, L.L.C., et
al., Defendants.

CIVIL ACTION No. H-04-1884

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
TEXAS, HOUSTON DIVISION

2005 U.S. Dist. LEXIS 38721; 152 Lab. Cas. (CCH) P35,110

December 14, 2005, Decided
December 14, 2005, Filed

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, a former employee, sued defendants, his employer and others, for violation of the Fair Labor Standards Act (FLSA), 29 U.S.C.S. § 201 et seq., by not paying him overtime. Defendants contended that plaintiff was exempt from overtime requirements pursuant to 29 U.S.C.S. § 213(b)(1), or in the alternative, that overtime was to be calculated on the fluctuating workweek method in 29 C.F.R. § 778.114. The case was tried to the court.

**OVERVIEW:** Only one defendant was an employer for FSLA purposes; neither of the other defendants exercised control over plaintiff's employment. Defendant did not establish that plaintiff was exempt under the motor carrier exemption. His loading activities were a de minimis part of his job and there was no evidence that any truck loaded by plaintiff traveled interstate. Defendant did not keep accurate records, in violation of 29 U.S.C.S. § 211(c), and introduced no evidence to contradict plaintiff's estimate that he worked 65 hours per week. Plaintiff met his burden of showing that the fluctuating workweek method was not applicable. There was no clear mutual understanding that the salary paid to him was intended to compensate him for all the hours he worked

in a workweek. His uncontradicted testimony was that he was to be paid a salary based on a 40 hour workweek. The court assumed 25 hours of overtime for each of 37 weeks, calculated the regular rate of pay and the overtime rate, and entered an award for actual damages. Defendant did not show it acted in good faith when it failed to pay overtime, entitling plaintiff to liquidated damages. Attorney's fees were awarded using a lodestar method.

**OUTCOME:** The court entered judgment for plaintiff for unpaid overtime of $ 15,374.75, for an amount equal to the actual damages for liquidated damages, and for reasonable attorney's fees and costs.

**CORE TERMS:** mast, overtime, salary, truck, workweek, job sites, hourly rate, loading, number of hours, exemption, hours per week, semi-monthly, fluctuating, regular, exempt, pickup truck, conclusions of law, liquidated damages, freight, loaded, multiplied, driver's, burden to prove, motor vehicles, interstate, compensate, payroll, loader', unpaid, times

**LexisNexis(R) Headnotes**

*Labor & Employment Law > Wage & Hour Laws >*





2005 U.S. Dist. LEXIS 38721, *; 152 Lab. Cas. (CCH) P35,110
12 Wage & Hour Cas. 2d (BNA) 236

*Coverage & Definitions > Overtime & Work Period*
[HN1]The Fair Labor Standards Act (FLSA), 29 U.S.C.S. § 201 et seq., provides that employers must pay covered employees extra compensation of at least one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week. 29 U.S.C.S. § 207(a)(1). The reach of the FLSA is broad, but not unlimited.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Employers*
[HN2]See 29 U.S.C.S. § 203(d).

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Employers*
[HN3]An employee may have one or more employers for purposes of the Fair Labor Standards Act, 29 U.S.C.S. § 201 et seq. In determining whether a person or corporation is an "employer" for purposes of the Act, a court should consider the total employment situation, with particular regard to (1) whether the employment takes place on the premises of the company; (2) how much control the person or company exerts over the employee; (3) whether the person or company has the power to fire, hire, or modify the employment terms and conditions; (4) whether the employee performs a "specialty job" within a production line; and (5) whether the employee may refuse to work for the person or company and work for others.

*Labor & Employment Law > Wage & Hour Laws > Administrative Proceedings & Remedies > Burdens of Proof*
*Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > General Overview*
[HN4]Certain employees are exempt from coverage under the Fair Labor Standards Act, 29 U.S.C.S. § 201 et seq. An employer bears the burden to prove that an employee is exempt, and exemptions are to be narrowly construed against the employer.

*Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Transportation Industries*
[HN5]The Secretary of Labor's authority to prescribe qualifications and maximum hours extends only to employees that transport passengers or property in interstate commerce whose activities affect the safety of

operation of vehicles on the highways of the country. 49 U.S.C.S. § 13501.

*Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Transportation Industries*
[HN6]The Department of Transportation has found that the activities of "loaders" directly affect the safety of operation of motor vehicles in interstate commerce. "Loaders" are employees whose sole duties are to load and unload motor vehicles and transfer freight between motor vehicles and between vehicles and the warehouse.

*Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Transportation Industries*
[HN7]The U.S. Supreme Court has held that loaders may be exempt from the Fair Labor Standards Act, 29 U.S.C.S. § 201 et seq., if their activities consist of work defined by Interstate Commerce Commission ruling as that of a "loader," and as affecting the safety of operation of motor vehicles in interstate or foreign commerce.

*Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Transportation Industries*
[HN8]The U.S. Court of Appeals for the Fifth Circuit has characterized Pyramid Motor Freight Corp. v. Ispass as establishing a de minimis rule. An employee is not exempt from the overtime provisions of the Fair Labor Standards Act, 29 U.S.C.S. § 201 et seq., if his work affecting highway safety is only trivial, casual, occasional and insubstantial.

*Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Transportation Industries*
[HN9]See 29 C.F.R. § 782.5(c).

*Labor & Employment Law > Wage & Hour Laws > Administrative Proceedings & Remedies > Burdens of Proof*
*Labor & Employment Law > Wage & Hour Laws > Recordkeeping Requirements*
[HN10]When an employer has failed to maintain accurate payroll records, the employee's initial burden is to make out a prima facie case that the Fair Labor Standards Act, 29 U.S.C.S. § 201 et seq., has been violated and to produce some evidence to show the amount and extent of the violation. This is not a heavy burden. The employee meets his burden if he produces sufficient evidence,

  

2005 U.S. Dist. LEXIS 38721, *; 152 Lab. Cas. (CCH) P35,110
12 Wage & Hour Cas. 2d (BNA) 236

which may consist of his own credible testimony, to show the amount of work by reasonable inference. The evidence may be inexact or approximate. The burden then shifts to the employer to present evidence of the actual hours the employee worked to contradict the employee's evidence.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Regular Rate*

[HN11]The Fair Labor Standards Act, 29 U.S.C.S. § 201 et seq., requires that overtime must be compensated at a rate not less than one and one-half times the "regular rate" at which the employee is actually employed. 29 U.S.C.S. § 207(a); 29 C.F.R. § 778.107. The "regular rate" is the employee's hourly rate as determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid. 29 C.F.R. § 778.109.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Regular Rate*

[HN12]In order to compute overtime pay in a case where the employee is paid on a salary basis rather than an hourly basis, it is necessary to convert the salary to an hourly rate. If the salary is paid weekly, the employee's regular rate of pay is computed by dividing the salary by the number of hours the salary is intended to compensate. 29 C.F.R. § 778.113(a). If the salary is paid semi-monthly, the salary must first be translated into its weekly equivalentby multiplying by 24 and dividing by 52. 29 C.F.R. § 778.113(b). Once the weekly wage is determined, the regular hourly rate is calculated as indicated in § 778.113(a).

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Regular Rate*

[HN13]The key factor in figuring the hourly rate for salaried employees is determining the number of hours the salary is intended to compensate. 29 C.F.R. § 778.113(a).

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Regular Rate*

[HN14]This "fluctuating workweek" method of calculating unpaid overtime, described at 29 C.F.R. §

114(a), is generally advantageous to the employer for two reasons: (a) the regular hourly rate is reduced, because the number of covered hours is greater than 40; and (b) the unpaid overtime premium is only 50% of the regular hourly rate, because all hours (including overtime hours) have already been compensated at the straight time rate.

*Labor & Employment Law > Wage & Hour Laws > Administrative Proceedings & Remedies > Burdens of Proof*

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Regular Rate*

[HN15]Because the fluctuating workweek is neither a defense nor an exemption to the Fair Labor Standards Act, 29 U.S.C.S. § 201 et seq., an employee has the burden of proving that the method does not apply to his case. This is but another way of saying that the employee has the burden to prove his damages by establishing the number of hours his salary was intended to cover. Unless the employee establishes that his salary was supposed to cover some fixed, lesser number of hours, the salary will be presumed to cover all hours actually worked. Of course, the resulting rate must not be less than the statutory minimum wage. 29 C.F.R. §§ 778.113(b), 778.114(a).

*Labor & Employment Law > Wage & Hour Laws > Remedies > Liquidated Damages*

[HN16]A successful plaintiff under the Fair Labor Standards Act, 29 U.S.C.S. § 201 et seq., is entitled to liquidated damages equal to the amount of actual damages. 29 U.S.C.S. § 260. The court has discretion to reduce the amount of liquidated damages only if the employer meets its burden to prove it acted in good faith in deciding how to pay plaintiff. An employer's burden is a substantial one.

*Labor & Employment Law > Wage & Hour Laws > Remedies > Costs & Attorney Fees*

[HN17]A prevailing party entitled to an award of attorney's fees and costs pursuant to 29 U.S.C.S. § 216(b). An award of reasonable attorney's fees is mandatory under the Fair Labor Standards Act, 29 U.S.C.S. § 201 et seq.

*Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Reasonable Fees*

  

2005 U.S. Dist. LEXIS 38721, *; 152 Lab. Cas. (CCH) P35,110
12 Wage & Hour Cas. 2d (BNA) 236

*Labor & Employment Law > Wage & Hour Laws > Remedies > Costs & Attorney Fees*

[HN18]The lodestar method in calculating attorney's fees is calculated by multiplying the reasonable number of hours expended by an appropriate hourly rate. The court then considers whether an increase or decrease from the lodestar is warranted based on the factors listed in Johnson v. Georgia Highway Express, Inc. Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment; (5) the customary fee; (6) the fee being fixed per hour; (7) the time limitations imposed by the client and the circumstances; (8) the amount involved and the likely results obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the attorney's fees awarded in similar cases. The fee award is not limited by a contingent fee agreement.

**COUNSEL:** [*1] For Christopher Hopkins, Plaintiff: Daniel W Jackson, Emmons & Jackson PC, Houston, TX.

For Texas Mast Climbers LLC, Mast Climbers Manufacturing Inc, doing business as American Mast Climbers, American Mast Climbers LLC, William F Mims, Jr, AMS Staff Leasing NA Ltd, Defendants: William H Bruckner, Attorney at Law, Houston TX, Michael Kevin Burke, Bruckner Burch PLLC, Houston, TX.

**JUDGES:** Stephen Wm Smith, United States Magistrate Judge.

**OPINION BY:** Stephen Wm Smith

**OPINION**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This case brought under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., (FLSA) was tried to the court on October 27, 2005. The parties consented to the jurisdiction of this magistrate judge for all purposes, including final judgment.

Hopkins contends that defendants violated the FLSA

by not paying him overtime. Defendants contend that Hopkins is exempt from the overtime requirements of the FLSA pursuant to 29 U.S.C. § 213(b)(1). In the alternative, defendants argue that overtime should be calculated based on the fluctuating workweek calculation method set forth in 29 C.F.R. § 778.114. [1] Based [*2] on the evidence presented at trial and applicable law, the court makes the following findings of fact and conclusions of law. [2]

> 1    At the conclusion of evidence, the court granted the parties leave to file post-trial briefing. The parties were instructed to file simultaneous post-trial briefs on or before November 11, 2005. Plaintiff was directed to include in his brief evidence and argument in support of an award of attorney's fees. Defendants were given until November 18, 2005 to respond to the request for attorney's fees *only*. This limitation was expressly stated in the minute order from the trial (Dkt. 43). Defendants filed an untimely reply brief on November 19, 2005 attacking plaintiff's damages calculation. Because the reply brief disregards the court's instructions, the court will disregard the reply brief, which offers no new argument or authority in any event.
>
>    In addition, defendants' post-trial briefing relies on evidence not admitted at trial, specifically the results of a wage and hour investigation conducted by the Department of Labor. The court does not consider the Department of Labor investigation in reaching its decision.

[*3]

> 2    To the extent any item designated as a finding of fact is actually a conclusion of law, it is adopted as such and vice versa.

**I. FINDINGS OF FACT**

1. Defendant William F. Mims, Jr. is the sole owner of defendant Mast Climbers Manufacturing, Inc. d/b/a American Mast Climbers (collectively "Mast Climbers"). Mims also owns Texas Mast Climber L.L.C., a holding company that owns equipment used by Mast Climbers.

2. Mast Climbers rents and assembles elevating work platforms, scaffolding, mast climbing platforms, hoists, and various construction equipment.






2005 U.S. Dist. LEXIS 38721, *3; 152 Lab. Cas. (CCH) P35,110
12 Wage & Hour Cas. 2d (BNA) 236

3. Defendant AMS Staff Leasing handles payroll functions for Mast Climbers. Although AMS is the name that appears on Hopkins's checks, Hopkins has never talked to anyone with AMS and does not know where the company is located. AMS had no control over Hopkins's work.

4. Hopkins worked for Mast Climbers from April 16, 2003 through June 18, 2003 and again from September 23, 2003 through April 3, 2004, a total of 37 weeks. Hopkins's primary job responsibility was to erect and dismantle scaffolding, hoists, and related equipment. [*4] He worked on various construction projects in Texas and Louisiana.

5. Mast Climbers' scaffolding equipment was kept at its "yard" in Fort Worth for delivery by truck to job sites. Sometimes equipment was trucked from one job site to another without returning to Fort Worth.

6. Mims worked, and during the period at issued lived, out of Mast Climbers' office in Fort Worth. Mims was not on the job sites all the time, and in fact at times did not know where Hopkins was working. He saw Hopkins on average once or twice a month.

7. Hopkins, a Houston resident, was rarely in Fort Worth. For that reason, it was not a usual part of his job to load trucks with scaffolding equipment for delivery to a job site. A daily work report indicates that Hopkins assisted with loading 8 1/2' tie-pipes onto a pickup truck at the Fort Worth facility on March 3, 2004. That truck was driven to a job site in Dallas. That is the only evidence in the record of Hopkins performing loading activities at the Fort Worth equipment yard.

8. Hopkins worked as part of a two-man crew with his supervisor, Dennis Dan. Hopkins did not at any relevant time have a driver's license. Therefore, it was the usual practice for [*5] Hopkins to ride to job sites in a pickup truck driven by Dan, who would pick up Hopkins at his residence in Houston. On two or three occasions Hopkins drove the pick-up truck home from a job site because they had worked long hours and Dan could not stay awake.

9. Small tools and equipment necessary for the job were transported in the pickup truck. Dan loaded tools into the truck before picking up Hopkins. Occasionally, equipment such as pipes, a welding machine, or parts and pieces of a tower, would need to be shuttled between job sites using the pickup truck. Although Mims testified that this was a routine practice, there is no evidence that Hopkins himself ever loaded a pickup truck for this purpose.

10. Dan and Hopkins filled out time sheets, daily reports, and service and inspection reports to keep track of the work they performed at job sites. It was Dan's job to make sure these reports were faxed to Mims in Fort Worth.

11. After completion of a job, the equipment would be loaded for return to the yard or transport to another job site. Hopkins worked primarily with a Mast Climbers truck driver named Dustin Bushnell, although he recalls working a few times with a driver named [*6] Pete. On a very large job, many trucks might be required to remove all of the equipment from the job site. In that case, Mims would hire a commercial trucking company.

12. Loading a truck at a job site was a three man operation. Dan was responsible for driving the forklift and putting the equipment on the truck. The truck driver, usually Dustin, would supervise and ensure proper placement of the equipment. Hopkins would assist by moving the equipment for Dan to pick up and by directing traffic. On the few occasions when Hopkins assisted in loading a truck after a job was completed, he placed equipment on the truck at the direction of the truck driver and exercised no discretion. Mims acknowledged that during the time Hopkins worked with Dan, it was Dan's responsibility to know how to load the trucks.

13. Mims was not routinely on the job site with Dan and Hopkins. His knowledge of what went on at the job site is based on his review of the daily reports. Mims does not have any personal knowledge of how or by whom trucks were loaded at job sites in Louisiana.

14. Mims was present for the tear-down of a very large job in the Houston area known as Intrepid Stone. Mast Climbers' equipment [*7] was on that job site for approximately 18 months. During the tear-down, which lasted 4 or 5 days, Mims personally drove the forklift to load the trucks. He recalls Hopkins working alongside him, but Hopkins did not drive the forklift or actually place equipment on a truck during that job.

15. Dan stopped working for Mast Climbers less than 30 days before Hopkins was terminated. After Dan left, Hopkins worked with Adam Martin. Again, because

Page 5

  

2005 U.S. Dist. LEXIS 38721, *7; 152 Lab. Cas. (CCH) P35,110
12 Wage & Hour Cas. 2d (BNA) 236

Hopkins did not have a driver's license, Martin drove the pickup truck and took over the job of faxing time sheets and daily reports to Fort Worth. Hopkins was the senior member of the crew, but was never actually promoted to supervisor. There is no evidence that Hopkins loaded a truck, either at a job site or in Fort Worth, during the brief period of time after Dan left Mast Climbers and Hopkins was terminated.

16. Mims acknowledged that it was not unusual for Hopkins to work in excess of 50 hours per week. If a job was out of town, the crew would work long hours for as many days as necessary to get the job done and head home. Hopkins generally worked six days per week and took off very few days. Hopkins estimates he worked an average of 65 hours [*8] per week during his 37 weeks of employment. Mast Climbers offered no evidence to the contrary.

17. Records produced by Mast Climbers indicate that Hopkins worked over 40 hours in at least 20 of those weeks. However, there are many days unaccounted for by Mast Climbers' records. Hopkins testified that he worked several days for which there are no time records, including six hours on December 25,2004. Hopkins did not keep copies of his time sheets, and therefore cannot remember exactly which days he worked. Hopkins found three time sheets covering the weeks from March 8 through March 28,2004 in the pickup truck after his termination on April 3, 2004, which he produced to counsel but which were not produced by Mast Climbers. Mims did not handle any payroll functions and does not know why there are gaps in the records.

18. For the nine-week period from April 16, 2003 through June 18, 2003, Mast Climbers paid Hopkins $ 866.67 twice a month. For the 21-week period from September 23, 2003 through February 15, 2004, Mast Climbers paid Hopkins $ 960.00 twice a month. For the seven-week period from February 16, 2004 through April 3, 2004, Mast Climbers paid Hopkins $ 1,083.33 twice a month. [*9] Mast Climbers paid Hopkins the same amount no matter how many hours he worked in a week.

19. Before he was hired on April 16, 2003, Dan told Hopkins that he would be paid between $ 430 and $ 450 per week, based on a 40 hour workweek. There was no discussion of overtime.

20. Hopkins was given an employee handbook when he was initially hired by Mast Climbers. The handbook indicates that work-time for field personnel was from 6:00 am until 3:30 pm, Monday through Friday, with 30 minutes for lunch. Employees were also expected to be on call on weekends on a rotating basis. Weekend hours for on-call employees were Saturday from 6:00 am until noon, with longer hours in case of an emergency. The handbook does not contradict Hopkins's assertion that his salary was intended to cover a 40 hour workweek.

21. Before starting work the second time, Hopkins talked to Dan about his salary and hours. Dan offered Hopkins more money to return to work. Even though he had worked more than forty hours per week during his first period of employment, Hopkins believed Dan when he said that Hopkins would be paid based on a 40 hour week, [3] and that overtime was not expected. Hopkins accepted the offer to [*10] return to employment with Mast Climbers because he needed the money and enjoyed the work. Mims never spoke with Hopkins about his salary or overtime, and does not know what was said in the conversations between Hopkins and Dan. Dan did not testify at trial.

3 Although Mast Climbers disputed at trial that Hopkins was paid based on a 40 hour week, Mast Climbers submitted as part of the Joint Pretrial Order a proposed finding of fact for each period of employment Hopkins was paid a salary on a semi-monthly basis that equated to a specific hourly rate "for a forty-hour work week." Defendants' proposed findings of fact and conclusions of law (Dkt. 39), P 13.

22. Hopkins's last day of work for Mast Climbers was April 3, 2004.

## II. CONCLUSIONS OF LAW

1. [HN1]The FLSA provides that employers must pay covered employees extra compensation of at least one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week. 29 U.S.C. § 207 (a)(1) [*11] . The reach of the FLSA is broad, but not unlimited. *Cleveland v. City of Elmendorf, 388 F.3d 522, 526 (5th Cir. 2004)*.

### A. Hopkins's Employer

2. Under FLSA § 203(d):

[HN2]'Employer' includes any person





Case 3:07-cv-05140-MJJ    Document 21-3    Filed 11/06/2007    Page 23 of 27

2005 U.S. Dist. LEXIS 38721, *11; 152 Lab. Cas. (CCH) P35,110
12 Wage & Hour Cas. 2d (BNA) 236

acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

3. [HN3]An employee may have one or more employers for purposes of the FLSA. In determining whether a person or corporation is an "employer" for purposes of the act, the court should consider the total employment situation, with particular regard to (1) whether the employment takes place on the premises of the company; (2) how much control the person or company exerts over the employee; (3) whether the person or company has the power to fire, hire, or modify the employment terms and conditions; (4) whether the employee performs a "specialty job" within a production line; and (5) whether the employee may refuse to work for the person or company and work for others. [*12] *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669-70 (5th Cir. 1968).

4. There is no dispute in this case that Mast Climbers (including Mims) was Hopkins's employer. The court concludes that neither Texas Mast Climber L.L.C. nor AMS was Hopkins's employer for purposes of the FLSA. The former is merely a holding company that leases equipment to Mast Climbers, while the latter provides staffing and payroll services; neither exercised control over Hopkins's employment.

## B. Section 213(b)(1) Exemption

5. [HN4]Certain employees are exempt from FLSA coverage. The employer bears the burden to prove that an employee is exempt, and "exemptions are to be narrowly construed against the employer." *Cleveland*, 388 F.3d at 526.

6. At issue in this case is the exemption for any employee whom the Secretary of Transportation (Secretary) has the "power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). In order for this motor carrier exemption to apply, it does not matter if the Secretary has actually established qualifications and maximum hours of [*13] service, but only whether the Secretary has the power to do so. 29

C.F.R. § 782.1; *Southland Gasoline Co. v. Bayley*, 319 U.S. 44, 47-48, 63 S. Ct. 917, 87 L. Ed. 1244 (1943).

7. [HN5]The Secretary's authority to prescribe qualifications and maximum hours extends only to employees that transport passengers or property in interstate commerce whose activities affect the safety of operation of vehicles on the highways of the country. 49 U.S.C. § 13501; *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 671, 67 S. Ct. 931, 91 L. Ed. 1158 (1947).

8. [HN6]The Department of Transportation has found that the activities of "loaders" directly affect the safety of operation of motor vehicles in interstate commerce. *Levinson*, 330 U.S. at 669. "Loaders" are employees whose "sole duties are to load and unload motor vehicles and transfer freight between motor vehicles and between vehicles and the warehouse." *Id.* at 652 n.2 (citing an Interstate Commerce Commission ruling).

9. *In Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 706, 67 S. Ct. 954, 91 L. Ed. 1184 (1947), [HN7]the Supreme Court held that loaders may be exempt from the FLSA if their activities consist of work [*14] defined by ICC ruling as that of a "loader," and as affecting the safety of operation of motor vehicles in interstate or foreign commerce. Remanding for additional fact-finding, the Court elaborated further:

> The District Court shall not be concluded by the name which may have been given to [an employee's] position or to the work that he does, nor shall the District Court be required to find that any specific part of his time in any given week must have been spent in those activities. The District Court shall give particular attention to whether or not the activities of the respective respondents included that kind of loading' which is held by the Commission to affect safety of operation. In contrast to the loading activities in the Levinson case, the mere handling of freight at a terminal, before or after loading, or even the placing of certain articles of freight on a motor carrier truck may form so trivial, casual or occasional a part of an employee's activities, or his activities may relate only to such articles

  

2005 U.S. Dist. LEXIS 38721, *14; 152 Lab. Cas. (CCH) P35,110
12 Wage & Hour Cas. 2d (BNA) 236

or to such limited handling of them, that his activities will not come within the kind of loading' which is described by the Commission and which, in its opinion, [*15] affects safety of operation.

*Id.* at 707-08 (citation omitted).

10. [HN8]The Fifth Circuit has characterized *Pyramid* as establishing a *de minimis* rule. An employee is not exempt from the overtime provisions of the FLSA if his work affecting highway safety is only "trivial, casual, occasional and insubstantial." *Wirtz v. Tyler Pipe and Foundry Co.*, 369 F.2d 927, 930 (5th Cir. 1966); *Mitchell v. Meco Steel Supply Co.*, 183 F. Supp. 777, 779 (S.D. Tex. 1956) (while employee's duties from time to time included assisting with the loading and unloading of trucks, his connection with such activities was so casual and inconsequential as not to bring him within the exception to the FLSA).

11. In addition, federal regulations provide that:[HN9]

An employee who has no responsibility for the proper loading of a motor vehicle is not within the exemption as a loader' merely because he furnishes physical assistance when necessary in loading heavy pieces of freight, or because he deposits pieces of freight in the vehicle for someone else to distribute and secure in place, or even because he does the physical work of arranging pieces of freight in [*16] the vehicle where another employee tells him exactly what to do in each instance and he is given no share in the exercise of discretion as to the manner in which the loading is done.

29 C.F.R. § 782.5(c).

12. Applying these standards to the facts of this case, the court concludes that Mast Climbers has not met its burden to prove that Hopkins was exempt from overtime under the FLSA motor carrier exemption. Hopkins's loading activities were a *de minimis* part of his job under the principles established in *Pyramid*. Hopkins's testimony on this score was credible, and uncontradicted by any eyewitness testimony. In addition, there is no

evidence that any truck loaded by Hopkins traveled interstate. Therefore, the motor carrier exemption of 29 U.S.C. § 213(b)(1) does not apply.

13. Hopkins has clearly met his burden to show an overtime violation of the FLSA. There is no dispute that he worked more than 40 hours in a workweek, and that he was not paid the statutory premium for those overtime hours.

## C. Computing Unpaid Overtime

14. Mast Climbers failed to maintain time or payroll records accurately reflecting [*17] the number of hours actually worked by Hopkins, in violation of 29 U.S.C. § 211(c).

15. [HN10]When an employer has failed to maintain accurate payroll records, the employee's initial burden is to make out a prima facie case that the FLSA has been violated and to produce some evidence to show the amount and extent of the violation. *Beliz v. W. H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1330 (5th Cir. 1985) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946)). This is not a heavy burden. The employee meets his burden if he produces sufficient evidence, which may consist of his own credible testimony, to show the amount of work by "reasonable inference." The evidence may be inexact or approximate. The burden then shifts to the employer to present evidence of the actual hours the employee worked to contradict the employee's evidence. *Id.* at 1330-31.

16. Hopkins testified based on his recollection that he worked on average 65 hours per week. Mast Climbers introduced no evidence to contradict this estimate. In fact, Mast Climbers' evidence is fairly consistent with Hopkins's estimate. Mast Climbers' time records [*18] are incomplete, but the records that do exist show that he worked over 40 hours in 20 of his 37 weeks of employment. Hopkins worked over ninety hours each of the first two weeks of January, 2004, and over eight-six hours the week of March 8, 2004. Mims testified that it was not unusual for Hopkins to work more than 50 hours per week, and that while he sometimes worked less, he sometimes worked a lot more.

17. The court credits Hopkins's testimony regarding the number of hours he worked. The court will assume 25 hours of overtime for each of the 37 weeks of Hopkins's

Page 8





2005 U.S. Dist. LEXIS 38721, *18; 152 Lab. Cas. (CCH) P35,110
12 Wage & Hour Cas. 2d (BNA) 236

employment in calculating his overtime pay.

18. [HN11]The FLSA requires that overtime must be compensated at a rate not less than one and one-half times the "regular rate" at which the employee is actually employed. 29 U.S.C. § 207(a); 29 C.F.R. § 778.107. The "regular rate" is the employee's hourly rate as determined "by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the **total number of hours actually worked** by him in that workweek **for which such compensation was paid**." 29 C.F.R. § 778.109 [*19] (emphasis supplied).

19. [HN12]Hopkins was paid on a salary basis rather than an hourly basis. In order to compute overtime pay in such a case, it is necessary to convert the salary to an hourly rate. If the salary is paid weekly, the employee's regular rate of pay is computed "by dividing the salary by **the number of hours the salary is intended to compensate**." 29 C.F.R. § 778.113(a)(emphasis supplied). If, as in Hopkins's case, the salary is paid semi-monthly, the salary must first be "translated into its weekly equivalentby multiplying by 24and dividing by52." 29 C.F.R. § 778.113(b). Once the weekly wage is determined, the regular hourly rate is calculated as indicated in § 778.113(a).

20. [HN13]The key factor in figuring the hourly rate for salaried employees is determining "the number of hours the salary is intended to compensate." 29 C.F.R. § 778.113(a). Mast Climbers contends that there was a clear mutual understanding that the salary paid to Hopkins was intended to compensate him for all hours worked each workweek, whatever their number. [HN14]This is known as the "fluctuating workweek" method, described [*20] at 29 C.F.R. § 778.114(a). This method of calculating unpaid overtime is generally advantageous to the employer for two reasons: (a) the regular hourly rate is reduced, because the number of covered hours is greater than 40; and (b) the **unpaid overtime** premium is only 50% of the regular hourly rate, because all hours (including overtime hours) have already been compensated at the straight time rate.

21. [HN15]Because the fluctuating workweek is neither a defense nor an exemption to the FLSA, the employee has the burden of proving that the method does not apply to his case. Samson v. Apollo Resources, Inc., 242 F.3d 629, 636 (5th Cir. 2001). This is but another way of saying that the employee has the burden to prove his damages by establishing the number of hours his

salary was intended to cover. Unless the employee establishes that his salary was supposed to cover some fixed, lesser number of hours, the salary will be presumed to cover all hours actually worked. [4]

  4  Of course, the resulting rate must not be less than the statutory minimum wage. See 29 C.F.R. §§ 778.113(b), 778.114(a).

[*21] 22. Hopkins has met his burden of showing the fluctuating workweek method is not applicable here. There was no clear mutual understanding that the salary paid to Hopkins was intended to compensate him for all hours he was called upon to work in a workweek, whether few or many. Hopkins testified without contradiction that his supervisor told him, both when he was hired and when he was rehired, that he would be paid a salary based on a 40 hour workweek. Unlike in Samson, there is no evidence in this case that Mast Climbers had consciously adopted the fluctuating workweek method in advance, or that anyone from Mast Climbers ever explained the fluctuating workweek policy to Hopkins. The employee handbook did indicate that more than 40-hours might be required in a week, but it did not address whether the salary was intended to cover all hours worked, or how the employee would be compensated for overtime hours. There simply is no basis to conclude that Hopkins clearly understood that his salary was to compensate him for all hours worked in any given workweek.

23. Because the fluctuating workweek standard does not apply, the court calculates Hopkins's damages on the assumption that [*22] his salary was based on a 40 hour workweek, and that he has not received any straight time compensation for overtime hours. During his first period of employment, Hopkins was paid $ 866.67 semi-monthly for 9 weeks. This results in an hourly rate of $ 10.00. [5] Because Hopkins worked 25 hours of overtime each week, he is entitled to overtime compensation of $ 3,375.00 for this period. [6] Using the same calculation method, Hopkins is entitled to overtime compensation of $ 8,720.25 for the period he was paid $ 960.00 semi-monthly, and $ 3,279.50 for the period he was paid $ 1,083.33 semi-monthly. [7] Therefore, Hopkins will be awarded overtime compensation of $ 15,374.75.

  5  To arrive at an hourly rate, one multiples $ 866.67 by 24, divides the result by 52 to arrive at a weekly salary of $ 400, and divides by 40 hours to determine the hourly rate of $ 10.00.





2005 U.S. Dist. LEXIS 38721, *22; 152 Lab. Cas. (CCH) P35,110
12 Wage & Hour Cas. 2d (BNA) 236

6   25 hours per week multiplied by 9 weeks equals 225 total overtime hours, which sum is multiplied by 15, or 1.5 times the $ 10.00 hourly rate, to reach $ 3,375.00.

7   Hopkins's hourly rate when he made $ 960.00 semi-monthly was $ 11.07. 525 overtime hours (25 multiplied by 21 weeks), at $ 16.61 per hour ($ 11.07 multiplied by 1.5), totals $ 8,720.25.

> Hopkins's hourly rate when he made $ 1,083.33 semi-monthly was $ 12.49. 175 overtime hours (25 multiplied by 7 weeks), at $ 18.74 per hour ($ 12.49 multiplied by 1.5), totals $ 3,279.50.

### [*23] D. Liquidated Damages

24. [HN16]A successful FLSA plaintiff is entitled to liquidated damages equal to the amount of actual damages. 29 U.S.C. § 260. The court has discretion to reduce the amount of liquidated damages only if the employer meets its burden to prove it acted in good faith in deciding how to pay plaintiff. Id.; Reich v. Tiller Helicopter Servs., Inc., 8 F.3d 1018, 1031 (5th Cir. 1993). The employer's burden is a substantial one. Singer v. Waco, 324 F.3d 813, 823 (5thCir. 2003).

25. Mast Climbers has not met its burden to prove that it acted in good faith when it failed to pay Hopkins overtime. Mast Climbers argues that it relied on a subsequent Department of Labor ruling that erectors were exempt employees in deciding not to pay overtime. This argument fails first because the results of that investigation are not in evidence. However, even if such evidence had been admitted, the investigation did not begin until less than one month before Hopkins was terminated, and the results were not known until well after Hopkins was terminated. Thus, Mast Climbers could not have relied on the investigation in determining [*24] how to pay Hopkins. Mast Climbers offered no other explanation for its decision not to pay overtime. Hopkins will be awarded $ 15,374.75 as liquidated damages.

### E. Attorney's Fees and Costs

26. Hopkins is the [HN17]prevailing party in this case. As such, he is entitled to an award of attorney's fees and costs pursuant to 29 U.S.C. § 216(b). An award of reasonable attorney's fees is mandatory under the FLSA.

Singer, 324 F.3d at 829 n.10; Weisel v. Singapore Joint Venture, Inc., 602 F.2d 1185, 1191 n. 18 (5th Cir. 1979).

27. The court applies the lodestar method in calculating attorney's fees. Singer, 324 F.3d at 829. [HN18]The lodestar is calculated by multiplying the reasonable number of hours expended by an appropriate hourly rate. Id. The court then considers whether an increase or decrease from the lodestar is warranted based on the factors listed in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). Id. Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services [*25] properly; (4) the preclusion of other employment; (5) the customary fee; (6) the fee being fixed per hour; (7) the time limitations imposed by the client and the circumstances; (8) the amount involved and the likely results obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the attorney's fees awarded in similar cases. Johnson, 488 F.2d at 717-19. The fee award is not limited by a contingent fee agreement. Blanchard v. Bergeron, 489 U.S. 87, 92-94, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989).

28. The billing rate of lead counsel, Daniel W. Jackson, is $ 225.00 per hour. The billing rate for Jackson's associates is $ 125.00. These are reasonable rates for this type of case in Houston, Texas. Mast Climbers concedes this point.

29. Counsel spent a total of 178.70 hours on this case, which was filed on May 7, 2004 and tried on October 27, 2005. This includes successfully defending against defendants' motion for summary judgment. Counsel engaged in significant discovery, including deposing Mims and defending the deposition of Hopkins, propounding and answering [*26] written discovery, and undertaking third party document discovery from two Mast Climbers' clients. A review of the billing summary submitted by counsel indicates that the majority of work was performed by Jackson, with little or no duplication of effort by associates. 8 The court concludes that 178.70 hours is a reasonable number of hours to expend in the successful prosecution of this case.

8   Jackson worked 134.90 hours, associate Amanda Bedford worked 42.80 hours, and associate Joseph Ruiz worked 1 hour.

  

2005 U.S. Dist. LEXIS 38721, *26; 152 Lab. Cas. (CCH) P35,110
12 Wage & Hour Cas. 2d (BNA) 236

30. Hopkins does not seek an upward adjustment from the lodestar. Mast Climbers agrees that plaintiff's counsels' billing rates are reasonable and makes no specific objection to the number of hours expended in this case. [9] The court concludes that Hopkins is entitled to an award of a reasonable attorney's fees of $ 35,827.50.

> 9  Mast Climbers asserts only that had plaintiff's counsel had a lower opinion of his client's chances of success, they could have possibly settled the matter without a trial.

[*27]  31. The evidence also established that Hopkins incurred costs of $ 3,855.87. These costs are comprised of postage charges, fax charges, copying costs, computerized research fees, messenger services, process server charges, and court reporter fees. Again, Mast Climbers makes no objection to the costs and based on counsel's affidavit the court concludes that they were reasonable and necessary. Hopkins will be awarded costs in the amount of $ 3,855.87.

### III. CONCLUSION

For the reasons stated above, the court concludes that Hopkins is entitled to judgment against Mast Climbers, jointly and severally, for $ 15,374.75 in unpaid overtime, $ 15,374.75 as liquidated damages, and $ 39,683.37 as reasonable attorney's fees and costs.

The court will issue a separate final judgment.

Signed at Houston, Texas on December 14, 2005.

Stephen Wm Smith

United States Magistrate Judge

### FINAL JUDGMENT

In accordance with the Findings of Fact and Conclusions of Law issued this day, it is hereby

**ORDERED** that Hopkins shall recover from Mast Climbers Manufacturing, Inc. d/b/a American Mast Climbers and William F. Mims, jointly and severally, as follows:

(i) $ 15,374.75 [*28] in unpaid overtime;

(ii) $ 15,374.75 as liquidated damages; and

(iii) $ 39,683.37 as reasonable attorney's fees and costs.

This judgment shall accrue interest at the rate of 4.35% per annum.

Signed at Houston, Texas on December 14, 2005.

Stephen Wm Smith

United States Magistrate Judge

